# EXHIBIT "A"

Español  |  Tiếng Việt  |  한국어  |  中文  |  հայերեն



## THE SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

Search

| Home | Online Services | Forms & Filings | Self-Help | Divisions | Jury | General Info |
|---|---|---|---|---|---|---|
| | Pay Fines, Search Records... | Forms, Filing Fees ... | Self-Rep, Info, FAQs... | Civil, Criminal, Family... | Jury Duty Portal, Q&A... | Courthouses, ADA, Local Rules... |

ONLINE SERVICES

# Case Summary

### CASE SUMMARY

PRINT      NEW SEARCH

Case Number: SC127893
ARREHBORI FAMILY, LLC, ET AL., VS GEORGE WASHINGTON LENDING

Filing Date: 07/31/2017
Case Type: Othr Breach Contr/Warr-not Fraud (General Jurisdiction)
Status: Pending

### Future Hearings

**12/04/2017** at 08:30 am in Department K at 1725 Main Street, Santa Monica, CA 90401
Conference-Case Management

Documents Filed | Proceeding Information

### Parties

ARREHBORI FAMILY LLC - Plaintiff

ARREHBORI RABIN - Plaintiff

ARREHBORI RAYMOND - Plaintiff

BERGER GOLDY M. - Attorney for Plaintiff

GEORGE WASHINGTON LENDING INC. - Defendant

MAXIMUS LENDING FUND IV LLC - Defendant

Case Information | Party Information | Proceeding Information

### Documents Filed (Filing dates listed in descending order)
**08/17/2017** Amended Complaint
Filed by Attorney for Plaintiff

**07/31/2017** Summons Filed
Filed by Attorney for Plaintiff

**07/31/2017** Complaint Filed

Case Information | Party Information | Documents Filed

**Proceedings Held** (Proceeding dates listed in descending order)
None

Case Information | Party Information | Documents Filed | Proceeding Information

NEW SEARCH

Art Showcased in
Los Angeles Courthouse Jury Rooms



"A Man's Work" by Pebbla Wallace
2004 – 3rd Place Amateur



Privacy Statement   |   Disclaimer   |   Employment   |   ADA   |   Holidays   |   Comment on our Website                    Copyright 2014 Superior Court of California, County of Los Angeles

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

GEORGE WASHINGTON LENDING INC., a California corporation;
[ADDITIONAL PARTIES ATTACHMENT FORM ATTACHED.]

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ARREHBORI FAMILY, LLC.; RABIN ARREHBORI, an individual;
and RAYMOND ARREHBORI, an individual.

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 31 2017

Sherri R. Carter, Executive Officer/Clerk

By: Stacey Watson, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court

Santa Monica Courthouse
1725 Main Street #102, Santa Monica, CA 90401

**CASE NUMBER:**
*(Número del Caso):* SC127893

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of Goldy M. Berger,5655 Lindero Cnyn Rd,Ste 521-12,Westlake Village,CA 91362;818597-7755

DATE:
*(Fecha)* JUL 3 1 2017

Sherri R. Carter, Clerk, by Stacey Watson, Deputy
*(Secretario)* *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* George Washington Lending, Inc., a California corporation

under: ☑ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| George Washington Lending, Inc,et al VS. Arrehbori Family, LLC,et al | |

## INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

MAXIMUS LENDING FUND IV LLC., a California Corporation; Arthur S. Cohen; an individual and DOES 1 through 50, inclusive.

Page __1__ of __1__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons



CASE NO. **SC127893**

## NOTICE OF CASE ASSIGNMENT TO INDIVIDUAL CALENDAR COURT

TO PLAINTIFFS AND PLAINTIFFS' ATTORNEYS OF RECORD or PLAINTIFFS IN PRO PER:

IT IS HEREBY ORDERED AND YOU ARE HEREBY NOTIFIED that this action shall be assigned to a Judge for all purposes, including trial, as follows:

**Gerald Rosenberg**       Department: _____

Santa Monica Courthouse.
1725 Main Street
Santa Monica, CA 90401

IT IS FURTHER ORDERED THAT PLAINTIFF OR COUNSEL FOR PLAINTIFF SHALL GIVE NOTICE OF THIS ALL-PURPOSE CASE ASSIGNMENT by serving a copy of this Notice on all parties to this action at the time the Summons and Complaint are served, or, if not a served party, then when such party (including any cross-defendant or complainant-in-intervention) appears in the action.

CASE MANAGEMENT REVIEW AND CONFERENCE: Upon the filing of the Complaint, a Case Management Review and Conference will be calendared for hearing in the Court to which the case is assigned. The hearing date will be stamped upon the face of the Complaint. Plaintiff shall give separate notice of the Case Management Review and Conference to all named parties in conjunction with service of the Summons and Complaint and include any later appearing party such as a cross-defendant or complainant-in-intervention served within this time period. Proof of service must be brought to the hearing if not previously filed. Failure to timely file proof of service of Summons and Complaint within 60 days after filing the Complaint (CRC 3.110(b)) may result in an Order to Show Cause re sanctions being issued. (CRC 3.110(f).)

-1-

TIME STANDARDS: Cases will be subject to processing under the following time standards:

COMPLAINTS: All Complaints shall be served on all named defendants and proof of service filed within 60 days after the filing of the Complaint. The Court may set an OSC re failure to file proof of service of Summons and Complaint if not timely filed. (CRC 3.110(b).)

CROSS-COMPLAINTS: No Cross-Complaint may be filed by any party after its answer is filed without first obtaining leave of court. Cross-Complaints shall be served and proof of service filed within 30 days of the filing date, unless a party has appeared in the action. (CRC 3.110(c).)

APPLICABLE RULES: Counsel as well as self-represented parties are directed to familiarize themselves with the Local Rules for the County of Los Angeles, particularly Chapter 3 Civil Division Rules; and California Rules of Court relating to civil case management. These Rules apply to all general civil cases and shall have priority over all other Local Rules to the extent the others are inconsistent.

CHALLENGE TO ASSIGNED JUDGE: A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment of the Judge, or if a party has not yet appeared, within 15 days of the first appearance of that party. (Local Rule 2.5(a).)

PREPARATION AND PROCEDURES FOR CASE MANAGEMENT REVIEW AND CONFERENCE: Pursuant to CRC 3.724, no later than 30 calendar days before the date set for the Case Management Conference, the parties must meet and confer, in person or by telephone, to consider each of the issues identified in Rule 3.727 and, in addition, to consider the following:

(1)    Resolving any discovery disputes and setting a discovery schedule;

(2)    Identifying and, if possible, informally resolving any anticipated motions;

(3)    Identifying the facts and issues in the case that are uncontested and may be the subject of stipulation;

(4)    Identifying the facts and issues in the case that are in dispute;

(5)    Determining whether the issues in the case can be narrowed by eliminating any claims or defenses by means of a motion or otherwise;

(6)    Determining whether settlement is possible;

(7)    Discuss type of mediation counsel and parties prefer;

(8)    Identifying the dates on which all parties and their attorneys are available or not available for trial, including the reasons for unavailability; and

(9)    Other relevant matters.

-2-

Pursuant to CRC 3.725, no later than 15 calendar days before the date set for the Case Management Conference or Review, each party must file a Case Management Statement and serve it on all other parties in the case. In lieu of each party's filing a separate Case Management Statement, any two or more parties may file a joint Statement.

The subjects to be considered at the Case Management Conference shall include the following (CRC Rule 3.727):

(1)   Whether there are any related cases (see CRC 3.300);

(2)   Whether all parties named in the Complaint or Cross-Complaint have been served, have appeared, or have been dismissed;

(3)   Whether any additional parties may be added or the pleadings may be amended;

(4)   Whether, if the case is a limited civil case, the economic litigation procedures under Code of Civil Procedure Section 90 et seq. will apply to it or the party intends to bring a motion to exempt the case from these procedures;

(5)   Whether any other matters (e.g., the bankruptcy of a party) may affect the Court's jurisdiction or processing of the case;

(6)   Whether the parties have stipulated to, or the case should be referred to, judicial arbitration in courts having a judicial arbitration program or to any other form of alternative dispute resolution (ADR) process and, if so, the date by which the judicial arbitration or other ADR process must be completed;

(7)   Whether an early settlement conference should be scheduled and, if so, on what date;

(8)   Whether discovery has been completed and, if not, the date by which it will be completed;

(9)   What discovery issues are anticipated;

(10)  Whether the case should be bifurcated or a hearing should be set for a motion to bifurcate under Code of Civil Procedure Section 598;

(11)  Whether there are any Cross-Complaints that are not ready to be set for trial and, if so, whether they should be severed;

(12)  Whether the case is entitled to any statutory preference and, if so, the statute granting the preference;

(13)  Whether a jury trial is demanded and, if so, the identity of each party requesting a jury trial;

(14)   If the trial date has not been previously set, the date by which the case will be ready for trial and the available trial dates;

(15)   The estimated length of trial;

(16)   The nature of the injuries;

(17)   The amount of damages, including any special or punitive damages;

(18)   Any additional relief sought;

(19)   Whether there are any insurance coverage issues that may affect the resolution of the case; and

(20)   Any other matters that should be considered by the Court or addressed in its Case Management Order.

SANCTIONS:  The Court has authority to impose appropriate sanctions for the failure or refusal to comply with provisions of the California Rules of Court and Local Rules governing time standards and case management conference requirements or deadlines.  Such sanctions may be imposed upon counsel, a party, or both, as permitted by rule, statute, or law.

This is not a complete representation of the applicable Local Rules or California Rules of Court, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under the Trial Court Delay Reduction Rules.  Careful reading and compliance with the Local Rules and California Rules of Court are absolutely imperative.

LISA HART COLE, Supervising Judge
Los Angeles Superior Court, West District

ADMIN/LM

-4-

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Goldy M. Berger, Esq. [SBN 219183]<br>Law Offices of Goldy M. Berger<br>5655 Lindero Canyon Road, Suite 521-12<br>Westlake Village, CA 91362<br>TELEPHONE NO.: 818 597-7755    FAX NO.: 818 597-7757<br>ATTORNEY FOR (Name): PLAINTIFFS | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>JUL 31 2017<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By: Stacey Watson, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 1725 Main Street, #102
MAILING ADDRESS: Same
CITY AND ZIP CODE: Sata Monica 90401
BRANCH NAME: Santa Monica Courthouse

CASE NAME:
George Washington Lending, Inc, et al VS. Arrehbori Family, LLC, et al

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: SC127893 |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Gerald Rosenberg<br>DEPT: IC |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☑ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (not specified above) (43)

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action (specify):
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: July 31, 2017
Goldy M. Berger, Esq.
_____ (TYPE OR PRINT NAME)    ► _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

BY FAX

| SHORT TITLE: George Washington Lending, Inc. VS. Arrehbori Family, LLC. | CASE NUMBER: SC127893 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court. |
|---|

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES    CLASS ACTION? ☐ YES    LIMITED CASE? ☐ YES    TIME ESTIMATED FOR TRIAL 14 ☐ HOURS/ ☐ DAYS

Item II. Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

Step 1: After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

Step 2: Check one Superior Court type of action in Column B below which best describes the nature of this case.

Step 3: In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

Step 4: Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

BY FAX

| SHORT TITLE: George Washington Lending, Inc. VS. Arrehbori Family, LLC. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons –<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☑ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

| SHORT TITLE: George Washington Lending, Inc. VS. Arrehbori Family, LLC. | | CASE NUMBER | |
|---|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

| SHORT TITLE: George Washington Lending, Inc. VS. Arrehbori Family, LLC. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>□1. □2. □3. □4. ☑5. □6. □7. □8. □9. □10. | ADDRESS:<br>237 S. Weatherly Dr. |
|---|---|

| CITY: Beverly Hills | STATE: CA | ZIP CODE: 90211 | |
|---|---|---|---|

Item IV. *Declaration of Assignment.* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Santa Monica courthouse in the West Judicial District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: July 31, 2017

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 4 of 4

GOLDY M. BERGER [SBN #219183]
LAW OFFICES OF GOLDY M. BERGER
5655 Lindero Canyon Road, Suite 521-12
Westlake Village, CA 91362
Tel: (818) 597-7755
Fax: (818) 597-7757

Attorneys for Plaintiffs

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 3 1 2017

Sherri R. Carter, Executive Officer/Clerk
By: Stacey Watson, Deputy

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF LOS ANGELES – WEST DISTRICT - SANTA MONICA COURTHOUSE

| | |
|---|---|
| ARREHBORI FAMILY, LLC; RABIN ARREHBORI, an individual; AND RAYMOND ARREHBORI, an individual.<br><br>Plaintiff,<br><br>vs.<br><br>GEORGE WASHINGTON LENDING INC., a California corporation; MAXIMUS LENDING FUND IV LLC., a California Corporation; Arthur S. Cohen, an individual; and DOES 1 through 50, inclusive.<br><br>Defendants.<br><br>CASE MANAGEMENT CONFERENCE<br><br>Dec. 4 2017 8:30 AM<br>_____<br>Date<br>Gerald Rosenberg  Dept. C<br><br>BY FAX | Case No.: **SC127893**<br><br>VERIFIED COMPLAINT FOR:<br><br>1) DECLARATORY RELIEF;<br>2) INJUNCTIVE RELIEF;<br>3) CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALING;<br>4) VIOLATIONS OF TILA;<br>5) VIOLATION OF CALIFORNIA CIVIL CODE § 1918.5-1920, 1921<br>6) VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7 B;<br>7) VIOLATION OF CALIFORNIA CIVIL CODE § 1916(10)c;<br>8) VIOLATION OF CALIFORNIA CIVIL CODE § 1632;<br>9) VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES UNDER CA BUSINESS AND PROFESSIONS CODE § 17200 & PREDATORY LENDING;<br>10) VIOLATION OF CALIFORNIA CIVIL CODE § 2079.16;<br>11) VIOLATION OF 12 CODE OF FEDERAL REGULATIONS § 226.23(a)(3);<br>12) VIOLATION OF 24 CODE OF FEDERAL REGULATIONS §3500.10<br>13) VIOLATION OF THE FAIR AND; ACCURATE CREDIT TRANSACTION ACT OF 2003 § 221(b); |

COMPLAINT
1

Plaintiff, ARREHBORI ("ARREHBORI") complains against defendants, DEFENDANT ("DEFENDANT") and DOES 1-25, inclusive, allege:

## PARTIES

1.      Plaintiff ARREHBORI FAMILY LLC., is a California company of Los Angeles County, California, and is the owner of the real property commonly known as 237 S. Weatherly Dr., Beverly Hills, CA 90211, APN No.: 4331-024-010 (the "Property").

2.      Based on information and belief, MADISON TEX, INC  is an entity unknown and at all times relevant herein, was/is doing business in the State of California and County of Los Angeles.

3.      Based on information and belief, Defendant, SIONIT NEMAN is an individual residing in Los Angeles, California.

4.      Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 50 and, therefore, sue these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

5.      Plaintiff is informed and believes that each of the defendants, at all times relevant hereto, was an agent and an employee of each of the other defendants, acting in the course of their agency and employment and with the permission and consent of the principal.

## FACTS COMMON TO ALL CAUSES OF ACTION

6.      Defendants sued herein as DOES 1 through 50 are contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for each and every act, omission, obligation, event or happening set forth in this Complaint, and that each of said fictitiously named Defendants is indebted to Plaintiff as hereinafter alleged.

7.      The use of the term "Defendants" in any of the allegations in this Complaint, unless specifically otherwise set forth, is intended to include and charge both jointly and severely, not only named Defendants, but all Defendants designated as well.

8.      Plaintiffs purchased certain real property commonly known as 237 S. Wetherly Dr. Beverly Hills, CA 90211 on September 22, 2015 (the "Property"). **[Exhibit A]**

COMPLAINT

2

4.      Plaintiffs are informed and therefore believe that Arthur S. Cohen Defendant, is an individual residing in Los Angeles, California. He is believed to be the Broker in this matter.

5.      The Defendants (each of them named in paragraphs 3-4 above, shall collectively be referred to as "DEFENDANTS") named therein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiff's title thereto and as DOES I through 50 (thereinafter referred to as "UNKNOWN DEFENDANTS") are unknown to Plaintiffs. These unknown Defendants and each of them claim some right, title, estate, lien or interest in the SUBJECT PROPERTY thereinafter described adverse to Plaintiff's title and their claims and each of them constitute a cloud on Plaintiff's title to the SUBJECT PROPERTY. Plaintiffs are informed and therefore believe, and on that basis allege that each fictitiously named therein as a DOE is responsible for the events happening thereinafter alleged. Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendant's when ascertained.

6.      Plaintiffs are informed and therefore believe and on that basis allege that at all times mentioned therein, the Unknown Defendants are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendant in this Complaint. Plaintiffs are informed and therefore believe and on that basis allege that each of said Defendants is and at all relevant times therein, was acting within the scope and consent of the remaining named and unnamed Defendants.

7.      Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

8.      As a result of their mortgage activities, Defendants and each of them are and were subject to and must comply with the Federal Truth In Lending Act (thereinafter referred to as "TILA")[15 U.S.C.

COMPLAINT
3

§ 1601-16666j], the Federal Code of Regulations[24 C.F.R § 3500.1-3500.17]; the Real Estate Settlement Procedures Act (thereinafter referred to as "RESPA")[12 U.S.C. § 2601 et.seq.]; California Business and Professions Code [§ 17200; Federal Trade Commission § 5]; 24 Code of Federal Regulations § 3500.10; Unfair and Deceptive Business Practices and Acts [UDAP Statutes]; and California Civil Codes § 1916.7 - multiple sections, § 1632; § 2079.16 and § 1918-21.

## JURISDICTION

9.      The transactions and events which are the subject matter of this Complaint all occurred within the County of Los Angeles, State of California.

10.     The Subject Property is located within the County of Los Angeles, State of California.

## FACTUAL ALLEGATIONS

11.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

12.     For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home. Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure. The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics. All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the

COMPLAINT

4

broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

13.    The loan product sold to Plaintiffs in this case was exactly the kind of loan that has contributed to our national problem. The Defendants were aware of this trend, and possessed the foresight to advise Plaintiffs of this risk. They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiffs face the potential of losing their home to the very entity and entities who placed them in this position.

14.    On or about May 1, 2016 (thereinafter referred to as "Closing Date") Plaintiffs entered into a consumer credit transaction with defendants by obtaining a $ 1,575000.00 loan allegedly secured by Plaintiff's principal residence, (Subject Property). This note was allegedly secured by a First Trust Deed on the Property in favor of Maximus Lending Fund LLC. Arthur S. Cohen (Broker) introduced them to this product and represented himself to be a broker. He never provided his office information or BRE number to Plaintiffs. He told them this is a great product and that they can pay all their creditors at the same time with one simple loan.

15.    The terms of the finance transaction with DEFENDANT are not clear or conspicuous, nor consistent, and are illegal, and include, for example, a negative amortization of the loan, an amount financed based upon a stated income and a credit report ONLY, flawed underwriting procedures, use of understated income and other rates, fees and terms for which DEFENDANT either did not disclose, make clear or had not included as part of the finance charge, a 6 month term in which Plaintiff could never adhere. Defendant George Washington Lending prides itself on being able to lend 90% of the loan to value amount from a "single application" they also claims it takes 5 days to close the loan. [Exhibit "A"]

16.    In addition, and unbeknownst to Plaintiffs, DEFENDANT illegally, deceptively and/or otherwise unjustly, qualified Plaintiffs for a loan which the DEFENDANTS knew or should have known that Plaintiffs could not qualify for or afford.  It was obvious that Plaintiffs were in a bad

COMPLAINT
5

situation and owed many people money they could not repay. Instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiffs a deceptive loan product they knew was for the sole purpose of paying other creditors they could not afford to pay. Plaintiffs never received a copy of what they signed. They had to get a copy from escrow which was unsigned and not dated.

17.     There was no determination of the ability of the Plaintiffs to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law. The Defendants knew that Plaintiffs were under water and sold them a loan that: [**Exhibit "B"**]

    1. Had a six month maturity date;

    2. Had a Balloon Payment;

    3. Amortized loan,

    4. Outrageous monthly payments of $262,500.00 just to pay off the principal of the loan,

    5. High interest and late penalties,

    6. They knew Plaintiffs had no ability to repay the loan by defendants,

    7. Lied about monthly payments being $11,812.50 when that only pays partial interest.

    8. Plaintiffs made 5 payments of $11,812.50 equaling $59,062.50 as instructed and it did not make a dent in what they owed. They were demanded to pay the full amount on the 6th payment. [**Exhibit "C"**]

18.     Defendants neither explained the workings of the entire loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants. Plaintiffs did not know what they were getting into. They were set up to default on the loan by defendants so that they can steal their home.

19.     Further, the loan and each of its parts was drafted and explained (to the extent that any of it was actually explained) verbally and the Plaintiffs never had the chance to read the over 100 page agreement. The result was a disadvantage to Plaintiffs and a significant advantage to Defendant's to manipulate the terms and outcome of the loan.

COMPLAINT

6

20.     The purpose of entering into the above-described loan transactions was for Plaintiffs to pay a sum to other creditors and pay off the amount so that they can eventually own the Property by removing the lien. That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' actions alleged therein.

21.     Defendant, failed to perform their due diligence in investigation the legal requirements that this loan should have been processed within. As a result, Defendants now hold an interest in a loan that was improperly handled from its inception.

22.     Plaintiffs are informed and believe and therefore allege that DEFENDANT was paid Unearned fees, which were hidden from Plaintiffs which increased the interest rate of the Borrower, whereby creating a windfall for DEFENDANT. Their entire purpose of selling this loan to Plaintiffs under such terms was to take their home from them.

23.     Plaintiffs are informed and believe and therefore allege that Defendants breached their fiduciary duty to Plaintiffs because they knew or should have known that the Plaintiffs will or had a strong likelihood of defaulting on this loan, he/she has a fiduciary duty to the borrower to not place them in that loan (in harm's way).

30.     Plaintiffs are informed and believe and therefore allege that it was in the best Interest of the Defendants to promote the particular program for which they approved the Plaintiffs. It led to a maximization of profits for the Defendants, with no concern for the Plaintiffs financial position or livelihood. Plaintiffs were talked into this loan by the Broker

31.     Plaintiffs are informed and believe and therefore allege that as a result of the practices of Defendants, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending, and encompass numerous characteristics that indicate such.

32.     Plaintiffs are informed and believe and therefore allege that Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act. In fact, Plaintiffs never got a copy of the documents they signed and had to request them from escrow.

33.     Plaintiffs are informed and believe and therefore allege that Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act.

34.     Plaintiffs are informed and believe and therefore allege that Defendants engaged in unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of California Business and Professions Code § 17200 and the Unfair and Deceptive Acts and Practices statutes.

35.     Plaintiffs allege that they were a victim of Fraudulent Target Marketing by Defendants. Predatory lenders use sophisticated technology and numerous sources of publicly available data to identify potential customers. They market their products to customers they identify as financially unsophisticated or vulnerable, and therefore most likely to accept highly unfavorable loan terms. In particular, predatory lenders look for people with limited education who are not adept in financial matters and lack the financial sophistication to scrutinize loans such as the

37.     Predatory lenders, these Defendants, used target marketing not to meet the needs of their customers, but rather to identify households most vulnerable to the lenders' aggressive or fraudulent behavior. Predatory lenders' advertisements claim that easy and affordable home equity loans are a quick way for consumers to pay down credit card debt, take a desired vacation, or pay off other expenses, and still have lower monthly mortgage payments. Predatory lending also often involves fraudulent home improvement scams targeted to elderly homeowners because they are more likely than younger people to live in older homes that need repair, are less likely to undertake the repairs themselves, and may not have the cash to pay for someone else to perform them. Because these homeowners have built up substantial equity in their homes, they are particularly at risk of losing a major share, if not all, of their equity. Predatory lenders also make loans to homeowners who are mentally incapacitated and do not understand the nature of the mortgage transaction or papers to be signed. Plaintiff alleges that the Defendants engaged in this very behavior and were the cause of Plaintiffs' current economic misfortune.

COMPLAINT
8

38.    Plaintiffs allege that they were a victim of Abusive Loan Terms. The second characteristic of a predatory loan is the set of abusive terms it contains. Predatory loan terms are structured to extract the greatest possible return to the lender. For equity stripping purposes, they are also routinely designed to preclude a borrower's ability to repay the loan. The loan itself may be unnecessarily large, even in excess of a 100 percent loan-to-value ratio. As long as the amount of the loan exceeds the fair market value of the home, it is difficult for the owner to refinance the mortgage or to sell the house to pay off the loan. Negative amortization loans are structured so that interest is not amortized over the life of the loan and the monthly payment is insufficient to pay off the accrued interest. The principal balance therefore increases each month and, at the end of the loan term, the borrower may owe more than the originally borrowed amount. Plaintiffs allege that the Defendants placed Plaintiffs in a loan with the abusive loan terms as stated above. They knew that there were many liens by creditors on the property and moved all of those liens aside and put themselves in first position.

39.    Aside from the loan itself-typically offered at very high interest rates terms often include inflated and padded costs. In the case at hand, the Brokers commission alone was $55,125.00 in this transaction, prepaid interest $11,025.00 such excessive closing charges, high origination and other administrative fees, and exorbitant prepayment penalties that trap lower-income borrowers into paralyzing loans that destroy their lives. Out the door, before the money hit the Plaintiffs account, they paid $74,250.41 in closing costs to the Broker and lender! [Please see closing statement Exhibit "D"]

40.    Plaintiffs allege that they were a victim of Fraudulent Lender Behavior. Fraudulent behavior is the third identifying characteristic of a predatory loan. It refers to illegal management by the lender of the loan transaction to extract the maximum value for the lender.

**Fraudulent behavior might include:**

1) Failing to explain the terms of the loan or providing obscure information,

2) Using high-pressure tactics to force a prospective borrower to continue through the loan application process in cases in which the customer would prefer to discontinue the process,

3) Omitting explanations of amortization or balloon payments, and

COMPLAINT
9

4) Discouraging borrowers from exploring lower-cost options.

41. Initiating loans without considering the borrower's ability to repay or structuring loans with payments that a borrower cannot afford can effectively strip the equity from a homeowner. And encouraging borrowers to consolidate consumer debts into a home equity loan with a higher interest rate than the underlying consumer credit debt-thereby also increasing the size of the loan-is a standard predatory lending practice.

42. Plaintiffs were in a bad situation at the time. They were in the middle of 3 expensive lawsuits, evicted from their office, completely in financial ruin. The only asset they had was a house with a little equity. [Please see eviction notice Exhibit "E" ] and [the Caption of one of three lawsuits filed against Plaintiffs "F"]

43. The loan that Plaintiffs received from defendants was for the sole purpose of paying off other creditors that they were having problems paying. Once these creditors were paid, Defendants secured their position of first creditor on the deed. [Please see Exhibit "B"] The Plaintiffs did not receive any money. It was all paid out to other creditors. Plaintiffs made 5 payments of $11,812.50 equaling $59,062.50 as instructed, and it did not make a dent in what they owed. They were demanded to pay the full amount on the 6th payment. [Exhibit "B"]

44. Predatory lending is an outlying consequence of the inefficient financial markets that exist in many lower-income and minority communities. Predatory lending practices thrive in an environment where competition for financial services is limited or lacking, and where excessive marketing of subprime loans and fringe financial services are occurring. For this reason, effectively limiting predatory lending requires the same three-pronged approach recommended to reduce excessive fringe financial services: 1) enhanced enforcement of the relevant federal and state lending and consumer protection laws, 2) increased prime market lending, and 3) improved borrower education and awareness of financial services options and opportunities (see Carr and Schuetz 2001). Laws that specifically relate to predatory lending and whose greater enforcement must play a key role in eliminating predatory lending include the Fair Housing and Equal Credit Opportunities Acts, the

COMPLAINT
10

Real Estate Settlement Procedures Act, and the Homeowner's Equity Protection Act and the Homeowners Bill of Rights. Some predatory lending practices also might violate various federal and state consumer protection laws, such as the Truth in Lending Act. Together, these laws provide a formidable regulatory infrastructure to make important strides in removing predatory lenders from the nation's most vulnerable and distressed communities. Together, these laws cover practically every conceivable predatory lending arrangement, and Plaintiffs allege that this complaint be allowed to proceed forward through litigation, and that the Defendants be punished for committing these acts as stated above.

## FIRST CAUSE OF ACTION
### DECLARATORY RELIEF
#### (Against All Defendants)

45.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

46.     An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding their respective rights and duties, in that Plaintiffs contends that Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations 3500.10, the California Civil Code, California Business and Professions Code, UDAP, TILA and RESPA. Thus the purported power of sale by Defendants no longer applies. Plaintiffs further contend that Defendants do not have the right to foreclose on the Subject Property because Defendants did not properly comply with proper delivery procedures under RESPA. Plaintiffs further contend that the Defendants perpetrated a fraudulent loan transaction.

47.     Plaintiffs request that this Court find the purported power of sale contained in the Loan of no force and effect at this time, because Defendants actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws designed to protect borrowers, which has directly caused Plaintiffs to be at an equitable disadvantage

to Defendants. Plaintiffs further requests that title to the Subject Property remain in Plaintiff's name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation, and deem any sale of the Subject Property "unlawful and void".

48.    As a result of the Defendants' actions, Plaintiffs have suffered damages according to proof, and seeks declaratory relief that Defendants' purported power of sale is void and has no force or effect against the Subject Property.

49.    Further, Defendants' actions have been willful, knowing and malicious.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth below.

## SECOND CAUSE OF ACTION

### INJUNCTIVE RELIEF

### (Against All Defendants)

50.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

51.    Defendants have commenced a foreclosure action under the Note and have scheduled a non-judicial sale for August 4, 2017. Said sale will cause Plaintiffs great and irreparable injury in that real property is unique. Further, Plaintiffs do not believe that DEFENDANTS have the legal standing to foreclose on the property as successor trustee.

52.    The wrongful conduct of Defendants, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to Plaintiffs. Plaintiffs will not have the beneficial use and enjoyment of the property and will lose their home

53.    Plaintiffs have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs. Plaintiffs has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it is and will be impossible for Plaintiffs to determine the precise amount of damage Plaintiffs will suffer.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth below.

COMPLAINT

12

## THIRD CAUSE OF ACTION

## CONTRACTUAL BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against All Defendants)

54.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

55.    Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

56.    The terms of the Loan imposed upon Defendants a duty of good faith and fair dealing in this matter.

57.    Defendants enjoyed substantial discretionary power affecting the rights of Plaintiffs during the events alleged in this Complaint. Defendants were required to exercise such power in good faith.

58.    Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiffs when Defendants:

1.  Willfully withheld numerous disclosures;

2.  Willfully withheld notices in regard to Underwriting standards, Disclosures of additional income due to interest rate increases, failed to provide a Loan Origination Agreement and proper Notices of Plaintiff's Right to Cancel, and failure to disclose when negative credit scores were disseminated;

3.  Willfully placed Plaintiffs in a loan that they did not qualify for, could not afford, and subjected them to further financial detriment, while providing Defendants with financial benefits they would not have otherwise enjoyed.

COMPLAINT
13

59.     As a result of Defendants' breach of this covenant, Plaintiffs have suffered injury and have caused Plaintiffs the threat of loss of their home. Plaintiffs have incurred and continue to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong.

60.     Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth below.

## FOURTH CAUSE OF ACTION

## VIOLATION OF TILA, 15 U.S.C. § 1601, et.seq.

### (Against All Defendants)

61.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

62.     Defendants violated TILA by failing to provide Plaintiffs with accurate material disclosures required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

63.     Plaintiffs were never even given the tools necessary to take the care needed to discover the TILA violations contained in the loan documents. Plaintiffs were never given a complete loan document package nor any of the documents that they signed. Most, if not all pertinent documents were left out especially important disclosures such as but not limited to the Good Faith Estimate, Truth-in-Lending, Servicing Transfer, Adjustable Rate Booklet, and the Federal Equal Opportunity disclosure. The representative at DEFENDANT knew that the Plaintiffs, without the proper information, could not possibly understand what they were saying, but the representative was more concerned with getting Plaintiffs in and out, so that he can earn his quick $55,125.00 commission and

COMPLAINT
14

move to the next person. Like a mill, one after the other, Defendant through their representatives, shuffled Plaintiffs in, had Plaintiffs sign on the dotted line, and shuffled Plaintiffs out. Never were Plaintiffs even given the required documents so that they could conduct their own due diligence to find out what exactly this adjustable rate mortgage was going to turn into. All Plaintiffs could do under these circumstances to satisfy the due diligence requirement of Equitable Tolling is to call the Defendants and ask them exactly how their loan functions and adjusts. The representative at DEFENDANT painted a very rosy picture for Plaintiffs, and convinced them that that they were more than able to afford this loan than to try to pay the other creditors on their own.

64.    However the DEFENDANT representative failed to tell them and really sit down and explain to them that the initial payment structure was only paying partial interest payments, and that they would need to pay approximately $262,000.00 a month to pay off the loan before the 6 month term. Plaintiffs made 5 payments of $11,812.50 equaling $59,062.50 as instructed and it did not make a dent in what they owed. They were demanded to pay the full amount on the 6th payment. [Exhibit "C"]There was concealment of information from these people, including Plaintiffs, of the truth of what was going to happen with their payments in the near future. The very action TILA was designed to protect against.

65.    Plaintiffs, as low level English speaking, laypeople, there is only so much that Plaintiffs could have absorbed from the few minutes that the representative from Defendant had him stare at Loan Documents and had him sign at different places. Plaintiffs, could not have known what they were signing, nor were they given copies of anything pertinent for them to take to someone and ask. Plaintiffs, called Defendants and asked for copies of the documents they signed to figure out what Defendant had them sign their name to.  They were ignored. Plaintiffs had to contact escrow to get a copy of the documents.

66.    The failure of DEFENDANT to provide and accurate Truth In Lending Disclosure whereby the Finance Charge is understated or overstated by the indicated amounts below results in an Extended Right to Rescind the loan. For real estate secured loans entered into after September 30, 1995, the tolerance is $ 100.00 for under disclosed finance charge. For rescission purposes, unless

COMPLAINT
15

a foreclosure is underway, the tolerance is 1/2% of the total credit extended, over or under (1% if a refinance and no new money lent). The finance charge tolerance for defendants in foreclosure actions is $ 35.00. The failure to accurately report a finance charge is a violation under TILA, California Unfair Competition Law, CA Business & Professions Code 17200 and UDAP statutes. This is emblematic of the deceptive tactics undertaken in this loan program.

67.     An actual controversy now exists between Plaintiffs, who contend she has the right to rescind the loan alleged in this Complaint, and based on information and belief, Defendants deny that right.

68.     As a direct and proximate result of Defendants' violations Plaintiffs have incurred and continue to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

69.     Defendants were unjustly enriched at the expense of Plaintiffs who are therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants. Pursuant to CFR § 226.23 (3), Failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission.

**Material disclosures include:**

    (1) annual percentage rate,

    (2) term of the loan,

    (3) finance charge,

    (4) amount financed,

    (5) total payments, and/or

    (6)  or payment schedule.

70.     Further, Plaintiffs has not received numerous TILA initial disclosures, a mandated Mortgage Loan Origination Agreement, California Insurance Disclosure, and Separate Agreements to demonstrate the actual Truth In Lending final numbers. Plaintiffs were the victim of additional finance charges and deceptive manipulation in regard to baiting him into this type of loan program.

---

COMPLAINT
16

## SIXTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7 B

### (Against All Defendants)

78.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

79.    Violation of California Civil Code § 1916.7 B states: "the difference added to the principal of the loan as of the due date of the installment and thereafter shall bear interest as part of the principal. In no instance shall the difference which is added to the principal be an amount which causes the resulting loan-to-value ratio to exceed the loan-to-value ratio at the time of loan origination".

80.    The current loan is a negative amortizing loan and subject to the loan to value being greater that the original loan to value. As each minimum payment is made, the balance increases, increasing the loan to value ratio, thus violation thus violating the above-statute. Further, with the minimum payment amount ay $11,812.50 there is no way a loan of $1.5M can be paid off in 6 months. All the while interest is accruing and the balloon payment provision shall be applied since they are not paying enough to pay off the loan in the time necessary.

81.    As a proximate result of Defendants' actions, Plaintiffs has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7(10) c

### (Against All Defendants)

82.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

83.    An applicant for a loan originated pursuant to the provisions of this section must be given, at the time he or she requests an application, a disclosure notice in the following form:

COMPLAINT
18

"NOTICE TO BORROWER IMPORTANT INFORMATION ABOUT THE ADJUSTABLE PAYMENT, ADJUSTABLERATE LOAN. PLEASE READ CAREFULLY"...

84. The intent of the State Legislature in approving this statute was to fully inform home buyers of the pros and cons of adjustable rate mortgages and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

85. Theme, the interest rate is for 9% for the loan and the late fee is %10. Since Plaintiff has no way of timely paying back the loan, his actual interest is %19.

86. Theme, none of the Defendants provided to the borrower at any time during the processing of this loan. The result was a lack of informed knowledge of what Plaintiff was entering, and a mental state lacking intent.

87. As a proximate result of Defendants' actions, Plaintiffs have been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

### EIGHTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CIVIL CODE § 1632
#### (Against All Defendants)

88. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

89. Violation of California Civil Code § 1632 states that: "At the time and place where a contract or agreement described in paragraph (1) or (2) of subdivision (b) is executed, a notice in any of the languages specified in subdivision (b) in which the contract or agreement was negotiated shall be conspicuously displayed ..."

90. Upon a failure to comply with the provisions of this section, the person aggrieved may rescind the contract or agreement in the manner provided by this chapter.

COMPLAINT
19

91.    Plaintiff's native language is Farsi. Plaintiffs do not have strong comprehensive reading English skills. Many provisions and terms within a loan servicing agreement are easily confused and misunderstood, if understood at all. For example, the concept of "negative amortization" (that is the monthly payments on this loan only adjust once a year; and if the interest rate calculation is higher than the amount of the payment, the difference between the payment amount and the amount actually due for interest is added to the loan) is difficult for the average English speaking individual to comprehend. There is little doubt that for someone with limited or lesser comprehension of the written English language, this document would certainly be unintelligible, yet critically important to the understanding of how the loan works.

92.    As a proximate result of Defendants' actions, Plaintiffs have been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## NINTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200; PREDATORY LENDING

#### (Against All Defendants)

93.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth therein.

94.    As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

95.    The Initial and Closing loan documents provided to the Plaintiffs present a "picture" of the loan whereby the Plaintiffs continuously see interest rates presented on the loan documents as 9%. The payment is continuously represented as $ 11,812.50, and nowhere is it mentioned what the actual amortizing payment is.

COMPLAINT
20

96.    This is an Unfair and Deceptive Practice which leads the Plaintiffs to believe that they are only paying an interest rate of 9% and the monthly payment of $ $ 11,812.50. It is only disclosed that there will be an additional %10 interest on the loan amount if payments are late, knowing that plaintiffs could not make the payments. Payments will continuously adjust and raise to extraordinary amounts, in loan-legalese which most borrowers could never understand. Plaintiffs made 5 payments of $11,812.50 equaling $59,062.50 as instructed and it did not make a dent in what they owed. They were demanded to pay the full amount on the 6th payment. **[Exhibit "C"]**

97.    Defendants failed to undergo a diligent underwriting process for this loan as alleged in this complaint. They also failed to properly adjust and disclose facts and circumstances relating to Plaintiff's actual 19% interest and placed Plaintiffs in a loan, by way of stated income and misleading facts, which they should never have been approved for because he could not afford it. Defendants did have that knowledge of these facts, circumstances and risks but failed to disclose them.

98.    The current loan is riddled with deceptive and unfair methods of preying upon Plaintiffs. That list contains but is not limited to the following violations: lack of Broker Disclosures and, lack of complete Lender Initial Disclosures, flawed and substandard underwriting, lack of due diligence with regard to qualifying the Plaintiffs for the loan, Truth In Lending Disclosure errors, proper notice of Plaintiff's Right To Cancel, and Unjust Enrichment, Equal Opportunity Act Violations, failure to meet Fiduciary Duty obligations, Fraudulent Misrepresentation of loan terms, Fraud in the Factum, and Equity Stripping.

99.    By reason of Defendants fraudulent, deceptive, unfair, and other wrongful conduct as therein alleged, said Defendant has violated California Business and Professions Code § 17200 et seq. by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of them home, equity, as well as them past and future investment.

100.    The Office of Comptroller of the Currency defines Predatory Lending as any lien secured by real estate which shares well known common characteristics that result in Unfair and Deceptive Business Practices under California Business and Professions Code § 17200.

COMPLAINT
21

101.    Acts undertaken by the Defendants theme that are consistent with the Office of the Comptroller's definition include the fact that this loan was marketed in a way which fails to fully disclose all material terms and includes terms and provisions which are unfair, fraudulent or unconscionable;

102.    This loan is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan;

103.    Contains loan terms whereby the borrower can never realistically repay the loan, representative of "Bait and Switch" tactics.  They claim minimum payments are $ 11,812.50 when in reality they would have to pay $273,812.50 to pay off the loan in the 6 month period.

104.    This practice is indicative of Predatory Lending and is emblematic of the problems contained therein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## TENTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE §2079.16

#### (Against All Defendants)

105.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

106.    The integrity and the duty owed to Plaintiffs regarding the relationship between the broker and the lender has been compromised. DEFENDANT will pay a large fee to themselves as an inducement to bring them business. Lender and Broker both greatly benefit by this transaction at the detriment of the Plaintiffs.  Due to this fact and the existence of the lender/broker agreements, it is clear that the lender has some significant measure of control over the broker.

107.    In the matter of Wyatt v Union Mortgage, CA State Supreme Court, 1979; and Montoya v. McLeod (1985) 176 Cal.App.3d 57, 64, 221 Cal.Rptr. 353, the court held that a broker was the lenders'

agent even though he had no written agency agreement with the lenders and was paid by a third party, because the broker negotiated the lenders' loan and executed a promissory note in their favor.

108.    Factors the Montoya court considered in determining agent status included: (1) the principal's right to control the agent's activities; (2) the agent's right to exercise discretion in dealings with third parties on the principal's behalf; (3) whether the principal pays compensation to the agent; and (4) the principal's intent to retain the agent and the agent's intent to represent the principal. The mortgage broker had failed to disclose his Dual Agency Relationship as required by both CA statutes and RESPA. Additionally, the lender now assumes a secondary liability for the actions of the broker under agency relationships. There, the relationship between DEFENDANT as the lender and the broker is that of agents to one another and subject to liability. Further, the lack of disclosure of the status and financial interest of each of the Defendants to Plaintiffs is in violation of the California Civil Code and RESPA.

109.    As can be seen, the Yield Spread Premium significantly affects the Plaintiffs' payment and financial situation.

110.    An increase in interest rate due to the late payment penalties and costs paid to DEFENDANT was not in the best interests of the Plaintiffs.

111.    As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

112.    Absent the presence of a separate fee agreement regarding Yield Spread Premium and that Plaintiffs agreed to pay such an excessive amount to the broker, and in evaluating the Yield Spread Premium using the HUD 2 part test, DEFENDANT clearly enjoyed the benefits of Unjust Enrichment as well as unearned fees under RESPA.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## ELEVENTH CAUSE OF ACTION

### VIOLATION OF 12 FEDERAL CODE OF REGULATIONS § 226.23(a)(3)

(Against All Defendants)

113.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

114.    Failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission. Material disclosures include the: (1) annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule.

115.    Following a recalculation of the final Truth in Lending violations theme, the monthly finance charge and payments were underestimated by approximately $262,000.00.

116.    The failure of the lender to provide and accurate Truth In Lending Disclosure whereby the Finance Charge and payments is understated by the indicated amounts results in an Extended Right to Rescind the loan.

117.    For real estate secured loans entered into after 9/30/95, the tolerance is $ 100.00 for under disclosed finance charges. The finance charge tolerance for DEFENDANTS in foreclosure actions is $ 35.00 for rescission.

118.    As a proximate result of Defendants' actions, Plaintiffs have been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.


## TWELFTH CAUSE OF ACTION

## VIOLATION OF 24 FEDERAL CODE OF REGULATIONS 3500.10

### (Against All Defendants)

119.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

120.    A failure to make clear, conspicuous,   and accurate material disclosures also triggers an extended right of rescission.

121.    Plaintiffs never received a Settlement Statement prior to close of escrow or an offer to receive one prior to escrow. The purpose of receiving the statement is so that the client can review the final statement for errors and misrepresentations not present on the closing estimate. Failure to provide the

COMPLAINT
24

Final Statement did not provide the PLAINTIFFS the opportunity to review the Final Statement and enable the Plaintiffs to determine the accuracy of the Settlement Statement. The failure to provide them triggers an Extended Right to Rescind.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## THIRTEENTH CAUSE OF ACTION

## VIOLATION OF FAIR AND ACCURATE CREDIT TRANSACTION ACT OF 2003 § 221(b)

## (Against All Defendants)

122.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

123.    The credit scoring information that must be provided to the consumer is set forth in Section 212(b) of the FACT Act, which amends Section 609 of the FCRA by adding a new subsection (f).

124.    The purpose of disclosure of credit scores is to provide the client a way to determine if the loan program being offered is consistent with his credit worthiness. Failure to provide this disclosure prevents comparison of loans.

125.    None of the Defendants ever revealed to Plaintiffs, any credit scores used in the determination of approval of this loan, in violation of this section.

WTHEMEFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## FOURTEENTH CAUSE OF ACTION

## RESCISSION

## (Against All Defendants)

126.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

127.    Plaintiffs are entitled to rescind the loan for all of the foregoing reasons:

    1) TILA Violations:

    2) Failure to provide a Mortgage Loan Origination Agreement:

3) Fraudulent Concealment; and

4) Public Policy Grounds.

each of which provides independent grounds for relief.

128.    The Truth In Lending Act, 15 U.S.C § 1601, et.seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Plaintiff's right to rescind. Theme, Defendants have failed to properly disclose the details of the loan. Specifically, the initial disclosures do not initial TILA disclosures, and lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiffs in a loan she could not afford and would ultimately benefit Defendants following the negative amortization that accrued.

129.    The public interest would be prejudiced by permitting the alleged contract to stand. Such action would regard an unscrupulous lender.

130.    As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

WTHEMEFORE, Plaintiffs pray for rescission of the stated loan in its entirety, and for judgment against Defendants, and each of them, as set forth therein.

## FIFTEENTH CAUSE OF ACTION

## MISREPRESENTATION AND FRAUD

### (Against All Defendants)

140.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

141.    Defendants intentionally, willfully and wantonly engaged in the acts with the purpose of deceiving Plaintiffs and inducing them to part with their personal and real property buy using a stated income loan.

142.    The credit application and proof of ownership of property were enough, In addition to the application itself for DEFENDANTS to know what type of loan should be offered, and what the

COMPLAINT
26

PLAINTIFFS could not afford. Any falsification of a credit application by a broker or seller for the purposes of securing a loan is de facto fraud. U.S. v. Robinson, 4th Circuit, 2004.

143. The Recalculated Truth in Lending found that the Finance Charge was under stated by approximately $200,000.00. The failure of DEFENDANT to provide and accurate Truth In Lending Disclosure whereby the Finance Charge is understated or overstated by the indicated amounts below results in an Extended Right to Rescind the loan.

144. Defendants engaged in the unlawful suppression of facts or circumstances by one of the parties to a contract from the other, for self-serving purposes and financial gain, which in justice ought to be made known.

145. Plaintiffs justifiably relied on Defendant's deception, which was the actual and proximate cause of Plaintiff's damages.

146. Defendants engaged in the unlawful suppression of facts or Circumstances by one of the parties to a contract from the other, for self-serving purposes and financial gain, which in justice ought to be made known.

147. Plaintiffs justifiably relied on Defendants' deception, which was the actual and proximate cause of Plaintiffs' damages.

148. The loan originators falsely and fraudulently represented to Plaintiffs that they were participating in an equitable agreement. Defendants knowingly and intentionally concealed material information from Plaintiffs, which is required by federal Statutes and regulations to be disclosed to the Plaintiffs both before and at closing.

149. The representations made by Defendants were in fact false. The true facts were that the Plaintiffs was deceived into unknowingly signing a cognovit note, waiving their equitable rights to ownership of their property, without warning and just compensation for waiving their said rights.

150. Defendants made these representations and knew them to be false, and made these representations with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to sign an agreement that would greatly disadvantage them and cause them to relinquish ownership of

COMPLAINT
27

their property. Defendants had no intention of providing equitable consideration at the time the originating lender lead Plaintiffs to believe that she was entering into an equitable agreement.

151. Plaintiffs not being in the consumer lending, mortgage broker, or residential loan business, reasonably relied upon the Defendants to insure that the consumer credit transaction was legal, proper and compliant with all applicable laws rules and regulations. Plaintiffs, at the time these representations were made by the lender and at the time Plaintiffs signed the agreement, Plaintiffs were ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations, Plaintiffs were induced to, and did sign the cognovit note. Had Plaintiffs known the actual facts, she would not have taken such action resulting in waiving them rights to ownership of them property.

152. At all times material, Defendants had actual knowledge that the Defendants' accounts were not accurate, but that the Plaintiffs would make further payments based on Defendants' inaccurate accounts. Plaintiffs made payments based on the improper, inaccurate, and fraudulent representations as to Defendants' accounts.

153. As a direct and proximate result of the actions of the Defendants set forth above Plaintiffs overpaid in interest.

154. Plaintiffs are entitled to exemplary and punitive damages for Defendants' fraudulent conduct in the sum to be determined at trial. Further them; fraudulent concealment avoids the contract.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth Herein.

## SIXTEENTH CAUSE OF ACTION
## UNFAIR AND DECEPTIVE BUSINESS ACT PRACTICES (UDAP)
### (Against All Defendants)

155. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

156. Defendants failed to undergo a diligent underwriting process for this loan as alleged in this complaint. They also failed to properly adjust and disclose facts and circumstances relating to

Plaintiffs' loan and placed Plaintiffs in a loan, by way of stated income and misleading facts, which they should never have been approved for because they could not afford it. Defendants did have that knowledge of these facts, circumstances and risks but failed to disclose them.

157. By reason of Defendants' fraudulent, deceptive, unfair, and other them wrongful conduct as herein mentioned as alleged, said Defendants have violated California Business and Professions Code § 17200 et seq. by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of them home, equity, as well as them past and future investment.

158. The fraudulent conduct of Defendants is as follows:

a) Defendants engaged in unfair business practices aimed at deceiving Plaintiffs before and during the loan process;

b) Defendants, by and through their officers, employees and agents, failed to disclose that the interest rate actually charged on this loan was higher than the rate represented and promised to Plaintiffs;

c) Defendants by and through their officers, employees and agents concealed, omitted and/or otherwise failed to disclose information;

d) Defendants failed to disclose the true nature of interest rates on the loan;

e) Defendants failed to properly disclose that values of the property and their concerns of such an overinflated house price. Despite this, Defendants encouraged a "man in the middle of complicated personal ordeal" to buy at an overinflated price.

159. Defendants' marketing plan and scheme misleadingly portrayed or Implied that these loans were fixed rate loans, when Defendants knew that only the periodic payments were fixed (for a time), but that interest rates were not, in fact, "fixed." They claim a %9 rate when in reality they planned on a 19% rate.

160. By the foregoing reasons, Plaintiffs has suffered and continues to suffer damages in a sum which is as yet unascertained. Plaintiffs will ask leave of court to amend the complaint when the true nature and extent of said damages have been ascertained, that because securitization constitutes a

COMPLAINT
29

violation of US Federal R.I.C.O. Statutes, we can state without equivocation that the entire securitization process constitutes violations of Federal R.I.C.O. statutes, because:

(1) Their theme is the requisite criminal or civil 'enterprise'- consisting of the sponsor/issuer, the trustees and the intermediary bank. These three parties work closely together to effect the securitization transaction/

(2) There are 'predicate acts' of:

a. Mail fraud - using the mails for sending out materials among themselves and to investors.

b. Wire fraud - using wires to engage in fraud by communicating with investors.

c. Conversion – where theme there isn't proper title to collateral.

d. Deceit - misrepresentation of issues and facts pertaining to the securitization transaction.

e. Securities fraud - disclosure issues.

f. It entails loss of profit opportunity.

g. It involves the making of false statements and or misleading representations about the value of the collateral,

h. It entails stripping the originator/issuer of the ability to pay debt claims or Judgment claims in bankruptcy court, a state of affairs that may apply where the sponsor is financially distressed and the cash proceeds of the transaction are significantly less than the value of the collateral.

Defendants, filed and were granted leave of stay when they pushed Plaintiffs into bankruptcy. On the forth page of their petition they state; "Arrehbori LLC and Guarantors are obligated on the loan and have failed to make payments to Movant by paying Movant's loan upon the maturity date of September 1, 2016." This was their plan all along. [**Exhibit "G"**]

161.    Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct are specifically designed to defraud Plaintiffs, constituting an "enterprise", with the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiffs

through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan document.

162.    Defendants are willfully hiding the original promissory note so as to conceal their RICO operation of fractional reserve lending in violation of law, good faith, and fair business dealings.

163.    By reason of the foregoing, and as a direct and proximate result of the actions of the Defendants, Plaintiffs have and continue to suffer damages in a sum which is, as yet unascertained. WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

## SEVENTEENTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
#### (Against Defendants)

164.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

165.    Defendants owed a fiduciary duty to Plaintiffs and breached that duty by ailing to advise or notify Plaintiffs when Defendant's broker knew or should have known that Plaintiffs will or has a likelihood of defaulting on the loan, Defendants have a fiduciary duty to the borrower to not place them in that loan (in harm's way).

166.    Regarding this loan, it was in the best interest of the Defendants to promote the particular program for which they approved the Plaintiffs. It led to a maximization of profits for the Defendants, with no concern for the borrower. Alternative loan programs would have netted less return for the lender, though better for the borrower.

167.    Defendant failed to provide material disclosures regarding the loan and its interest rate to Plaintiffs while in the capacity of Plaintiff's Lender.

168.    DEFENDANT served in multiple capacities without disclosing said roles to Plaintiffs. DEFENDANT served as original lender, broker and servicer. These multiple roles allowed DEFENDANT to have more control over the actions, safeguards and compliance requirements which

were violated per this Complaint. The multiple roles DEFENDANT played were a breach of their duty of loyalty and to their fiduciary, the Plaintiff borrowers.

169.    Defendants failed to fully comply with TILA/RESPA regulations and laws designated to protect Plaintiffs. The failure to do so placed Plaintiffs in a serious disadvantage and potential loss of their home. Such actions are violations of a fiduciary responsibility owed to Plaintiffs by Defendants. WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## EIGHTEENTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Against All Defendants)

170.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

171.    Defendants provided the Plaintiffs with an agreement to repay a loan that had and the following terms:

    1. Had a six month maturity date;

    2. Had a Balloon Payment;

    3. Amortized loan,

    4. Outrageous monthly payments of $262,500.00 just to pay off the principal of the loan,

    5. High interest and late penalties,

    6. They knew Plaintiffs had no ability to repay the loan by defendants,

    7. Lied about monthly payments being $11,812.50 when that only pays partial interest. Plaintiffs made 5 payments of $11,812.50 equaling $59,062.50 as instructed and it did not make a dent in what they owed. They were demanded to pay the full amount on the 6th payment. [Exhibit "C"]

This allowed Defendants to charge %19 interest and steal Plaintiffs collateral within 6 months, which was worth tremendous value to Defendants.

172.    Plaintiffs likewise expected in return, fair and truthful dealings, disclosures and practices by Defendants while providing value to Defendants.

173.    Defendants acknowledged, accepted, and benefited from the Plaintiff's agreement to enter into the loan.

174.    A forced sale of the Plaintiff's home, and an allowance for Defendant's to recoup the extreme profits enjoyed by forcing Plaintiffs into an imbalance of principal to interest ratio, would be inequitable and unconscionable, while the Defendants enjoy the benefit of the Plaintiffs actions without paying for their own breaches of the law and professional responsibilities.

WHEREFORE, Plaintiffs pray for restitution and for judgment against Defendants, and each of them, as set forth therein.

# NINETEENTH CAUSE OF ACTION
## UNCONSCIONABILITY
### (UCC-2-3202)
### (Against All Defendants)

175.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

176.    If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

177.    When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

178.    Theme, based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the Defendants were require to follow; coupled

with the windfall that the Defendants reaped financially from their predatory practices upon Plaintiff's, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

## TWENTIETH CAUSE OF ACTION

### CONVERSION

#### (Against All Defendants)

179.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

180.    On or about **AUGUST 4, 2017,** Defendants, will attempt to force an illegal non-judicial sale of the SUBJECT PROPERTY by filing a Notice of Trustee's Sale, attempting to claim a right of entry to the SUBJECT PROPERTY. Plaintiffs have not consented to such an entry and dispute the Defendants right. **[Exhibit "H" notice of sale]**

181.    The personal and real property located within the SUBJECT PROPERTY has a value to Plaintiffs, both compensable and sentimental.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## TWENTY-FIRST CAUSE OF ACTION

### QUIET TITLE

#### (All Defendants Claiming Any Interest In the Subject Property)

182.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

183.    Plaintiffs is at all times therein mentioned the owner and/or entitled to possession of the Property, until the date of sale that transferred physical possession of the deed of trust to the non-bonafide subsequent purchaser.

184.    Plaintiffs are informed and therefore believe and thereupon allege that Defendants, and each of them, claim an interest in the Subject Property adverse to Plaintiffs. However, as a result of the

conduct more fully described in the preceding allegations, the claim of Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the SUBJECT PROPERTY.

185.    Plaintiffs therefore seek a declaration that the title to the SUBJECT PROPERTY is vested in Plaintiff's alone and that the Defendants therein, and each of them, be declared to have no estate, right, title or interest in the SUBJECT PROPERTY and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the SUBJECT PROPERTY adverse to Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## TWENTY-SECOND CAUSE OF ACTION

### BREACH OF CONTRACT

### (Against all Defendants)

186.    Plaintiffs repeats and re-alleges each and every allegation contained in paragraphs above inclusive and incorporates same as though set forth at length.

187.    Plaintiffs allege there was no fair and reasonable consideration. The loan originators knew about the unconscionable clauses in the loan documents but never provided fair consideration. The loan originators must make restitution and cannot benefit from the misrepresentations and fraud committed against the Plaintiffs.

188.    Plaintiffs have performed all conditions and covenants, and promises required by them to be performed in accordance with the terms and conditions of the alleged agreement.

189.    By reason of Defendants' nondisclosure of the cognovit clauses, misrepresentation and lack of contractual consent in the alleged contract, the contract is void, unenforceable, and Plaintiffs have suffered damages in excess of the sum of $1.85M which is to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

///

///

COMPLAINT

35

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs will ask for the following for each Cause of Action sustained:

1. For Compensatory Damages in an amount to be determined by proof at trial.

2. For Special Damages in an amount to be determined by proof at trial.

3. For General Damages in an amount to be determined by proof at trial.

4. For Treble Damages in an amount to be determined by proof at trial.

5. For Punitive Damages as against the individual Defendants.

6. For Attorney's Fees and Costs of this action.

7. For Declaratory Relief, including a declaration that Plaintiffs is the prevailing party.

8. For Injunctive Relief;

9. For a judgment rescinding the Loan and Security Agreement and setting forth terms of restitution.

10. For any prejudgment or other interest according to law.

11. Any other and further relief that the Court considers just and proper.

Date: July 27, 2016                        LAW OFFICES OF GOLDY M. BERGER

By: _____
    Goldy M. Berger, Esq.
    Attorneys for Plaintiffs

## VERIFICATION

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I have read the foregoing VERIFIED COMPLAINT FOR: (1) DECLARATORY RELIEF; (2) INJUNCTIVE RELIEF; (3) CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALING; (4) VIOLATIONS OF TILA; (5) VIOLATION OF CALIFORNIA CIVIL CODE § 1918.5-1920, 1921; (6) VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7 B; (7) VIOLATION OF CALIFORNIA CIVIL CODE § 1916(10)c; (8) VIOLATION OF CALIFORNIA CIVIL CODE § 1632; (9) VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES UNDER CA BUSINESS AND PROFESSIONS CODE § 17200 & PREDATORY LENDING; (10) VIOLATION OF CALIFORNIA CIVIL CODE § 2079.16; (11) VIOLATION OF 12 CODE OF FEDERAL REGULATIONS § 226.23(a)(3); (12) VIOLATION OF 24 CODE OF FEDERAL REGULATIONS §3500.10; (13) VIOLATION OF THE FAIR AND; (14) ACCURATE CREDIT TRANSACTION ACT OF 2003 §221(b); (14) RESCISSION; (15) MISREPRESENTATION AND FRAUD; (16) UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP); (17) BREACH OF FIDUCIARY DUTY; (18) UNJUST ENRICHMENT; (19) UNCONSCIONABILITY; (20) CONVERSION; (21) QUIET TITLE; (22) BREACH OF CONTRACT, and know its contents.

I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 27 day of July, 2017, in _____Los Angeles_____, California.

_____
RABIN ARREHBORI

## VERIFICATION

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I have read the foregoing VERIFIED COMPLAINT FOR: (1) DECLARATORY RELIEF; (2) INJUNCTIVE RELIEF; (3) CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALING; (4) VIOLATIONS OF TILA; (5) VIOLATION OF CALIFORNIA CIVIL CODE § 1918.5-1920, 1921; (6) VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7 B; (7) VIOLATION OF CALIFORNIA CIVIL CODE § 1916(10)c; (8) VIOLATION OF CALIFORNIA CIVIL CODE § 1632; (9) VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES UNDER CA BUSINESS AND PROFESSIONS CODE § 17200 & PREDATORY LENDING; (10) VIOLATION OF CALIFORNIA CIVIL CODE § 2079.16; (11) VIOLATION OF 12 CODE OF FEDERAL REGULATIONS § 226.23(a)(3); (12) VIOLATION OF 24 CODE OF FEDERAL REGULATIONS §3500.10; (13) VIOLATION OF THE FAIR AND; (14) ACCURATE CREDIT TRANSACTION ACT OF 2003 §221(b); (14) RESCISSION; (15) MISREPRESENTATION AND FRAUD; (16) UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP); (17) BREACH OF FIDUCIARY DUTY; (18) UNJUST ENRICHMENT; (19) UNCONSCIONABILITY; (20) CONVERSION; (21) QUIET TITLE; (22) BREACH OF CONTRACT, and know its contents.

I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 27 day of July, 2017, in _Los Angeles_____, California.

_Raymond Arrehbori_
RAYMOND ARREHBORI

COMPLAINT
38

# Exhibit "A"



# GEORGE WASHINGTON
## LENDING CORPORATION

CALL US NOW
844-202-2015



# REAL ESTATE LOANS FROM A DIRECT PRIVATE LENDER

90% LTV available, asset based underwriting, simple application.

Spend 5 minutes with us and get your loan closed in 5 days.

OUR
PRODUCTS

APPLY FOR
THE LOAN

(products.php)

(apply.php)



© 2015 George Washington Lending Corporation. All rights reserved.
CA BRE License # 01979276

Home (/)  |  Products (products.php)  |  Apply (apply.php)

# Exhibit "B"

Loan # L201512100

# TERMS OF THE LOAN

## Loan Type:

Interest Only With Balloon Payment: XX

Partially Amortized With Balloon Payment:

Fully Amortized:

Accrued all principal and interest to be paid at maturity.

Loan Amount: $1,575,000.00

Interest Rate: 9.00%

Term of Loan: 6

No. of Prepaid Payments

Loan Position: 1

First Due Date: 04/01/2016

Maturity Date: 09/01/2016

Payment Amount: $11,812.50

Estimated Balloon Payment: $1586812.50

1st Payment Change Date: N/A

Prepay Penalty: Yes    No XX

Prepayment Penalty Expiration:

Prepayment Penalty Maximum: $0.0000000

Late Charge Days: 5

Late Charge Percentage: 10.00%

*The undersigned do/does hereby understand that the above terms are just the basic terms of my/our loan. I/We understand that we need to review all loan documentation to understand all of the terms, that conditions of my/our loan.*

Arrehbori Family LLC.

_____
**Raymond Arrehbori Manager /Date**

_____
Rabin Arrehbori Manager /Date

TRMSOFLN.DOC

# Exhibit "C"

# WIRE TRANSFER APPLICATION

**WILSHIRE BANK**

## 1.WIRE INFORMATION 송금내용

| SELECT ONE | | METHOD OF SUBMISSION |
|---|---|---|
| ☑ DOMESTIC | ☐ INTERNATIONAL | ☒ IN PERSON |
| **** U.S DOLLAR ONLY **** | ☐ Foreign currency amount to be delivered? OR ☐ US Dollar amount to be delivered? / Foreign Currency Type | ☐ FAXED APPLICATION |

| TRANSFER AMOUNT | TRANSFER AMOUNT in US Dollars | TRANSFER AMT in Foreign Currency | METHOD OF PAYMENT (Select One) |
|---|---|---|---|
| $ 11812.50 | $ | | ☐ CASH ___ |
| TRANSFER FEES $ 25.00 | TRANSFER FEES $ | | ☒ CHECK Withdrawn |
| TOTAL AMOUNT RECEIVED $ 11837.50 | TOTAL AMOUNT RECEIVED $ | | ☐ DEBIT ACCT ___ |
| | | | ☐ OTHERS ___ |

## 2.CUSTOMER (REMITTER) INFORMATION 고객(송금인)

| CUSTOMER NAME | ACCOUNT NUMBER |
|---|---|
| Raymond Arrehbori | 7046219 |
| ADDRESS 237 S. wetherly Dr. Beverly Hills, CA 90211 | TELEPHONE 213-216-5252 |
| | COUNTRY USA |

### NON-CUSTOMER USE ONLY

| IDENTIFICATION TYPE (Select Appropriate) | IDENTIFICATION NUMBER | ISSUED BY | EXPIRATION DATE |
|---|---|---|---|
| ☐ DRIVER'S LICENSE   ☐ STATE ID   ☐ PASSPORT | | | |

## 3.BENEFICIARY (RECIPIENT) INFORMATION 받는사람

| ACCOUNT NUMBER OR IBAN NUMBER | |
|---|---|
| 7545834739 | |
| NAME George Washington Lending INC. | |
| ADDRESS 660 Sacramento St. Suite 201 San francisco, CA 94111 | TELEPHONE 415-757-6625 |
| | COUNTRY |

## 4.BENEFICIARY BANK INFORMATION 받는은행

| BANK NAME | ABA NUMBER (Domestic) |
|---|---|
| Northbrook Bank & Trust | 071926184 |
| ADDRESS 1100 Waukegan Road Northbrook, IL 60062 | SWIFT CODE (International) |
| | COUNTRY USA |

WILSHIRE BANK
B-77
MAY 03 2016
TELLER #5

SPECIAL INSTRUCTIONS (Optional)
특별지시사항

### CUSTOMER AUTHORIZATION

By signing below, you confirm that: (a) you have verified the information set forth above, and (b) you have read and agreed to the Wire Transfer Service Terms and Conditions.

X _Raymond Arrehbori_     Date 5/3/16

## BANK USE ONLY

### BRANCH OR DEPARTMENT

| BRANCH # | FAX AGREEMENT ON FILE? | CALLER | VERIFIED INFO | | FUNDS AVAILABILITY |
|---|---|---|---|---|---|
| 007 | ☒ YES   ☐ NO | SPOKE TO | TIME | Wire transfer 30 mins | CHECKED   VERIFIED |
| INPUTTED BY | | SYSTEM VERIFIED BY | | APPROVED BY | |

### WIRE DEPARTMENT

| TEST KEY | REFERENCE NUMBER | CONCURRENT APPROVAL | ENTERED BY | VERIFIED BY | FED RELEASED BY |
|---|---|---|---|---|---|
| | | | | | |

WIRE TRANSFER APP (REV. 03/24/2014)         WHITE - BANK         PINK - CUSTOMER

# WIRE TRANSFER APPLICATION

## W WILSHIRE BANK

### 1. WIRE INFORMATION 송금내용

| SELECT ONE | | | METHOD OF SUBMISSION |
|---|---|---|---|
| ☒ DOMESTIC | ☐ INTERNATIONAL | | ☒ IN PERSON |
| **** U.S DOLLAR ONLY **** | ☐ Foreign currency amount to be delivered? OR ☐ US Dollar amount to be delivered? | Foreign Currency Type | ☐ FAXED APPLICATION |

| TRANSFER AMOUNT $ 11,812.50 | TRANSFER AMOUNT in US Dollars $ | TRANSFER AMT in Foreign Currency | METHOD OF PAYMENT (Select One) |
|---|---|---|---|
| | | | ☐ CASH _____ |
| TRANSFER FEES $ 25.00 | TRANSFER FEES $ | | ☒ CHECK withdrawal |
| | | | ☐ DEBIT ACCT _____ |
| TOTAL AMOUNT RECEIVED $ 11,837.50 | TOTAL AMOUNT RECEIVED $ | | ☐ OTHERS _____ |

### 2. CUSTOMER (REMITTER) INFORMATION 고객/송금인

CUSTOMER NAME: Raymond Airehbori I
ACCOUNT NUMBER: 7046219

ADDRESS: 237 swetherly DR
12H. CA 90211
TELEPHONE: 213-216-5252
COUNTRY: USA

NON-CUSTOMER USE ONLY

| IDENTIFICATION TYPE (Select as appropriate) | | | IDENTIFICATION NUMBER | ISSUED BY | EXPIRATION DATE |
|---|---|---|---|---|---|
| ☐ DRIVER'S LICENSE | ☐ STATE ID | ☐ PASSPORT | | | |

### 3. BENEFICIARY (RECIPIENT) INFORMATION 받는사람

ACCOUNT NUMBER OR IBAN NUMBER: 7545834739

NAME: George Washington Lending inc

ADDRESS: 660 Sacramento St suite 201
San Francisco CA 94111
TELEPHONE: 415 757 6625
COUNTRY: USA

### 4. BENEFICIARY BANK INFORMATION 받는은행

BANK NAME: North Brook bank & trust
ABA NUMBER (Domestic): 071926184

ADDRESS: 1100 Waukegan Road
North Brook IL 60062
SWIFT CODE (International): Airehbori
COUNTRY: USA

WILSHIRE BANK 597

SPECIAL INSTRUCTIONS (Optional) 특별지시사항

JUN 02 2016

### CUSTOMER AUTHORIZATION

By signing below you confirm that: (a) you have verified the information set forth above, and (b) you have read and agreed to the Wire Transfer Service Terms and Conditions.

X _____
Date: 06 - 2016

### BANK USE ONLY

| BRANCH OR DEPARTMENT | | | | |
|---|---|---|---|---|
| BRANCH # 057 | FAX AGREEMENT ON FILE? ☐ YES ☐ NO | CALLER _____ SPOKE TO _____ | VERIFIED INFO _____ TIME _____ | Wire Transfer YB - Heads |
| FUNDS AVAILABILITY | | | | |
| CHECKED ✓ | VERIFIED | | | |

| INPUTED BY | SYSTEM VERIFIED BY | APPROVED BY | |
|---|---|---|---|

### WIRE DEPARTMENT

| TEST KEY | REFERENCE NUMBER | CONCURRENT APPROVAL | ENTERED BY | VERIFIED BY | FED RELEASED BY |
|---|---|---|---|---|---|

WIRE TRANSFER APP (REV. 03/24/2014)     WHITE - BANK     PINK - CUSTOMER

Wilshire Bank | Wire Automation - Detail                    Page 1 of 1

# Wilshire Bank

**Wire Automation**
V 2.0.0

Type : **Fed Out**              Date : **7/8/2016**
Status :                        IMAD : **20160708QMGFT006000646**

## Originator
Name : **RABIN ARREHBORI**
Address : **237 S. WETHERLY DR.**
**BEVERLY HILLS, CA 90211**

Bank :
Address :

Sender to Receiver
Info :

## Beneficiary
Account : **7545834739**
Name : **GEORGE WASHINGTON LENDING INC**
Address : **660 SACRAMENTO ST. SUITE 201 SAN FRANCISCO, CA**
**94111 USA TEL: 415-757-6625**

Currency Code :              **USD**
Amount : **$11,812.50**
Fee :     **$25.00**
Total : **$11,837.50**

Reference :
Bank :
Address :

Print          Close

https://jmfa/wire2/asp/Preview.asp?id=1407548                    7/24/2017

# WIRE TRANSFER APPLICATION

**W/ WILSHIRE BANK**

## 1. WIRE INFORMATION 송금내용

| SELECT ONE | METHOD OF SUBMISSION |
|---|---|
| ☒ DOMESTIC | ☐ INTERNATIONAL | ☒ IN PERSON |
| **** U.S DOLLAR ONLY **** | ☐ Foreign currency amount to be delivered? / Foreign Currency Type / OR / ☐ US Dollar amount to be delivered? | ☐ FAXED APPLICATION |

| TRANSFER AMOUNT | TRANSFER AMOUNT In US Dollars | TRANSFER AMT In Foreign Currency | METHOD OF PAYMENT (Select One) |
|---|---|---|---|
| $ 11812 50 | $ | | ☐ CASH |
| TRANSFER FEES | TRANSFER FEES | | ☒ CHECK (withdrawal) |
| $ 25 - | $ | | ☐ DEBIT ACCT |
| TOTAL AMOUNT RECEIVED | TOTAL AMOUNT RECEIVED | | ☐ OTHERS |
| $ 11837 50 | $ | | |

## 2. CUSTOMER (REMITTER) INFORMATION 고객/송금인

| CUSTOMER NAME | ACCOUNT NUMBER |
|---|---|
| Rabin Arrehbori | 7035810 |
| ADDRESS | TELEPHONE |
| 237 S. wetherly Dr. | 213-216-5251 |
| Beverly Hills, CA 90211 | COUNTRY  USA |

### NON-CUSTOMER USE ONLY

| IDENTIFICATION TYPE (SELECT APPROPRIATE) | IDENTIFICATION NUMBER | ISSUED BY | EXPIRATION DATE |
|---|---|---|---|
| ☐ DRIVER'S LICENSE   ☐ STATE ID   ☐ PASSPORT | | | |

## 3. BENEFICIARY (RECIPIENT) INFORMATION 수취인

| ACCOUNT NUMBER OR IBAN NUMBER |
|---|
| 7545834739 |

| NAME |
|---|
| George Washington Lending INC. |

| ADDRESS | TELEPHONE |
|---|---|
| 660 Sacramento St. suite 2014 | 415-757-6625 |
| San Francisco, CA 94111 | COUNTRY  USA |

## 4. BENEFICIARY BANK INFORMATION 받는은행

| BANK NAME | ABA NUMBER (Domestic) |
|---|---|
| Northbrook Bank & Trust | 071926184 |
| ADDRESS | SWIFT CODE (International) |
| 1100 Waukegan Road | |
| Northbrook, IL 60062 | COUNTRY  USA |

**WILSHIRE BANK BR.7**

**AUG 05 2016**

**TELLER #5**
122638251

| SPECIAL INSTRUCTIONS (Optional) 특별지시사항 |
|---|

### CUSTOMER AUTHORIZATION

By signing below, you confirm that: (a) you have verified the information set forth above, and (b) you have read and agreed to the Wire Transfer Service Terms and Conditions.

X _____    Date  8/5/16

## BANK USE ONLY

### BRANCH OR DEPARTMENT

| BRANCH # | FAX AGREEMENT ON FILE? | | VERIFIED INFO | | FUNDS AVAILABILITY |
|---|---|---|---|---|---|
| 007 | ☐ YES  ☐ NO | CALLER _____ SPOKE TO _____ | Wire Transfer / ID - Receipt | TIME _____ | CHECKED / VERIFIED |

| INPUTTED BY | | SYSTEM VERIFIED BY | | APPROVED BY |
|---|---|---|---|---|

### WIRE DEPARTMENT

| TEST KEY | REFERENCE NUMBER | CONCURRENT APPROVAL | | ENTERED BY | VERIFIED BY | FED RELEASED BY |
|---|---|---|---|---|---|---|

WIRE TRANSFER APP (REV. 03/24/2014)          WHITE - BANK          PINK - CUSTOMER

# WIRE TRANSFER APPLICATION

**W WILSHIRE BANK**

## 1. WIRE INFORMATION 송금내용

| SELECT ONE | METHOD OF SUBMISSION |
|---|---|

☑ DOMESTIC ☐ INTERNATIONAL
**** U.S DOLLAR ONLY ****

☐ Foreign currency amount to be delivered?  Foreign Currency Type
OR
☑ US Dollar amount to be delivered?

METHOD OF SUBMISSION
☑ IN PERSON
☐ FAXED APPLICATION

| TRANSFER AMOUNT | TRANSFER AMOUNT in US Dollars | TRANSFER AMT in Foreign Currency | METHOD OF PAYMENT (Select One) |
|---|---|---|---|
| $ 11,812.50 | $ 11,812.50 | | ☐ CASH _____ |
| TRANSFER FEES | TRANSFER FEES | | ☑ CHECK  withdrawal |
| $ 25.00 | $ 25 | | ☐ DEBIT ACCT _____ |
| TOTAL AMOUNT RECEIVED | TOTAL AMOUNT RECEIVED | | ☐ OTHERS _____ |
| $ 11,837.50 | $ 11,837.50 | | |

## 2. CUSTOMER (REMITTER) INFORMATION 고객/송금인

| CUSTOMER NAME | ACCOUNT NUMBER |
|---|---|
| Raymond Arrehbors | 7046219 |
| ADDRESS | TELEPHONE |
| 237 swetherly DR | 213 216 5252 |
| B.H CA 90211 | COUNTRY  USA |

**NON CUSTOMER USE ONLY**

| IDENTIFICATION TYPE (Select Appropriate) | IDENTIFICATION NUMBER | ISSUED BY | EXPIRATION DATE |
|---|---|---|---|
| ☐ DRIVER'S LICENSE ☐ STATE ID ☐ PASSPORT | | | |

## 3. BENEFICIARY (RECIPIENT) INFORMATION 수취인

| ACCOUNT NUMBER OR IBAN NUMBER |
|---|
| 7575834739 |

| NAME | |
|---|---|
| George washington Lending iNC | |
| ADDRESS | TELEPHONE |
| 660 Sacramento st suite 20/ | 415 757 6625 |
| San francisco CA 94111 | COUNTRY  USA |

## 4. BENEFICIARY BANK INFORMATION 받는은행

| BANK NAME | ABA NUMBER (Domestic) |
|---|---|
| Northbrook bank &Trust | 071926184 |
| ADDRESS | SWIFT CODE (International) |
| 1100 wankegan Rotch | |
| Northbrook,il 60062 | COUNTRY  USA |

| | WILSHIRE BANK BR 7 |
|---|---|
| | APR 08 2016 |

SPECIAL INSTRUCTIONS (Optional)
특별지시사항

TELLER #5
122038251

**CUSTOMER AUTHORIZATION**

By signing below, you confirm that: (a) you have verified the information set forth above, and (b) you have read and agreed to the Wire Transfer Service Terms and Conditions.

x _Raymond Arrehbors_    Date: 4-8-16   $11,812.50

| BANK USE ONLY | | | |
|---|---|---|---|

**BRANCH OR DEPARTMENT**

| BRANCH # | FAX AGREEMENT ON FILE? | CALLER _____ | VERIFIED INFO  Wire Transfer | FUNDS AVAILABILITY |
|---|---|---|---|---|
| 007 | ☑ YES ☐ NO | SPOKE TO _____ | ID - Hared   TIME _____ | CHECKED  VERIFIED |

| INPUTTED BY | SYSTEM VERIFIED BY | APPROVED BY |
|---|---|---|
| S | | |

**WIRE DEPARTMENT**

| TEST KEY | REFERENCE NUMBER | CONCURRENT APPROVAL | ENTERED BY | VERIFIED BY | FED RELEASED BY |
|---|---|---|---|---|---|
| | | | | | |

WIRE TRANSFER APP (REV. 03/24/2014)          WHITE - BANK          PINK - CUSTOMER

# Exhibit "D"



**iClose Escrow**

17744 Skypark Circle, Suite 290, Irvine CA 92614
Tel (949) 221-8162 • Fax (949) 271-3704
Info@iCloseEscrow.com

## ESCROW SETTLEMENT STATEMENT
### Final

| | | |
|---|---|---|
| Escrow Number: | 1695-ME | |
| Escrow Officer: | Mike Eldo | |

| | |
|---|---|
| Title Order Number: | NXCA-0210970 |
| Date: | 01/20/2017 – 4:06:53PM |
| Closing Date: | 02/16/2016 |
| Disbursement Date: | 02/16/2016 |

Borrower: Arrehbori Family, LLC.
Property: 237 South Wetherly, Beverly Hills, CA 90211

| SELLER DEBITS | SELLER CREDITS | DESCRIPTION | BORROWER DEBITS | BORROWER CREDITS |
|---|---|---|---|---|
| | | TOTAL CONSIDERATION | | |
| | | TITLE CHARGES | | |
| | | Lender/Mortgagee Premium for 1,575,000.00: Nextitle | 1,760.00 | |
| | | Mortgage Recording Fee: Nextitle | 682.00 | |
| | | Messenger Fee: To Be Determined | 25.00 | |
| | | Wire/Express: Nextitle | 60.00 | |
| | | Recording: Nextitle | 110.00 | |
| | | ESCROW CHARGES TO: iClose Escrow, Inc. | | |
| | | Escrow Fee | 2,500.00 | |
| | | Document Preparation Fee | 500.00 | |
| | | Wire Fee | 90.00 | |
| | | Notary Signing Fee | 500.00 | |
| | | Courier | 100.00 | |
| | | LENDER CHARGES | | |
| | | New to George Washington Lending Inc: | | 1,575,000.00 |
| | | Loan Fee @ 3.50 %: George Washington Lending Inc | 55,125.00 | |
| | | Prepaid Interest From 2/09/2016 To 2/29/2016, 20 Days, @ 393.7500/per day: George Washington Lending Inc | 7,875.00 | |
| | | Underwriting Fee: George Washington Lending Inc | 695.00 | |
| | | Processing Fee: George Washington Lending Inc | 300.00 | |
| | | LOAN PAYOFF: Citibank | | |
| | | Principal Balance    426,927.33 | | |
| | | Interest From 2/01/2016 To 2/12/2016    2,223.58 | | |
| | | Miscellaneous Charge    75.00 | | |
| | | Reconveyance Fee    18.00 | | |
| | | Miscellaneous Charge    234.75 | | |
| | | Interest From 2/01/2016 To 2/12/2016    877.20 | | |
| | | wire    15.00 | | |
| | | Total Loan Payoff | 430,370.86 | |
| | | LOAN PAYOFF: Citibank 2nd | | |
| | | Principal Balance    241,856.65 | | |
| | | Interest From    To 2/15/2016    1,362.58 | | |
| | | Statement / Demand Fee    48.00 | | |
| | | Reconveyance Fee    25.00 | | |
| | | Total Loan Payoff | 243,292.23 | |
| | | LOAN PAYOFF: Ray Davies | | |
| | | Principal Balance    250,000.00 | | |
| | | Total Loan Payoff | 250,000.00 | |
| | | LOAN PAYOFF: Sionit Nieman | | |
| | | Principal Balance    300,000.00 | | |
| | | Total Loan Payoff | 300,000.00 | |
| | | LOAN PAYOFF: Moossa Lari | | |
| | | Principal Balance    75,000.00 | | |



## iClose Escrow

17744 Skypark Circle, Suite 290, Irvine CA 92814
Tel (949) 221-8162 • Fax (949) 271-3704
info@iCloseEscrow.com

### ESCROW SETTLEMENT STATEMENT
Final

Escrow Number:   1695-ME
Page        2

| SELLER | | DESCRIPTION | BORROWER | |
| DEBITS | CREDITS | | DEBITS | CREDITS |
|---|---|---|---|---|
| | | Total Loan Payoff | 75,000.00 | |
| | | LOAN PAYOFF: Internal Revenue Service | | |
| | | Payoff Amount                    41,632.31 | | |
| | | Total Loan Payoff | 41,632.31 | |
| | | ADDITIONAL DISBURSEMENTS: | | |
| | | Homeowner's Insurance: Cal Best Insurance | 1,698.00 | |
| | | BALANCE DUE BUYER | 162,684.60 | |
| | | TOTALS | 1,575,000.00 | 1,575,000.00 |

THIS IS A FINAL CLOSING STATEMENT

# Exhibit "E"

COUNTY OF LOS ANGELES
## SHERIFF'S DEPARTMENT
### COURT SERVICES DIVISION

# NOTICE TO VACATE

CASE NUMBER: _BC 607589_

TO: Judgment debtor, members of the judgment debtor's household, and any occupants residing with the judgment debtor.

By virtue of a **Writ of Possession of Real Property**, a copy of which is attached,

**YOU ARE ORDERED TO VACATE THE PREMISES DESCRIBED IN THE WRIT NOT LATER THAN:** _3-20_ , 20 _16_ .

SHERIFF'S BRANCH (Name, Address and Telephone Number)

JIM McDONNELL, SHERIFF

#400054 R. Booker

By: _____

Date: _____ Deputy _3-15-16_

76N654E SH-CI-52 (REV. 9/94)

*NOTICE TO VACATE*

---

COUNTY OF LOS ANGELES
## SHERIFF'S DEPARTMENT
### COURT SERVICES DIVISION

# NOTICE TO VACATE

CASE NUMBER: _BC 607589_

TO: Judgment debtor, members of the judgment debtor's household, and any occupants residing with the judgment debtor.

By virtue of a **Writ of Possession of Real Property**, a copy of which is attached,

**YOU ARE ORDERED TO VACATE THE PREMISES DESCRIBED IN THE WRIT NOT LATER THAN:** _3-20_ , 20 _16_ .

SHERIFF'S BRANCH (Name, Address and Telephone Number)

JIM McDONNELL, SHERIFF

#400054 R. Booker

By: _____

Date: _____ Deputy _3-15-16_

76N654E SH-CI-52 (REV. 9/94)

*NOTICE TO VACATE*

EJ-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number and address): | FOR COURT USE ONLY |
|---|---|
| Rebecca Hufford-Cohen                          SBN:  101783<br>The Law Office Of Rebecca Hufford Cohen<br>433 North Camden Drive Suite 600<br>Beverly Hills, CA 90210<br>　TELEPHONE NO.: (310) 860-5107    FAX NO.: (310) 275-1380<br>　E-MAIL ADDRESS:<br>ATTORNEY FOR (Name): DIBAS LLC<br>[X] ATTORNEY FOR  [X] JUDGMENT CREDITOR  [ ] ASSIGNEE OF RECORD | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
　STREET ADDRESS: 111 North Hill Street
　MAILING ADDRESS: 111 North Hill Street
　CITY AND ZIP CODE: Los Angeles, 90012
　BRANCH NAME: Stanley Mosk Courthouse on Hill St.

PLAINTIFF: DIBAS LLC

DEFENDANT: M.R.R. FABRIC, INC., RAYMOND ARREHBORI AND RABIN ARREHBORI

| WRIT OF | [ ] EXECUTION (Money Judgment)<br>[X] POSSESSION OF [ ] Personal Property<br>　　　　　　　　　　 [X] Real Property<br>[ ] SALE | CASE NUMBER:<br>BC607589 |
|---|---|---|

[ ] Limited Civil Case    [ ] Small Claims Case
[X] Unlimited Civil Case  [ ] Other_____

1. To the Sheriff or Marshal of the County of: Los Angeles
　You are directed to enforce the judgment described below with daily interest and your costs as provided by law.
2. To any registered process server: You are authorized to serve this writ only in accord with CCP 699.080 or CCP 715.040.
3. (Name): DIBAS LLC
　is the [X] judgment creditor  [ ] assignee of record   whose address is shown on this form above the court's name.
4. Judgment debtor (name, type of legal entity stated in judgment if not a natural person, and last known address):

　M.R.R. Fabric, Inc.

　2824 & 2826 East 12th Street
　Los Angeles, CA 90023-3622

　[X] Additional judgment debtors on next page
5. Judgment entered on (date): MAR - 2 2016
6. [ ] Judgment renewed on (dates):
7. Notice of sale under this writ
　a. [X] has not been requested.
　b. [ ] has been requested (see next page).
8. [ ] Joint debtor information on next page.

9. [X] See next page for information on real or personal property to be delivered under a writ of possession or sold under a writ of sale.
10. [ ] This writ is issued on a sister-state judgment.
11. Total judgment ................... $
12. Costs after judgment (per filed order or memo CCP 685.090) ........... $
13. Subtotal (add 11 and 12) ......... $ _____
14. Credits ..................... $
15. Subtotal (subtract 14 from 13) ...... $ _____
16. Interest after judgment (per filed affidavit CCP 685.050) (not on GC 6103.5 fees)... $
17. Fee for issuance of writ ............. $      25.00
18. Total (add 15, 16, and 17) ........... $      25.00
19. Levying officer:
　(a) Add daily interest from date of writ (at the legal rate on 15) (not on GC 6103.5 fees) of ....... $
　(b) Pay directly to court costs included in 11 and 17 (GC 6103.5, 68637; CCP 699.520(i)) .......... $
20. [ ] The amounts called for in items 11–19 are different for each debtor. These amounts are stated for each debtor on Attachment 20.

[SEAL]

SHERRI R. CARTER

Issued on (date): MAR - 3 2016   Clerk, by _____ , Deputy
　　　　　　　　　　　　　　　　　　　　　　K.W. KAM

NOTICE TO PERSON SERVED: SEE NEXT PAGE FOR IMPORTANT INFORMATION.

POSSESSION ONLY

Form Approved for Optional Use
WRIT OF EXECUTION
Code of Civil Procedure §§ 699.520, 712.010, 715.010

Page 1 of 2

# Exhibit "F"

Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs (SBN 235718)
scott@donigerlawfirm.com
Annie Aboulian (SBN 280693)
annie@donigerlawfirm.com
DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
Culver City, California  90230
Telephone: (310) 590-1820
Facsimile: (310) 417-3538

Attorneys for Plaintiff

FILED

2013 SEP -4  PM 3: 05

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINX INTERNATIONAL, INC., a California corporation d/b/a "Damask Fabrics", <br><br> Plaintiff, <br><br> vs. <br><br> M.R.R. FABRIC, INC., a California corporation; THE WET SEAL, INC. a California corporation; ROSS STORES, INC., a California Corporation; BELLA D, INC., a California corporation; POETRY CORPORATION, a California corporation; DEB SHOPS SDW, LLC, a Pennsylvania limited liability company; DEB SHOPS, INC., a Pennsylvania corporation; BODY SHOP OF AMERICA, INC., a Florida corporation individually and d/b/a "Body Central"; STYLES FOR LESS, INC., a California corporation; CHARLOTTE RUSSE, INC., a California corporation; BURLINGTON COAT FACTORY | Case No.: CV13-5947 PSG (CWx) <br> *Honorable Philip S. Gutierrez Presiding* <br><br> **PLAINTIFF'S FIRST AMENDED COMPLAINT FOR:** <br><br> 1. COPYRIGHT INFRINGEMENT; <br><br> 2. VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT INFRINGEMENT <br><br> Jury Trial Demanded |

- 1 -

FIRST AMENDED COMPLAINT

# Exhibit "G"

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Arrehbori Family LLC ("**Borrower**"), Rabin Arrehbori and Raymond Arrehbori (collectively, "**Guarantors**") have failed to make required payments as set forth in the attached Declaration of Creditor and failed to payoff the loan by the maturity date of September 1, 2016. Movant is not receiving payments from the Debtor or any related parties. There is admittedly no equity in the Property and given that it is a chapter 7, there is no reorganization in prospect. As a result, Movant asserts that this justifies relief for "cause" pursuant to 11 U.S.C. § 362(d)(1) and/or (d)(2). This Motion is being filed in the Borrower's bankruptcy, the Guarantors' bankruptcies and the bankruptcies of R2D Apparel, Inc. and M.R.R. Fabric, Inc. (collectively "**Related Entities**") to the extent that there is a stay preventing Movant from moving forward with its rights against the Property. Movant was listed as a creditor or "potential creditor" in all bankruptcies.

### II.   FACTS

In accordance with the Declaration filed herewith, Movant asserts the following:

1.      On September 1, 2016, Debtor filed a Petition under Chapter 7 of the Bankruptcy Code.

2.      Movant is the payee of a Promissory Note dated February 1, 2016, in the principal amount of $1,575,000.00 (the "**Note**") secured by a First Deed of Trust of same date, which bears interest as specified therein. The indebtedness evidenced by the Note is secured by a Deed of Trust (the "**Deed of Trust**") executed and recorded in Los Angeles County and encumbers the real property located at 237 S. Wetherly Drive, Beverly Hills, CA 90211 ("**Property**") [*See* Movant Declaration, Paragraph 2].

3.      Guarantors are the responsible individuals for ARREHBORI FAMILY, LLC, a California Limited Liability Company ("**Arrehbori LLC**") and executed Movant's Note and Deed of Trust, dated February 1, 2016, on behalf of Arrehbori LLC (the "**Loan**"). The Note and Deed of Trust is the subject of this Motion for Relief from the Automatic Stay [*See* Movant Declaration, Paragraph 2].

1

4.    Guarantors own, control, and manage Arrehbori LLC. The Guarantors have guaranteed the performance and obligations of the borrower under the Note, by executing a Commercial Guaranty ("**Guaranty**"), in addition to securitizing said Guaranty by executing the Loan documents as referenced above.[1]

5.    Pursuant to the terms of the Loan, the maturity date was September 1, 2016. Debtor filed the instant case on September 1, 2016, the same date Lender's loan was all due and payable

6.    Interest continues to accrue daily on the Borrower's unpaid obligation under Movant's loan.

**Priorities of Deed of Trusts against Debtor's Property**

7.    Although Lender has a 1st position lien recorded against the Property, there are three (3) other secured loans recorded against the Property. The 2nd Priority Deed of Trust for the benefit of Sionit Neman as recorded against the Property on February 12, 2016 with the L.A. County Recorder's Office as Instrument number 20160161810. The 3rd Priority Deed of Trust for the benefit of Ray Davis was recorded against the Property on February 12, 2016 with the L.A. County Recorder's Office as Instrument number 20160161811. The 4th Priority Deed of Trust for the benefit of Moosa Lari, was recorded against the Property on February 12, 2016 with the L.A. County Recorder's Office as Instrument number 20160161812. A true and correct copy of the Title Policy obtained by Movant on the Maturity Date, evidencing the above liens, is attached hereto as Exhibit "5."[2]

**Related Bankruptcy Filings**

8.    Lender received notice of several bankruptcy filings which listed the Property and/or Lender as a creditor. Borrower, Guarantors, and Related Entities each filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code, as follows:

---

[1] The Guaranty is attached to the Declaration of Creditor as Exhibit "5."

[2] Arrehborri Family, LLC's Schedule "D" indicates that Moosa Lari has a 3RD Priority Deed of Trust, where in fact, Ray Davis, has a 3RD Priority Deed of Trust and Moosa Lari has a 4TH Priority Deed of Trust as Ray Davis' Deed of Trust was recorded immediately BEFORE Moosa Lari's Deed of Trust evidenced by the Instrument Numbers of the respective Deeds of Trusts (Ray Davis 20160161811 and Moosa Lari 20160161812)

2

| Case Name: | Case Number: | Chapter | Date Filed | Status |
|---|---|---|---|---|
| Arrehbori Family, LLC | 2:16-bk-21731-BR | 7 | 9/1/2016 | Pending |
| Raymond Arrehbori | 2:16-bk-21745-BR | 7 | 9/1/2016 | Pending |
| Rabin Arrehbori | 2:16-bk-21748-BR | 7 | 9/1/2016 | Pending |
| M.R.R. Fabric, Inc. | 2:16-bk-21734-BR | 7 | 9/1/2016 | Pending |
| R2D Apparel, Inc. | 2:16-bk-21740-BR | 7 | 9/1/2016 | Pending |

9.      Therefore, concurrently with the filing of this Motion, Movant has also filed Motions for Relief from the Automatic Stay in each of the above referenced related bankruptcy cases. Said Motions on the related cases, are set to be heard concurrently on the same date and time as the instant Motion, with the Honorable Barry Russell presiding. The Debtors in all the above related cases are represented by the same Bankruptcy Counsel.

## III.   ARGUMENT

**1. Sufficient "Cause" Exists to Grant Movant's Motion for Relief from the Automatic Stay Given the Lack of Payment and Bad Faith**

11 U.S.C. §362(d)(1) provides that:

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest."

Cause to terminate the stay exists whenever the stay will harm the creditor and lifting the stay will not unjustly harm the debtor or other creditors. *In re Smith*, 1996 Bankr. LEXIS 1486, 78 A.F.T.R.2d (RIA) 7597 (Bankr. D. Cal. 1996). "Factors to consider in determining whether the automatic stay should be modified for cause include: (1) an interference with the bankruptcy; (2) good or bad faith of the debtor, (3) injury to the debtor and other creditors if the stay is modified; (4) injury to the Movant if the stay is not modified; and (5) the relative portionality of

3

the harms from modifying or continuing the stay" *Scripps GSB I, LLC v. A Partners, LLC (In re A Partners, LLC)*, 344 B.R. 114, 127 (Bankr. E.D. Cal. 2006). Here, there is sufficient "cause" to grant relief from the automatic stay.

**Lack of Payment**

Arrehbori LLC and Guarantors are obligated on the Loan and have failed to make payments to Movant by paying Movant's Loan upon the maturity date of September 1, 2016 as required. It has now been almost five months since maturity and interest continues to accrue in accordance with the terms of the Note. The failure of the Debtor or any related parties to make required payments provides "cause" for relief from the Automatic Stay in accordance with the ruling of the Bankruptcy Appellate Panel in *In re Proudfoot*, 144 B.R. 876 (9th Cir. BAP 1992).

**Movant's Loan has Matured**

Movant's Loan matured on the September 1, 2016 and Movant still has not received a full payoff of its loan. Every day that the loan remains unpaid, per diem interest accrues at $393.75 daily. Despite the loan being fully due and payable, Debtor has not paid off Movant's loan or received an extension of the maturity date. Thus, there is sufficient "cause" to grant relief from the automatic stay.

**Related Entities Bankruptcies**

To the extent there is a stay in the Related Entities' bankruptcies, Movant asserts this stay should also be lifted. The Related Entities are not borrowers or guarantors on the Loan and appear to have listed the claim only as a precaution. They do not have an interest in the Property and relief from stay is appropriate as a result.

2. **The Property Has No Equity and Is Not Necessary to an Effective Reorganization That is in Prospect.**

Movant seeks relief from the Automatic Stay pursuant to 11 U.S.C. Section 362(d)(2), and alleges that in accordance with the information set forth in the attached Declaration of Creditor, there is insufficient equity present in the subject real property to justify the continuance of the Automatic Stay. *See also Stewart v. Gurley*, 745 F.2d 1194 (9th Cir. 1984).

4

11 U.S.C. §362(d)(2) provides an independent basis for Movant to obtain relief from the stay and contains the following requirements:

> "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay…
> (2) with respect to a stay of an act against property under subsection (a) of this section, if--
>     (A) the debtor does not have an equity in such property; and
>     (B) such property is not necessary to an effective reorganization."

**Equity Analysis**

The court must first determine whether there is any equity in the subject Property. "Equity" is defined as "the value, above all secured claims against the property that can be realized from the sale of the property for the benefit of the unsecured creditors." *Pistole v. Mellor (In re Mellor),* 734 F.2d 1396, 1400 (9th Cir. 1984); *see also La Jolla Mortg. Fund v. Rancho El Cajon Associates,* 18 B.R. 283 (Bankr. S.D. 1982).

Here, according to the Debtor's Schedules, the Property is worth $2,167,964.00 as of the petition date. Movant is owed at least $1,692,324.25. In addition, Debtor's Schedules show at least three (3) other liens on the property held by Siomit Newman, Ray Davis, and Moossa Lari providing that the total amount owing on the Property is at least $2,967,324.25. There is clearly no equity in the subject Property for the benefit of the estate.

**Reorganization Analysis**

All of the subject bankruptcies are Chapter 7 liquidations. Since a chapter 7 does not contemplate reorganization, the sole issue before the court when stay relief is sought under 11 U.S.C. § 362(d)(2) is whether there is any equity in the property (*See Nev. Nat'l Bank v. Casbul of Nev., Inc. (in re Casgul of Nev., Inc.)* 22 B.R. 65, 66 (9th Cir. BAP 1982); *Ramco Indus. V. Preuss (in re Preuss)* 15 B.R. 896 (9th Cir. BAP 1981). As detailed above, there is admittedly no equity in the Property and a reorganization analysis would not be required.

**3. Bankruptcy Rule 4001(a)(3) Should Be Waived**

There is cause to waive any waiting period that may be imposed by Bankruptcy Rule 4001(a)(3)). There is no reason to allow for an additional waiting period after entry of a relief order given that there is no equity in the Property and the debt service is increasing rapidly. It is

5

also important to note that another creditor (junior lienholder) recently obtained relief from stay as to the Property.

### IV. CONCLUSION

There is clearly "cause" for relief from stay as Movant has not received any payments from Debtor, Movant's Loan has fully matured, there is not sufficient equity in the property, and the property is not needed for an effective reorganization as all bankruptcies are liquidations. As a result, this Court should grant relief from stay binding on the Property in accordance with 11 U.S.C. § 362(d)(1) and 11 U.S.C. § 362(d)(2).

SCHEER LAW GROUP, LLP

DATED: February 1, 2017                    /s/ Joshua L. Scheer
                                            #242722

# Exhibit "H"

## Summary of Notice of Sale

### NOTICE OF SALE
### SUMMARY OF KEY INFORMATION

The attached notice of sale was sent to Arrehbori Family LLC., a California Limited Liability Company, in relation to 237 S WETHERLY DRIVE, BEVERLY HILLS, CA 90211

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 2/1/2016 UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.

IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

The total amount due in the notice of sale is $1,821,231.72.

Your property is scheduled to be sold on 8/4/2017 at 11:00 AM at By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766

However, the sale date shown on the attached notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 or visit this Internet Web site address www.servicelinkASAP.com using the file number assigned to this case 2017-04023 Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

If you would like additional copies of this summary, you may obtain them by calling (925)272-4993.

### 出售通知
### 關鍵信息摘要

本文中包含的有關Arrehbori Family LLC., a California Limited Liability Company 的出售通知發送給237 S WETHERLY DRIVE, BEVERLY HILLS, CA 90211。

你的2/1/2016 於$1,821,231.72 已經逾期違約。

除非你採取行動保護你的房產，否則該房產將被公開出售。

如果你需要了解對你的訴訟程序的性質，應該聯系一名律師。

法拍書面通知的總金額是8/4/2017。你的房產預計出售的時間11:00 AM, 出售地點 By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766。

然而，根據加州民法第2924章g條款，本文中包含的法拍書面通知上顯示的出售日期可能會被抵押權人，受益人，受托人，或法院一次或多次推遲。該法規定，作為對不在法拍現場人士的一種寬限，有關受托人推遲出售的信息要提供給你和公眾。如果你想了解你的房產出售日期是否已被推遲，以及（如適用）重新安

排的法拍時間和日期，可致電714-730-2727
或訪問互聯網網址www.servicelinkASAP.com，用指定的檔案編號 2017-04023 查找。

關於推遲法拍的信息，持續時間會很短，或僅在預定法拍時間前不久發布，可能不會立即反映在電話信息或互聯網的網址上。最好驗証推遲信息的方法是，出席預定的拍賣。

如果你想獲得更多的本摘要副本，請撥打下列電話(925)272-4993。

## 매각 공고
### 주요 정보 요약

첨부된 매각 공고는 Arrehbori Family LLC., a California Limited Liability Company 에게 발송되는 것이며, 이는
237 S WETHERLY DRIVE, BEVERLY HILLS, CA 90211 에 관한 것입니다.

귀하는 2/1/2016 현재 날짜로 $1,821,231.72하에서 채무 불이행 상태입니다. 귀하의 부동산을 보호하기 위해 조치를 취하시지 않는 한, 귀하의 부동산은 공매로 매각 처분될 수 있습니다. 귀하에게 취해지는 이러한 법적 절차에 대한 설명이 필요하신 경우 변호사와 상담하십시오.

매각 공고에서 지불되어야 할 총액은 8/4/2017입니다.
귀하의 부동산은 11:00 AM 에 By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766 에서 매각되기로 일정이 잡혀 있습니다.

그러나 캘리포니아주 민법 2924g항에 준하여, 첨부된 매각 공고에 나타난 매각 일자는 저당권자, 신탁수익자, 수탁자, 또는 법정에 의해 한 번 이상 연기될 수 있습니다. 법에 따라, 수탁자 매각 연기에 관한 정보는 매각에 참석하지 않는 사람들에 대한 호의로서 귀하 및 일반 대중에게 제공되어야 합니다. 매각 일자가 연기되었는 지, 그리고 해당되는 경우 이 부동산의 연기된 매각 일자 및 시간에 대해 알기 원하시는 경우, 714-730-2727 로 전화하시거나 또는 웹사이트 주소 www.servicelinkASAP.com를 방문해 본 사례 배정 파일 번호 2017-04023를 사용하시면 됩니다.

매우 짧은 기간의 연기 또는 매각 일정과 가까운 시간에 발생하는 연기는 정보 안내 전화나 인터넷 웹사이트에 즉각적으로 나타나지 않을 수 있습니다. 연기 정보를 확인하는 최선의 방법은 매각 예정일에 참석하는 것입니다.
본 요약서의 추가적인 사본을 원하시는 경우, (925)272-4993 (으)로 전화하시면 보내드립니다.

## AVISO DE VENTA
### RESUMEN DE LA INFORMACIÓN CLAVE

El aviso de venta adjunto se envió a Arrehbori Family LLC., a California Limited Liability Company, en relación con 237 S WETHERLY DRIVE, BEVERLY HILLS, CA 90211

USTED HA INCUMPLIDO LOS TÉRMINOS DE UNA 2/1/2016 DE FECHA $1,821,231.72. SI NO TOMA MEDIDAS PARA PROTEGER SU PROPIEDAD, PODRÁ SER VENDIDO EN UNA SUBASTA PÚBLICA.

SI USTED NECESITA QUE LE EXPLIQUEN LA NATURALEZA DEL PROCEDIMIENTO EN SU CONTRA, DEBE CONSULTAR A UN ABOGADO.

El importe total adeudado correspondiente al aviso de venta es 8/4/2017.

La subasta de la propiedad se ha programado para el día 11:00 AM en By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766.

No obstante, conforme al Artículo 2924g del Código Civil de California, la fecha de la subasta que figura en el aviso adjunto podrá ser postergada una o más veces por el acreedor hipotecario, el beneficiario, el fideicomisario o un tribunal. La ley exige que, como cortesía para quienes no hayan asistido a la subasta, la información sobre las postergaciones solicitadas por el fideicomisario se ponga a disposición suya y del público en general. Si desea saber si la subasta de su propiedad se ha postergado, y, en tal caso, la nueva fecha propuesta para la subasta de esta propiedad, puede llamar al teléfono 714-730-2727 o visitar el sitio web www.servicelinkASAP.com, usando el número de registro asignado a este caso 2017-04023.

Es posible que la información sobre las postergaciones por plazos muy breves o decididas muy próximo a la fecha programada para la subasta no figuren en la información que se ofrece por teléfono o en el sitio web. La mejor forma de verificar la información sobre las postergaciones es asistir a la subasta que se ha programado.

Si desea recibir copias adicionales de este resumen, puede llamar al teléfono (925)272-4993.

### NOTICE OF SALE (PABATID NG PAGBEBENTA)
### BUOD NG PANGUNAHING IMPORMASYON

Ang nakakalip na notice of sale (pabatid ng pagbebenta) ay ipinadala kay Arrehbori Family LLC., a California Limited Liability Company, bilang kaugnayan sa 237 S WETHERLY DRIVE, BEVERLY HILLS, CA 90211

IKAW AY HINDI NAKABAYAD SA ILALIM NG 2/1/2016 NA MAY PETSA NA $1,821,231.72. MALIBAN KUNG IKAW AY KUMILOS UPANG MAPROTEKTAHAN ANG INYONG ARI-ARIAN, MAAARI ITONG IBENTA SA ISANG PAMPUBLIKONG PAGBEBENTA.

KUNG KINAKAILANGAN NINYO NG PAGPAPALIWANAG SA KALIKASAN NG PAGLILITIS LABAN SA INYO, KAILANGAN NINYONG MAKIPAG-UGNAYAN SA ISANG ABOGADO.

Ang kabuuang halaga na dapat bayaran sa notice of sale (pabatid ng pagbebenta) ay 8/4/2017. Ang inyong ari-arian ay nakatakdang mabenta sa 11:00 AM sa By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766

Gayunman, ang petsa ng pagbebenta na ipinapakita sa nakalakip na notice of sale (pabatid ng pagbebenta) ay maaaring ma-postpone ng isa o mas marami pang beses ng nagbigay ng mortgagee (nagkaloob ng mortgage), beneficiary (benepisyaryo), trustee, o ng korte, alinsunod sa Seksyon 2924g ng California Civil Code. Hinihiling ng batas na ang impormasyon tungkol sa mga pag-postpone sa pagbebenta ng trustee ay handang maibigay sa inyo at sa publiko, bilang isang kagandahang-loob doon sa mga hindi makakadalo sa bentahan. Kung nais ninyong lubos pang matutunan kung na-postpone ang inyong petsa sa pagbebenta, at kung naaangkop, ang na-schedule muli na oras at petsa sa bentahan ng ari-arian, maaari kayong tumawag sa 714-730-2727 o bumisita dito sa Internet Web site address www.servicelinkASAP.com gamit ang numero ng file na itinalaga sa kasong ito 2017-04023. Impormasyon tungkol sa mga pag-postpone sa loob ng maikling panahon o maaaring maganap kalapit ng na-schedule na pagbebenta ay maaaring hindi kaagad masaad sa impormasyon mula sa telepono o sa Internet Web site. Ang pinakamainam na paraan upang mapatotohanan ang impormasyon sa pag-postpone ay ang pagdalo sa naka-schedule na bentahan.

Kung nais ninyo ng karagdagang mga kopya ng buod na ito, maaari ninyong makuha ang mga ito sa pamamagitna ng pagtawag sa (925)272-4993.

THÔNG BÁO BÁN
BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN CHÍNH

Thông báo rao bán kèm theo được gửi tới cho Arrehbori Family LLC., a California Limited Liability Company, liên quan đến 237 S WETHERLY DRIVE, BEVERLY HILLS, CA 90211

QUÝ VỊ VI PHẠM QUY ĐỊNH GHI THEO DEED OF TRUST OR MORTGAGE NGÀY 2/1/2016. TRỪ KHI QUÝ VỊ CÓ HÀNH ĐỘNG BẢO VỆ CĂN NHÀ CỦA QUÝ VỊ, CĂN NHÀ CÓ THỂ BỊ BÁN CÔNG KHAI.

NẾU QUÝ VỊ CẦN LỜI GIẢI THÍCH VỀ TÍNH CHẤT CỦA THỦ TỤC CHỐNG LẠI QUÝ VỊ, QUÝ VỊ NÊN LIÊN LẠC VỚI MỘT LUẬT SƯ.

Toàn bộ số tiền phải trả trong thông báo bán là $1,821,231.72.

Căn nhà của quý vị được dự kiến sẽ bán vào 8/4/2017  11:00 AM tại By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766.

Tuy nhiên, ngày bán ghi trong thông báo bán kèm theo có thể bị trì hoãn một hoặc nhiều lần bởi bên cho vay thế chấp, người thụ hưởng, người được ủy quyền, hoặc tòa án, chiếu theo Mục 2924g của Bộ Luật Dân Sự California. Luật pháp quy định thông tin về các trường hợp trì hoãn bán nhà của bên được ủy quyền phải được cung cấp cho quý vị và công chúng, để cập nhật cho những người không có mặt tại buổi rao bán. Nếu quý vị muốn biết ngày rao bán của quý vị có bị trì hoãn hay không, và, nếu thích hợp, ngày giờ mới cho việc rao bán căn nhà này, quý vị có thể gọi 714-730-2727 hoặc tới địa chỉ Internet này www.servicelinkASAP.com dựa trên mã số hồ sơ được ấn định cho vụ này 2017-04023. Thông tin về các trường hợp trì hoãn rất ngắn hoặc xảy ra ngay sát ngày rao bán dự kiến có thể không được phản ánh ngay trong thông tin cung cấp qua điện thoại hoặc trên Internet. Cách tốt nhất để xác minh thông tin trì hoãn là tham dự buổi rao bán đã ấn định.

Nếu quý vị muốn có thêm bản sao của tài liệu trình bày tóm lược này, vui lòng gọi số (925)272-4993.

# Superior Court of California County of Los Angeles



# ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKET

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross-complainants must serve the ADR Information Packet on any new parties named to the action together with the cross-complaint.

There are a number of ways to resolve civil disputes without having to sue someone. These alternatives to a lawsuit are known as alternative dispute resolution (ADR).

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediations, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help resolve disputes without having to go to court.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

**Advantages of ADR**

- Often faster than going to trial
- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.
- May permit more participation, allowing parties to have more control over the outcome.
- Allows for flexibility in choice of ADR processes and resolution of the dispute.
- Fosters cooperation by allowing parties to work together with the neutral to resolve the dispute and mutually agree to remedy.
- There are fewer, if any, court appearances. Because ADR can be faster and save money, it can reduce stress.

**Disadvantages of ADR** - ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services.
- If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs of trial, such as attorney's fees and expert fees.

**The Most Common Types of ADR**

- Mediation

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the parties, rather than the mediator, decide how the dispute is to be resolved.

- Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation is also very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to express their feelings and find out how the other sees things.

- Mediation may not be effective when one party is unwilling to cooperate or compromise or when one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

**Arbitration**

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed. Arbitration may be either "binding" or "non-binding." Binding arbitration means the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision.

Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Mandatory Settlement Conference (MSC)**

Settlement Conferences are appropriate in any case where settlement is an option. Mandatory Settlement Conferences are ordered by the Court and are often held near the date a case is set for trial. The parties and their attorneys meet with a judge who devotes his or her time exclusively to preside over the MSC. The judge does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.

The Los Angeles Superior Court Mandatory Settlement Conference (MSC) program is free of charge and staffed by experienced sitting civil judges who devote their time exclusively to presiding over MSCs. The judges participating in the judicial MSC program and their locations are identified in the List of Settlement Officers found on the Los Angeles Superior Court website at http://www.lacourt.org/. This program is available in general jurisdiction cases with represented parties from independent calendar (IC) and Central Civil West (CCW) courtrooms. In addition, on an ad hoc basis, personal injury cases may be referred to the program on the eve of trial by the personal injury master calendar courts in the Stanley Mosk Courthouse or the asbestos calendar court in CCW.

In order to access the Los Angeles Superior Court MSC Program the judge in the IC courtroom, the CCW Courtroom or the personal injury master calendar courtroom must refer the parties to the program. Further, all parties must complete the information requested in the Settlement Conference Intake Form and email the completed form to mscdept18@lacourt.org.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

## Additional Information

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs (www.dca.ca.gov) Consumer Information Center toll free at 800-952-5210, or;
- Contact the local bar association (http://www.lacba.org/) or;
- Look in a telephone directory or search online for "mediators; or "arbitrators."

There may be a charge for services provided by private arbitrators and mediators.

A list of approved State Bar Approved Mandatory Fee Arbitration programs is available at http://calbar.ca.gov/Attorneys/MemberServices/FeeArbitration/ApprovedPrograms.aspx#19

To request information about, or assistance with, dispute resolution, call the number listed below. Or you may call a Contract Provider agency directly. A list of current Contract Provider agencies in Los Angeles County is available at the link below.

http://css.lacounty.gov/programs/dispute-resolution-program-drp/

County of Los Angeles Dispute Resolution Program
3175 West 6th Street, Room 406
Los Angeles, CA 90020-1798
TEL: (213) 738-2621
FAX: (213) 386-3995

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California County of Los Angeles**



**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**



**Consumer Attorneys Association of Los Angeles**



**Southern California Defense Counsel**



**Association of Business Trial Lawyers**



**California Employment Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:        FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

| COURTHOUSE ADDRESS: |
|---|
| PLAINTIFF: |
| DEFENDANT: |

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE | CASE NUMBER |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____  >_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR PLAINTIFF)

Date:

_____  >_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR DEFENDANT)

Date:

_____  >_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR DEFENDANT)

Date:

_____  >_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR DEFENDANT)

Date:

_____  >_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR _____ )

Date:

_____  >_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR _____ )

Date:

_____  >_____
(TYPE OR PRINT NAME)                (ATTORNEY FOR _____ )

LACIV 229 (Rev 02/15)
LASC Approved 04/11         **STIPULATION – EARLY ORGANIZATIONAL MEETING**         Page 2 of 2

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:   FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

The parties agree that:

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 1 of 3

| SHORT TITLE | CASE NUMBER |
|---|---|

    iii.    Be filed within two (2) court days of receipt of the Request; and

    iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR_____)

➤ _____
(ATTORNEY FOR_____)

➤ _____
(ATTORNEY FOR_____)

LACIV 036 (new)
LASC Approved 04/11          **STIPULATION – DISCOVERY RESOLUTION**
For Optional Use                                                                                    Page 3 of 3

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:    FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

The parties agree that:

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

The following parties stipulate:

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR PLAINTIFF)

> _____
(ATTORNEY FOR DEFENDANT)

> _____
(ATTORNEY FOR DEFENDANT)

> _____
(ATTORNEY FOR DEFENDANT)

> (ATTORNEY FOR _____ )

> (ATTORNEY FOR _____ )

> (ATTORNEY FOR _____ )

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE | CASE NUMBER |
|---|---|
| (pursuant to the Discovery Resolution Stipulation of the parties) | |

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

## INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties)

12-4-17 K

ENTERED INTO SUSTAIN

FILED
Superior Court of California
County of Los Angeles

AUG 17 2017

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
        Marcos Mariscal

NO SUMMONS ISSUIT

GOLDY M. BERGER [SBN #219183]
LAW OFFICES OF GOLDY M. BERGER
5655 Lindero Canyon Road, Suite 521-12
Westlake Village, CA 91362
Tel: (818) 597-7755
Fax: (818) 597-7757

Attorneys for Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES – WEST DISTRICT - SANTA MONICA COURTHOUSE

ARREHBORI FAMILY, LLC; RABIN ARREHBORI, an individual; AND RAYMOND ARREHBORI, an individual.

　　　　　Plaintiff,

　　vs.

GEORGE WASHINGTON LENDING INC., a California corporation; MAXIMUS LENDING FUND IV LLC., a California Corporation; Arthur S. Cohen, an individual; and DOES 1 through 50, inclusive.

　　　　　Defendants.

) Case No.: SC127893
)
)
) AMENDED COMPLAINT FOR:
)
)  1) DECLARATORY RELIEF;
)  2) INJUNCTIVE RELIEF;
)  3) CONTRACTUAL BREACH OF GOOD
)     FAITH FAIR DEALING;
)  4) VIOLATIONS OF TILA;
)  5) VIOLATION OF CALIFORNIA CIVIL
)     CODE § 1918.5-1920, 1921
)  6) VIOLATION OF CALIFORNIA CIVIL
)     CODE § 1916.7 B;
)  7) VIOLATION OF CALIFORNIA CIVIL
)     CODE § 1916(10)c;
)  8) VIOLATION OF CALIFORNIA CIVIL
)     CODE § 1632;
)  9) VIOLATION OF CALIFORNIA UNFAIR
)     BUSINESS PRACTICES UNDER CA
)     BUSINESS AND PROFESSIONS CODE §
)     17200 & PREDATORY LENDING;
)  10) VIOLATION OF CALIFORNIA CIVIL
)     CODE § 2079.16;
)  11) VIOLATION OF 12 CODE OF FEDERAL
)     REGULATIONS § 226.23(a)(3);
)  12) VIOLATION OF 24 CODE OF FEDERAL
)     REGULATIONS §3500.10
)  13) VIOLATION OF THE FAIR AND;
)     ACCURATE CREDIT TRANSACTION
)     ACT OF 2003 § 221(b);

By Fax

COMPLAINT
1

14) RESCISSION;
15) MISREPRESENTATION AND FRAUD;
16) UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP);
17) BREACH OF FIDUCIARY DUTY;
18) UNJUST ENRICHMENT;
19) UNCONSCIONABILITY;
20) CONVERSION;
21) QUIET TITLE;
22) BREACH OF CONTRACT

Jury Trial Demanded

## INTRODUCTION

COMES NOW the Plaintiffs ARREHBORI FAMILY, LLC; RABIN ARREHBORI; AND RAYMOND ARREHBORI (thereinafter referred to collectively as "Plaintiffs"), allege as follows:

## PARTIES

1.    At all times relevant therein, Plaintiffs were the owners for 237 Weatherly Beverly Hills, California 90211, County of Los Angeles, California (thereinafter referred to as "SUBJECT PROPERTY").

2.    Plaintiffs are informed and therefore believe that Maximus Lending Fund IV LLC. A California Limited Liability company; is the lender of the subject loan with business addresses of: C/O George Washington Lending, 660 Sacramento Street, Suite 201, San Francisco CA 94111.

3.    Plaintiffs are informed and therefore believe that Defendant George Washington Lending Inc. Defendant, a Corporate Business Entity, authorized to do business in the State of California is the lender of the subject loan with business addresses of: 660 Sacramento Street, Suite 201, San Francisco CA 94111.

COMPLAINT
2

4.      Plaintiffs are informed and therefore believe that Arthur S. Cohen Defendant, is an individual residing in Los Angeles, California. He is believed to be the Broker in this matter.

5.      The Defendants (each of them named in paragraphs 3-4 above, shall collectively be referred to as "DEFENDANTS") named therein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiff's title thereto and as DOES I through 50 (thereinafter referred to as "UNKNOWN DEFENDANTS") are unknown to Plaintiffs. These unknown Defendants and each of them claim some right, title, estate, lien or interest in the SUBJECT PROPERTY thereinafter described adverse to Plaintiff's title and their claims and each of them constitute a cloud on Plaintiff's title to the SUBJECT PROPERTY. Plaintiffs are informed and therefore believe, and on that basis allege that each fictitiously named therein as a DOE is responsible for the events happening thereinafter alleged. Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendant's when ascertained.

6.      Plaintiffs are informed and therefore believe and on that basis allege that at all times mentioned therein, the Unknown Defendants are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendant in this Complaint. Plaintiffs are informed and therefore believe and on that basis allege that each of said Defendants is and at all relevant times therein, was acting within the scope and consent of the remaining named and unnamed Defendants.

7.      Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

8.      As a result of their mortgage activities, Defendants and each of them are and were subject to and must comply with the Federal Truth In Lending Act (thereinafter referred to as "TILA")[15 U.S.C.

 

§ 1601-16666j], the Federal Code of Regulations[24 C.F.R § 3500.1-3500.17]; the Real Estate Settlement Procedures Act (thereinafter referred to as "RESPA")[12 U.S.C. § 2601 et.seq.]; California Business and Professions Code [§ 17200; Federal Trade Commission § 5]; 24 Code of Federal Regulations § 3500.10; Unfair and Deceptive Business Practices and Acts [UDAP Statutes]; and California Civil Codes § 1916.7 - multiple sections, § 1632, § 2079.16 and § 1918-21.

### JURISDICTION

9.     The transactions and events which are the subject matter of this Complaint all occurred within the County of Los Angeles, State of California.

10.    The Subject Property is located within the County of Los Angeles, State of California.

### FACTUAL ALLEGATIONS

11.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

12.    For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home. Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure. The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics. All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the

broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

13.     The loan product sold to Plaintiffs in this case was exactly the kind of loan that has contributed to our national problem. The Defendants were aware of this trend, and possessed the foresight to advise Plaintiffs of this risk. They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiffs face the potential of losing their home to the very entity and entities who placed them in this position.

14.     On or about May 1, 2016 (thereinafter referred to as "Closing Date") Plaintiffs entered into a consumer credit transaction with defendants by obtaining a $ 1,575000.00 loan allegedly secured by Plaintiff's principal residence, (Subject Property). This note was allegedly secured by a First Trust Deed on the Property in favor of Maximus Lending Fund LLC. Arthur S. Cohen (Broker) introduced them to this product and represented himself to be a broker. He never provided his office information or BRE number to Plaintiffs. He told them this is a great product and that they can pay all their creditors at the same time with one simple loan.

15.     The terms of the finance transaction with DEFENDANT are not clear or conspicuous, nor consistent, and are illegal, and include, for example, a negative amortization of the loan, an amount financed based upon a stated income and a credit report ONLY, flawed underwriting procedures, use of understated income and other rates, fees and terms for which DEFENDANT either did not disclose, make clear or had not included as part of the finance charge, a 6 month term in which Plaintiff could never adhere. Defendant George Washington Lending prides itself on being able to lend 90% of the loan to value amount from a "single application" they also claims it takes 5 days to close the loan. **[Exhibit "A"]**

16.     In addition, and unbeknownst to Plaintiffs, DEFENDANT illegally, deceptively and/or otherwise unjustly, qualified Plaintiffs for a loan which the DEFENDANTS knew or should have known that Plaintiffs could not qualify for or afford. It was obvious that Plaintiffs were in a bad

 

situation and owed many people money they could not repay. Instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiffs a deceptive loan product they knew was for the sole purpose of paying other creditors they could not afford to pay. Plaintiffs never received a copy of what they signed. They had to get a copy from escrow which was unsigned and not dated.

17.    There was no determination of the ability of the Plaintiffs to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law. The Defendants knew that Plaintiffs were under water and sold them a loan that: [Exhibit "B"]

1. Had a six month maturity date;

2. Had a Balloon Payment;

3. Amortized loan,

4. Outrageous monthly payments of $262,500.00 just to pay off the principal of the loan,

5. High interest and late penalties,

6. They knew Plaintiffs had no ability to repay the loan by defendants,

7. Lied about monthly payments being $11,812.50 when that only pays partial interest.

8. Plaintiffs made 5 payments of $11,812.50 equaling $59,062.50 as instructed and it did not make a dent in what they owed. They were demanded to pay the full amount on the 6th payment. [Exhibit "C"]

18.    Defendants neither explained the workings of the entire loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants. Plaintiffs did not know what they were getting into. They were set up to default on the loan by defendants so that they can steal their home.

19.    Further, the loan and each of its parts was drafted and explained (to the extent that any of it was actually explained) verbally and the Plaintiffs never had the chance to read the over 100 page agreement. The result was a disadvantage to Plaintiffs and a significant advantage to Defendant's to manipulate the terms and outcome of the loan.

 

20.     The purpose of entering into the above-described loan transactions was for Plaintiffs to pay a sum to other creditors and pay off the amount so that they can eventually own the Property by removing the lien. That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' actions alleged therein.

21.     Defendant, failed to perform their due diligence in investigation the legal requirements that this loan should have been processed within. As a result, Defendants now hold an interest in a loan that was improperly handled from its inception.

22.     Plaintiffs are informed and believe and therefore allege that DEFENDANT was paid Unearned fees, which were hidden from Plaintiffs which increased the interest rate of the Borrower, whereby creating a windfall for DEFENDANT. Their entire purpose of selling this loan to Plaintiffs under such terms was to take their home from them.

23.     Plaintiffs are informed and believe and therefore allege that Defendants breached their fiduciary duty to Plaintiffs because they knew or should have known that the Plaintiffs will or had a strong likelihood of defaulting on this loan, he/she has a fiduciary duty to the borrower to not place them in that loan (in harm's way).

30.     Plaintiffs are informed and believe and therefore allege that it was in the best Interest of the Defendants to promote the particular program for which they approved the Plaintiffs. It led to a maximization of profits for the Defendants, with no concern for the Plaintiffs financial position or livelihood.  Plaintiffs were talked into this loan by the Broker

31.     Plaintiffs are informed and believe and therefore allege that as a result of the practices of Defendants, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending, and encompass numerous characteristics that indicate such.

32.     Plaintiffs are informed and believe and therefore allege that Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act. In fact, Plaintiffs never got a copy of the documents they signed and had to request them from escrow.

33.    Plaintiffs are informed and believe and therefore allege that Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act.

34.    Plaintiffs are informed and believe and therefore allege that Defendants engaged in unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of California Business and Professions Code § 17200 and the Unfair and Deceptive Acts and Practices statutes.

35.    Plaintiffs allege that they were a victim of Fraudulent Target Marketing by Defendants. Predatory lenders use sophisticated technology and numerous sources of publicly available data to identify potential customers. They market their products to customers they identify as financially unsophisticated or vulnerable, and therefore most likely to accept highly unfavorable loan terms. In particular, predatory lenders look for people with limited education who are not adept in financial matters and lack the financial sophistication to scrutinize loans such as the

37.    Predatory lenders, these Defendants, used target marketing not to meet the needs of their customers, but rather to identify households most vulnerable to the lenders' aggressive or fraudulent behavior. Predatory lenders' advertisements claim that easy and affordable home equity loans are a quick way for consumers to pay down credit card debt, take a desired vacation, or pay off other expenses, and still have lower monthly mortgage payments. Predatory lending also often involves fraudulent home improvement scams targeted to elderly homeowners because they are more likely than younger people to live in older homes that need repair, are less likely to undertake the repairs themselves, and may not have the cash to pay for someone else to perform them. Because these homeowners have built up substantial equity in their homes, they are particularly at risk of losing a major share, if not all, of their equity. Predatory lenders also make loans to homeowners who are mentally incapacitated and do not understand the nature of the mortgage transaction or papers to be signed. Plaintiff alleges that the Defendants engaged in this very behavior and were the cause of Plaintiffs' current economic misfortune.

38. Plaintiffs allege that they were a victim of Abusive Loan Terms. The second characteristic of a predatory loan is the set of abusive terms it contains. Predatory loan terms are structured to extract the greatest possible return to the lender. For equity stripping purposes, they are also routinely designed to preclude a borrower's ability to repay the loan. The loan itself may be unnecessarily large, even in excess of a 100 percent loan-to-value ratio. As long as the amount of the loan exceeds the fair market value of the home, it is difficult for the owner to refinance the mortgage or to sell the house to pay off the loan. Negative amortization loans are structured so that interest is not amortized over the life of the loan and the monthly payment is insufficient to pay off the accrued interest. The principal balance therefore increases each month and, at the end of the loan term, the borrower may owe more than the originally borrowed amount. Plaintiffs allege that the Defendants placed Plaintiffs in a loan with the abusive loan terms as stated above. They knew that there were many liens by creditors on the property and moved all of those liens aside and put themselves in first position.

39. Aside from the loan itself-typically offered at very high interest rates terms often include inflated and padded costs. In the case at hand, the Brokers commission alone was **$55,125.00** in this transaction, prepaid interest **$11,025.00** such excessive closing charges, high origination and other administrative fees, and exorbitant prepayment penalties that trap lower-income borrowers into paralyzing loans that destroy their lives. Out the door, before the money hit the Plaintiffs account, they paid **$74,250.41** in closing costs to the Broker and lender! **[Please see closing statement Exhibit "D"]**

40. Plaintiffs allege that they were a victim of Fraudulent Lender Behavior. Fraudulent behavior is the third identifying characteristic of a predatory loan. It refers to illegal management by the lender of the loan transaction to extract the maximum value for the lender.

**Fraudulent behavior might include:**

    1) Failing to explain the terms of the loan or providing obscure information,

    2) Using high-pressure tactics to force a prospective borrower to continue through the loan application process in cases in which the customer would prefer to discontinue the process,

    3) Omitting explanations of amortization or balloon payments, and

COMPLAINT

9

4) Discouraging borrowers from exploring lower-cost options.

41.     Initiating loans without considering the borrower's ability to repay or structuring loans with payments that a borrower cannot afford can effectively strip the equity from a homeowner. And encouraging borrowers to consolidate consumer debts into a home equity loan with a higher interest rate than the underlying consumer credit debt-thereby also increasing the size of the loan-is a standard predatory lending practice.

42.     Plaintiffs were in a bad situation at the time. They were in the middle of 3 expensive lawsuits, evicted from their office, completely in financial ruin. The only asset they had was a house with a little equity. **[Please see eviction notice Exhibit "E" ] and [the Caption of one of three lawsuits filed against Plaintiffs "F"]**

43.     The loan that Plaintiffs received from defendants was for the sole purpose of paying off other creditors that they were having problems paying. Once these creditors were paid, Defendants secured their position of first creditor on the deed. **[Please see Exhibit "B"]** The Plaintiffs did not receive any money. It was all paid out to other creditors. Plaintiffs made 5 payments of $11,812.50 equaling $59,062.50 as instructed, and it did not make a dent in what they owed. They were demanded to pay the full amount on the 6th payment. **[Exhibit "B"]**

44.     Predatory lending is an outlying consequence of the inefficient financial markets that exist in many lower-income and minority communities. Predatory lending practices thrive in an environment where competition for financial services is limited or lacking, and where excessive marketing of subprime loans and fringe financial services are occurring. For this reason, effectively limiting predatory lending requires the same three-pronged approach recommended to reduce excessive fringe financial services: 1) enhanced enforcement of the relevant federal and state lending and consumer protection laws, 2) increased prime market lending, and 3) improved borrower education and awareness of financial services options and opportunities (see Carr and Schuetz 2001). Laws that specifically relate to predatory lending and whose greater enforcement must play a key role in eliminating predatory lending include the Fair Housing and Equal Credit Opportunities Acts, the

Real Estate Settlement Procedures Act, and the Homeowner's Equity Protection Act and the Homeowners Bill of Rights. Some predatory lending practices also might violate various federal and state consumer protection laws, such as the Truth in Lending Act. Together, these laws provide a formidable regulatory infrastructure to make important strides in removing predatory lenders from the nation's most vulnerable and distressed communities. Together, these laws cover practically every conceivable predatory lending arrangement, and Plaintiffs allege that this complaint be allowed to proceed forward through litigation, and that the Defendants be punished for committing these acts as stated above.

## FIRST CAUSE OF ACTION

### DECLARATORY RELIEF

#### (Against All Defendants)

45.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

46.     An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding their respective rights and duties, in that Plaintiffs contends that Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations 3500.10, the California Civil Code, California Business and Professions Code, UDAP, TILA and RESPA. Thus the purported power of sale by Defendants no longer applies. Plaintiffs further contend that Defendants do not have the right to foreclose on the Subject Property because Defendants did not properly comply with proper delivery procedures under RESPA. Plaintiffs further contend that the Defendants perpetrated a fraudulent loan transaction.

47.     Plaintiffs request that this Court find the purported power of sale contained in the Loan of no force and effect at this time, because Defendants actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws designed to protect borrowers, which has directly caused Plaintiffs to be at an equitable disadvantage

 

to Defendants. Plaintiffs further requests that title to the Subject Property remain in Plaintiff's name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation, and deem any sale of the Subject Property "unlawful and void".

48.     As a result of the Defendants' actions, Plaintiffs have suffered damages according to proof, and seeks declaratory relief that Defendants' purported power of sale is void and has no force or effect against the Subject Property.

49.     Further, Defendants' actions have been willful, knowing and malicious.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth below.

## SECOND CAUSE OF ACTION

### INJUNCTIVE RELIEF

### (Against All Defendants)

50.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

51.     Defendants have commenced a foreclosure action under the Note and have scheduled a non-judicial sale for August 4, 2017. Said sale will cause Plaintiffs great and irreparable injury in that real property is unique. Further, Plaintiffs do not believe that DEFENDANTS have the legal standing to foreclose on the property as successor trustee.

52.     The wrongful conduct of Defendants, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to Plaintiffs. Plaintiffs will not have the beneficial use and enjoyment of the property and will lose their home

53.     Plaintiffs have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs. Plaintiffs has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it is and will be impossible for Plaintiffs to determine the precise amount of damage Plaintiffs will suffer.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth below.

 

## THIRD CAUSE OF ACTION

## CONTRACTUAL BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

## (Against All Defendants)

54.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

55.     Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

56.     The terms of the Loan imposed upon Defendants a duty of good faith and fair dealing in this matter.

57.     Defendants enjoyed substantial discretionary power affecting the rights of Plaintiffs during the events alleged in this Complaint. Defendants were required to exercise such power in good faith.

58.     Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiffs when Defendants:

1. Willfully withheld numerous disclosures;

2. Willfully withheld notices in regard to Underwriting standards, Disclosures of additional income due to interest rate increases, failed to provide a Loan Origination Agreement and proper Notices of Plaintiff's Right to Cancel, and failure to disclose when negative credit scores were disseminated;

3. Willfully placed Plaintiffs in a loan that they did not qualify for, could not afford, and subjected them to further financial detriment, while providing Defendants with financial benefits they would not have otherwise enjoyed.

 

59.     As a result of Defendants' breach of this covenant, Plaintiffs have suffered injury and have caused Plaintiffs the threat of loss of their home. Plaintiffs have incurred and continue to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong.

60.     Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth below.

## FOURTH CAUSE OF ACTION

## VIOLATION OF TILA, 15 U.S.C. § 1601, et.seq.

### (Against All Defendants)

61.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

62.     Defendants violated TILA by failing to provide Plaintiffs with accurate material disclosures required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

63.     Plaintiffs were never even given the tools necessary to take the care needed to discover the TILA violations contained in the loan documents. Plaintiffs were never given a complete loan document package nor any of the documents that they signed. Most, if not all pertinent documents were left out especially important disclosures such as but not limited to the Good Faith Estimate, Truth-in-Lending, Servicing Transfer, Adjustable Rate Booklet, and the Federal Equal Opportunity disclosure. The representative at DEFENDANT knew that the Plaintiffs, without the proper information, could not possibly understand what they were saying, but the representative was more concerned with getting Plaintiffs in and out, so that he can earn his quick $55,125.00 commission and

move to the next person. Like a mill, one after the other, Defendant through their representatives, shuffled Plaintiffs in, had Plaintiffs sign on the dotted line, and shuffled Plaintiffs out. Never were Plaintiffs even given the required documents so that they could conduct their own due diligence to find out what exactly this adjustable rate mortgage was going to turn into. All Plaintiffs could do under these circumstances to satisfy the due diligence requirement of Equitable Tolling is to call the Defendants and ask them exactly how their loan functions and adjusts. The representative at DEFENDANT painted a very rosy picture for Plaintiffs, and convinced them that that they were more than able to afford this loan than to try to pay the other creditors on their own.

64.     However the DEFENDANT representative failed_ to tell them and really sit down and explain to them that the initial payment structure was only paying partial interest payments, and that they would need to pay approximately $262,000.00 a month to pay off the loan before the 6 month term. Plaintiffs made 5 payments of $11,812.50 equaling $59,062.50 as instructed and it did not make a dent in what they owed. They were demanded to pay the full amount on the 6th payment. [**Exhibit "C"**]There was concealment of information from these people, including Plaintiffs, of the truth of what was going to happen with their payments in the near future. The very action TILA was designed to protect against.

65.     Plaintiffs, as low level English speaking, laypeople, there is only so much that Plaintiffs could have absorbed from the few minutes that the representative from Defendant had him stare at Loan Documents and had him sign at different places. Plaintiffs, could not have known what they were signing, nor were they given copies of anything pertinent for them to take to someone and ask. Plaintiffs, called Defendants and asked for copies of the documents they signed to figure out what Defendant had them sign their name to.  They were ignored. Plaintiffs had to contact escrow to get a copy of the documents.

66.     The failure of DEFENDANT to provide and accurate Truth In Lending Disclosure whereby the Finance Charge is understated or overstated by the indicated amounts below results in an Extended Right to Rescind the loan. For real estate secured loans entered into after September 30, 1995, the tolerance is $ 100.00 for under disclosed finance charge. For rescission purposes, unless



a foreclosure is underway, the tolerance is 1/2% of the total credit extended, over or under (1% if a refinance and no new money lent). The finance charge tolerance for defendants in foreclosure actions is $ 35.00. The failure to accurately report a finance charge is a violation under TILA, California Unfair Competition Law, CA Business & Professions Code 17200 and UDAP statutes. This is emblematic of the deceptive tactics undertaken in this loan program.

67. An actual controversy now exists between Plaintiffs, who contend she has the right to rescind the loan alleged in this Complaint, and based on information and belief, Defendants deny that right.

68. As a direct and proximate result of Defendants' violations Plaintiffs have incurred and continue to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

69. Defendants were unjustly enriched at the expense of Plaintiffs who are therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants. Pursuant to CFR § 226.23 (3), Failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission.

**Material disclosures include:**

    (1) annual percentage rate,

    (2) term of the loan,

    (3) finance charge,

    (4) amount financed,

    (5) total payments, and/or

    (6) or payment schedule.

70. Further, Plaintiffs has not received numerous TILA initial disclosures, a mandated Mortgage Loan Origination Agreement, California Insurance Disclosure, and Separate Agreements to demonstrate the actual Truth In Lending final numbers. Plaintiffs were the victim of additional finance charges and deceptive manipulation in regard to baiting him into this type of loan program.



71.    Therefore, the borrowers have an extended 3-year right to cancel this loan in accordance with § 226.23 (3).

72.    Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth below.

## FIFTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 1918.5-1920; 1921

### (Against All Defendants)

73.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

74.    According to California Civil Code § 1918.5-1921.1920(a) any mortgage instrument that is made pursuant to the provisions of this chapter shall meet the following requirements: Standards for the adjustment of interest rates, monthly payments, and maturation date, shall be considered as factors, which can reasonably be deemed to affect the ability of borrowers to meet their mortgage obligations.

75.    This loan was based only upon a credit score, stated income (without verification) and a belief that the property would continue to increase in value. No consideration of the ability of Plaintiffs to repay this loan with a realistic means test has been made.

76.    Additional documentation was available in the form of W-2's, income information, tax records, etc. to determine the ability of the borrower to repay the loan. The failure to do so by Defendants violates California Civil Code § 1918.5-1921.1920.

77.    As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth below.

///

///

COMPLAINT

17

 

## SIXTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7 B

### (Against All Defendants)

78. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

79. Violation of California Civil Code § 1916.7 B states: "the difference added to the principal of the loan as of the due date of the installment and thereafter shall bear interest as part of the principal. In no instance shall the difference which is added to the principal be an amount which causes the resulting loan-to-value ratio to exceed the loan-to-value ratio at the time of loan origination".

80. The current loan is a negative amortizing loan and subject to the loan to value being greater that the original loan to value. As each minimum payment is made, the balance increases, increasing the loan to value ratio, thus violation thus violating the above-statute. Further, with the minimum payment amount ay $11,812.50 there is no way a loan of $1.5M can be paid off in 6 months. All the while interest is accruing and the balloon payment provision shall be applied since they are not paying enough to pay off the loan in the time necessary.

81. As a proximate result of Defendants' actions, Plaintiffs has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7(10) c

### (Against All Defendants)

82. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

83. An applicant for a loan originated pursuant to the provisions of this section must be given, at the time he or she requests an application, a disclosure notice in the following form:



"NOTICE TO BORROWER IMPORTANT INFORMATION ABOUT THE ADJUSTABLE PAYMENT, ADJUSTABLERATE LOAN. PLEASE READ CAREFULLY"...

84.    The intent of the State Legislature in approving this statute was to fully inform home buyers of the pros and cons of adjustable rate mortgages and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

85.    Theme, the interest rate is for 9% for the loan and the late fee is %10. Since Plaintiff has no way of timely paying back the loan, his actual interest is %19.

86.    Theme, none of the Defendants provided to the borrower at any time during the processing of this loan. The result was a lack of informed knowledge of what Plaintiff was entering, and a mental state lacking intent.

87.    As a proximate result of Defendants' actions, Plaintiffs have been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 1632

### (Against All Defendants)

88.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

89.    Violation of California Civil Code § 1632 states that: "At the time and place where a contract or agreement described in paragraph (1) or (2) of subdivision (b) is executed, a notice in any of the languages specified in subdivision (b) in which the contract or agreement was negotiated shall be conspicuously displayed ..."

90.    Upon a failure to comply with the provisions of this section, the person aggrieved may rescind the contract or agreement in the manner provided by this chapter.

91.    Plaintiff's native language is Farsi. Plaintiffs do not have strong comprehensive reading English skills. Many provisions and terms within a loan servicing agreement are easily confused and misunderstood, if understood at all. For example, the concept of "negative amortization" (that is the monthly payments on this loan only adjust once a year; and if the interest rate calculation is higher than the amount of the payment, the difference between the payment amount and the amount actually due for interest is added to the loan) is difficult for the average English speaking individual to comprehend. There is little doubt that for someone with limited or lesser comprehension of the written English language, this document would certainly be unintelligible, yet critically important to the understanding of how the loan works.

92.    As a proximate result of Defendants' actions, Plaintiffs have been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## NINTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200; PREDATORY LENDING

### (Against All Defendants)

93.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth therein.

94.    As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

95.    The Initial and Closing loan documents provided to the Plaintiffs present a "picture" of the loan whereby the Plaintiffs continuously see interest rates presented on the loan documents as 9%. The payment is continuously represented as $ 11,812.50, and nowhere is it mentioned what the actual amortizing payment is.

96.    This is an Unfair and Deceptive Practice which leads the Plaintiffs to believe that they are only paying an interest rate of 9% and the monthly payment of $ $ 11,812.50. It is only disclosed that there will be an additional %10 interest on the loan amount if payments are late, knowing that plaintiffs could not make the payments. Payments will continuously adjust and raise to extraordinary amounts, in loan-legalese which most borrowers could never understand. Plaintiffs made 5 payments of $11,812.50 equaling $59,062.50 as instructed and it did not make a dent in what they owed. They were demanded to pay the full amount on the 6th payment. **[Exhibit "C"]**

97.    Defendants failed to undergo a diligent underwriting process for this loan as alleged in this complaint. They also failed to properly adjust and disclose facts and circumstances relating to Plaintiff's actual 19% interest and placed Plaintiffs in a loan, by way of stated income and misleading facts, which they should never have been approved for because he could not afford it. Defendants did have that knowledge of these facts, circumstances and risks but failed to disclose them.

98.    The current loan is riddled with deceptive and unfair methods of preying upon Plaintiffs. That list contains but is not limited to the following violations: lack of Broker Disclosures and, lack of complete Lender Initial Disclosures, flawed and substandard underwriting, lack of due diligence with regard to qualifying the Plaintiffs for the loan, Truth In Lending Disclosure errors, proper notice of Plaintiff's Right To Cancel, and Unjust Enrichment, Equal Opportunity Act Violations, failure to meet Fiduciary Duty obligations, Fraudulent Misrepresentation of loan terms, Fraud in the Factum, and Equity Stripping.

99.    By reason of Defendants fraudulent, deceptive, unfair, and other wrongful conduct as therein alleged, said Defendant has violated California Business and Professions Code § 17200 et seq. by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of them home, equity, as well as them past and future investment.

100.    The Office of Comptroller of the Currency defines Predatory Lending as any lien secured by real estate which shares well known common characteristics that result in Unfair and Deceptive Business Practices under California Business and Professions Code § 17200.



101.    Acts undertaken by the Defendants theme that are consistent with the Office of the Comptroller's definition include the fact that this loan was marketed in a way which fails to fully disclose all material terms and includes terms and provisions which are unfair, fraudulent or unconscionable;

102.    This loan is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan;

103.    Contains loan terms whereby the borrower can never realistically repay the loan, representative of "Bait and Switch" tactics.  They claim minimum payments are $ 11,812.50 when in reality they would have to pay $273,812.50 to pay off the loan in the 6 month period.

104.    This practice is indicative of Predatory Lending and is emblematic of the problems contained therein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## TENTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CIVIL CODE §2079.16

### (Against All Defendants)

105.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

106.    The integrity and the duty owed to Plaintiffs regarding the relationship between the broker and the lender has been compromised. DEFENDANT will pay a large fee to themselves as an inducement to bring them business. Lender and Broker both greatly benefit by this transaction at the detriment of the Plaintiffs.  Due to this fact and the existence of the lender/broker agreements, it is clear that the lender has some significant measure of control over the broker.

107.    In the matter of Wyatt v Union Mortgage, CA State Supreme Court, 1979; and Montoya v. McLeod (1985) 176 Cal.App.3d 57, 64, 221 Cal.Rptr. 353, the court held that a broker was the lenders'

agent even though he had no written agency agreement with the lenders and was paid by a third party, because the broker negotiated the lenders' loan and executed a promissory note in their favor.

108.    Factors the Montoya court considered in determining agent status included: (1) the principal's right to control the agent's activities; (2) the agent's right to exercise discretion in dealings with third parties on the principal's behalf; (3) whether the principal pays compensation to the agent; and (4) the principal's intent to retain the agent and the agent's intent to represent the principal. The mortgage broker had failed to disclose his Dual Agency Relationship as required by both CA statutes and RESPA. Additionally, the lender now assumes a secondary liability for the actions of the broker under agency relationships. There, the relationship between DEFENDANT as the lender and the broker is that of agents to one another and subject to liability. Further, the lack of disclosure of the status and financial interest of each of the Defendants to Plaintiffs is in violation of the California Civil Code and RESPA.

109.    As can be seen, the Yield Spread Premium significantly affects the Plaintiffs' payment and financial situation.

110.    An increase in interest rate due to the late payment penalties and costs paid to DEFENDANT was not in the best interests of the Plaintiffs.

111.    As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

112.    Absent the presence of a separate fee agreement regarding Yield Spread Premium and that Plaintiffs agreed to pay such an excessive amount to the broker, and in evaluating the Yield Spread Premium using the HUD 2 part test, DEFENDANT clearly enjoyed the benefits of Unjust Enrichment as well as unearned fees under RESPA.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## ELEVENTH CAUSE OF ACTION

### VIOLATION OF 12 FEDERAL CODE OF REGULATIONS § 226.23(a)(3)

#### (Against All Defendants)

113.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

114.    Failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission. Material disclosures include the: (1) annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule.

115.    Following a recalculation of the final Truth in Lending violations theme, the monthly finance charge and payments were underestimated by approximately $262,000.00.

116.    The failure of the lender to provide and accurate Truth In Lending Disclosure whereby the Finance Charge and payments is understated by the indicated amounts results in an Extended Right to Rescind the loan.

117.    For real estate secured loans entered into after 9/30/95, the tolerance is $ 100.00 for under disclosed finance charges. The finance charge tolerance for DEFENDANTS in foreclosure actions is $ 35.00 for rescission.

118.    As a proximate result of Defendants' actions, Plaintiffs have been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## TWELFTH CAUSE OF ACTION

## VIOLATION OF 24 FEDERAL CODE OF REGULATIONS 3500.10

### (Against All Defendants)

119.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

120.    A failure to make clear, conspicuous,   and accurate material disclosures also triggers an extended right of rescission.

121.    Plaintiffs never received a Settlement Statement prior to close of escrow or an offer to receive one prior to escrow. The purpose of receiving the statement is so that the client can review the final statement for errors and misrepresentations not present on the closing estimate. Failure to provide the

Final Statement did not provide the PLAINTIFFS the opportunity to review the Final Statement and enable the Plaintiffs to determine the accuracy of the Settlement Statement. The failure to provide them triggers an Extended Right to Rescind.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## THIRTEENTH CAUSE OF ACTION

## VIOLATION OF FAIR AND ACCURATE CREDIT TRANSACTION ACT OF 2003 § 221(b)

### (Against All Defendants)

122. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

123. The credit scoring information that must be provided to the consumer is set forth in Section 212(b) of the FACT Act, which amends Section 609 of the FCRA by adding a new subsection (f).

124. The purpose of disclosure of credit scores is to provide the client a way to determine if the loan program being offered is consistent with his credit worthiness. Failure to provide this disclosure prevents comparison of loans.

125. None of the Defendants ever revealed to Plaintiffs, any credit scores used in the determination of approval of this loan, in violation of this section.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

### FOURTEENTH CAUSE OF ACTION

### RESCISSION

### (Against All Defendants)

126. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

127. Plaintiffs are entitled to rescind the loan for all of the foregoing reasons:

1) TILA Violations;

2) Failure to provide a Mortgage Loan Origination Agreement;

3) Fraudulent Concealment; and

4) Public Policy Grounds.

each of which provides independent grounds for relief.

128.    The Truth In Lending Act, 15 U.S.C § 1601, et.seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Plaintiff's right to rescind. Theme, Defendants have failed to properly disclose the details of the loan. Specifically, the initial disclosures do not initial TILA disclosures, and lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiffs in a loan she could not afford and would ultimately benefit Defendants following the negative amortization that accrued.

129.    The public interest would be prejudiced by permitting the alleged contract to stand. Such action would regard an unscrupulous lender.

130.    As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for rescission of the stated loan in its entirety, and for judgment against Defendants, and each of them, as set forth therein.

## FIFTEENTH CAUSE OF ACTION

### MISREPRESENTATION AND FRAUD

### (Against All Defendants)

140.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

141.    Defendants intentionally, willfully and wantonly engaged in the acts with the purpose of deceiving Plaintiffs and inducing them to part with their personal and real property buy using a stated income loan.

142.    The credit application and proof of ownership of property were enough. In addition to the application itself for DEFENDANTS to know what type of loan should be offered, and what the

PLAINTIFFS could not afford. Any falsification of a credit application by a broker or seller for the purposes of securing a loan is de facto fraud. U.S. v. Robinson, 4th Circuit, 2004.

143.    The Recalculated Truth in Lending found that the Finance Charge was under stated by approximately $200,000.00. The failure of DEFENDANT to provide and accurate Truth In Lending Disclosure whereby the Finance Charge is understated or overstated by the indicated amounts below results in an Extended Right to Rescind the loan.

144.    Defendants engaged in the unlawful suppression of facts or circumstances by one of the parties to a contract from the other, for self-serving purposes and financial gain, which in justice ought to be made known.

145.    Plaintiffs justifiably relied on Defendant's deception, which was the actual and proximate cause of Plaintiff's damages.

146.    Defendants engaged in the unlawful suppression of facts or Circumstances by one of the parties to a contract from the other, for self-serving purposes and financial gain, which in justice ought to be made known.

147.    Plaintiffs justifiably relied on Defendants' deception, which was the actual and proximate cause of Plaintiffs' damages.

148.    The loan originators falsely and fraudulently represented to Plaintiffs that they were participating in an equitable agreement. Defendants knowingly and intentionally concealed material information from Plaintiffs, which is required by federal Statutes and regulations to be disclosed to the Plaintiffs both before and at closing.

149.    The representations made by Defendants were in fact false. The true facts were that the Plaintiffs was deceived into unknowingly signing a cognovit note, waiving their equitable rights to ownership of their property, without warning and just compensation for waiving their said rights.

150.    Defendants made these representations and knew them to be false, and made these representations with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to sign an agreement that would greatly disadvantage them and cause them to relinquish ownership of

COMPLAINT
27



their property. Defendants had no intention of providing equitable consideration at the time the originating lender lead Plaintiffs to believe that she was entering into an equitable agreement.

151.    Plaintiffs not being in the consumer lending, mortgage broker, or residential loan business, reasonably relied upon the Defendants to insure that the consumer credit transaction was legal, proper and compliant with all applicable laws rules and regulations. Plaintiffs, at the time these representations were made by the lender and at the time Plaintiffs signed the agreement, Plaintiffs were ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations, Plaintiffs were induced to, and did sign the cognovit note. Had Plaintiffs known the actual facts, she would not have taken such action resulting in waiving them rights to ownership of them property.

152.    At all times material, Defendants had actual knowledge that the Defendants' accounts were not accurate, but that the Plaintiffs would make further payments based on Defendants' inaccurate accounts. Plaintiffs made payments based on the improper, inaccurate, and fraudulent representations as to Defendants' accounts.

153.    As a direct and proximate result of the actions of the Defendants set forth above Plaintiffs overpaid in interest.

154.    Plaintiffs are entitled to exemplary and punitive damages for Defendants' fraudulent conduct in the sum to be determined at trial. Further them, fraudulent concealment avoids the contract.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth Herein.

## SIXTEENTH CAUSE OF ACTION

### UNFAIR AND DECEPTIVE BUSINESS ACT PRACTICES (UDAP)

### (Against All Defendants)

155.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

156.    Defendants failed to undergo a diligent underwriting process for this loan as alleged in this complaint. They also failed to properly adjust and disclose facts and circumstances relating to

 

Plaintiffs' loan and placed Plaintiffs in a loan, by way of stated income and misleading facts, which they should never have been approved for because they could not afford it. Defendants did have that knowledge of these facts, circumstances and risks but failed to disclose them.

157.    By reason of Defendants' fraudulent, deceptive, unfair, and other them wrongful conduct as herein mentio    as alleged, said Defendants have violated California Business and Professions Code § 17200 et .    by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of them home, equity, as well as them past and future investment.

158.    The fraudulent conduct of Defendants is as follows:

a) Defendants engaged in unfair business practices aimed at deceiving Plaintiffs before and during the loan process;

b) Defendants, by and through their officers, employees and agents, failed to disclose that the interest rate actually charged on this loan was higher than the rate represented and promised to Plaintiffs;

c) Defendants by and through their officers, employees and agents concealed, omitted and/or otherwise failed to disclose information;

d) Defendants failed to disclose the true nature of interest rates on th  loan;

e) Defendants failed to properly disclose that values of the property and their concerns of such an overinflated house price. Despite this, Defendants encouraged a "man in the middle of complicated personal ordeal" to buy at an overinflated price.

159.    Defendants' marketing plan and scheme misleadingly portrayed or Implied that these loans were fixed rate loans, when Defendants knew that only the periodic payments were fixed (for a time), but that interest rates were not, in fact, "fixed," They claim a %9 rate when in reality they planned on a 19% rate.

160.    By the foregoing reasons, Plaintiffs has suffered and continues to suffer damages in a sum which is as yet unascertained. Plaintiffs will ask leave of court to amend the complaint when the true nature and extent of said damages have been ascertained, that because securitization constitutes a

 

violation of US Federal R.I.C.O. Statutes, we can state without equivocation that the entire securitization process constitutes violations of Federal R.I.C.O. statutes, because:

(1) Their theme is the requisite criminal or civil 'enterprise'- consisting of the sponsor/issuer, the trustees and the intermediary bank. These three parties work closely together to effect the securitization transaction/

(2) There are 'predicate acts' of:

a. Mail fraud - using the mails for sending out materials among themselves and to investors.

b. Wire fraud - using wires to engage in fraud by communicating with investors.

c. Conversion – where theme there isn't proper title to collateral.

d. Deceit - misrepresentation of issues and facts pertaining to the securitization transaction.

e. Securities fraud - disclosure issues.

f. It entails loss of profit opportunity.

g. It involves the making of false statements and or misleading representations about the value of the collateral,

h. It entails stripping the originator/issuer of the ability to pay debt claims or Judgment claims in bankruptcy court, a state of affairs that may apply where the sponsor is financially distressed and the cash proceeds of the transaction are significantly less than the value of the collateral.

Defendants, filed and were granted leave of stay when they pushed Plaintiffs into bankruptcy. On the forth page of their petition they state; "Arrehbori LLC and Guarantors are obligated on the loan and have failed to make payments to Movant by paying Movant's loan upon the maturity date of September 1, 2016." This was their plan all along. **[Exhibit "G"]**

161.    Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct are specifically designed to defraud Plaintiffs, constituting an "enterprise", with the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiffs

 

through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan document.

162.    Defendants are willfully hiding the original promissory note so as to conceal their RICO operation of fractional reserve lending in violation of law, good faith, and fair business dealings.

163.    By reason of the foregoing, and as a direct and proximate result of the actions of the Defendants, Plaintiffs have and continue to suffer damages in a sum which is, as yet unascertained.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

### SEVENTEENTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### (Against Defendants)

164.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

165.    Defendants owed a fiduciary duty to Plaintiffs and breached that duty by ailing to advise or notify Plaintiffs when Defendant's broker knew or should have known that Plaintiffs will or has a likelihood of defaulting on the loan, Defendants have a fiduciary duty to the borrower to not place them in that loan (in harm's way).

166.    Regarding this loan, it was in the best interest of the Defendants to promote the particular program for which they approved the Plaintiffs. It led to a maximization of profits for the Defendants, with no concern for the borrower. Alternative loan programs would have netted less return for the lender, though better for the borrower.

167.    Defendant failed to provide material disclosures regarding the loan and its interest rate to Plaintiffs while in the capacity of Plaintiff's Lender.

168.    DEFENDANT served in multiple capacities without disclosing said roles to Plaintiffs. DEFENDANT served as original lender, broker and servicer. These multiple roles allowed DEFENDANT to have more control over the actions, safeguards and compliance requirements which

were violated per this Complaint. The multiple roles DEFENDANT played were a breach of their duty of loyalty and to their fiduciary, the Plaintiff borrowers.

169.    Defendants failed to fully comply with TILA/RESPA regulations and laws designated to protect Plaintiffs. The failure to do so placed Plaintiffs in a serious disadvantage and potential loss of their home. Such actions are violations of a fiduciary responsibility owed to Plaintiffs by Defendants. WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## EIGHTEENTH CAUSE OF ACTION

### UNJUST ENRICHMENT

### (Against All Defendants)

170.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

171.    Defendants provided the Plaintiffs with an agreement to repay a loan that had and the following terms:

1. Had a six month maturity date;

2. Had a Balloon Payment;

3. Amortized loan,

4. Outrageous monthly payments of $262,500.00 just to pay off the principal of the loan,

5. High interest and late penalties,

6. They knew Plaintiffs had no ability to repay the loan by defendants,

7. Lied about monthly payments being $11,812.50 when that only pays partial interest. Plaintiffs made 5 payments of $11,812.50 equaling $59,062.50 as instructed and it did not make a dent in what they owed. They were demanded to pay the full amount on the 6th payment. **[Exhibit "C"]**

This allowed Defendants to charge 19% interest and steal Plaintiffs collateral within 6 months, which was worth tremendous value to Defendants.

 

172. Plaintiffs likewise expected in return, fair and truthful dealings, disclosures and practices by Defendants while providing value to Defendants.

173. Defendants acknowledged, accepted, and benefited from the Plaintiff's agreement to enter into the loan.

174. A forced sale of the Plaintiff's home, and an allowance for Defendant's to recoup the extreme profits enjoyed by forcing Plaintiffs into an imbalance of principal to interest ratio, would be inequitable and unconscionable, while the Defendants enjoy the benefit of the Plaintiff's actions without paying for their own breaches of the law and professional responsibilities.

WHEREFORE, Plaintiffs pray for restitution and for judgment against Defendants, and each of them, as set forth therein.

## NINETEENTH CAUSE OF ACTION

### UNCONSCIONABILITY

### (UCC-2-3202)

### (Against All Defendants)

175. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

176. If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

177. When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

178. Theme, based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the Defendants were require to follow; coupled

COMPLAINT
33

 

with the windfall that the Defendants reaped financially from their predatory practices upon Plaintiff's, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect. WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

## TWENTIETH CAUSE OF ACTION

### CONVERSION

### (Against All Defendants)

179.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

180.    On or about **AUGUST 4, 2017**, Defendants, will attempt to force an illegal non-judicial sale of the SUBJECT PROPERTY by filing a Notice of Trustee's Sale, attempting to claim a right of entry to the SUBJECT PROPERTY. Plaintiffs have not consented to such an entry and dispute the Defendants right. **[Exhibit "H" notice of sale]**

181.    The personal and real property located within the SUBJECT PROPERTY has a value to Plaintiffs, both compensable and sentimental.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## TWENTY-FIRST CAUSE OF ACTION

### QUIET TITLE

### (All Defendants Claiming Any Interest In the Subject Property)

182.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

183.    Plaintiffs is at all times therein mentioned the owner and/or entitled to possession of the Property, until the date of sale that transferred physical possession of the deed of trust to the non-bonafide subsequent purchaser.

184.    Plaintiffs are informed and therefore believe and thereupon allege that Defendants, and each of them, claim an interest in the Subject Property adverse to Plaintiffs. However, as a result of the

 

conduct more fully described in the preceding allegations, the claim of Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the SUBJECT PROPERTY.

185.    Plaintiffs therefore seek a declaration that the title to the SUBJECT PROPERTY is vested in Plaintiff's alone and that the Defendants therein, and each of them, be declared to have no estate, right, title or interest in the SUBJECT PROPERTY and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the SUBJECT PROPERTY adverse to Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

## TWENTY-SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
#### (Against all Defendants)

186.    Plaintiffs repeats and re-alleges each and every allegation contained in paragraphs above inclusive and incorporates same as though set forth at length.

187.    Plaintiffs allege there was no fair and reasonable consideration. The loan originators knew about the unconscionable clauses in the loan documents but never provided fair consideration. The loan originators must make restitution and cannot benefit from the misrepresentations and fraud committed against the Plaintiffs.

188.    Plaintiffs have performed all conditions and covenants, and promises required by them to be performed in accordance with the terms and conditions of the alleged agreement.

189.    By reason of Defendants' nondisclosure of the cognovit clauses, misrepresentation and lack of contractual consent in the alleged contract, the contract is void, unenforceable, and Plaintiffs have suffered damages in excess of the sum of $1.85M which is to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth therein.

///

///

 

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs will ask for the following for each Cause of Action sustained:

1. For Compensatory Damages in an amount to be determined by proof at trial.

2. For Special Damages in an amount to be determined by proof at trial.

3. For General Damages in an amount to be determined by proof at trial.

4. For Treble Damages in an amount to be determined by proof at trial.

5. For Punitive Damages as against the individual Defendants.

6. For Attorney's Fees and Costs of this action.

7. For Declaratory Relief, including a declaration that Plaintiffs is the prevailing party.

8. For Injunctive Relief;

9. For a judgment rescinding the Loan and Security Agreement and setting forth terms of restitution.

10. For any prejudgment or other interest according to law.

11. Any other and further relief that the Court considers just and proper.

Date: July 27 2016

LAW OFFICES OF GOLDY M. BERGER

By: _____

Goldy M. Berger, Esq.
Attorneys for Plaintiffs



## VERIFICATION

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I have read the foregoing VERIFIED COMPLAINT FOR: (1) DECLARATORY RELIEF; (2) INJUNCTIVE RELIEF; (3) CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALING; (4) VIOLATIONS OF TILA; (5) VIOLATION OF CALIFORNIA CIVIL CODE § 1918.5-1920, 1921; (6) VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7 B; (7) VIOLATION OF CALIFORNIA CIVIL CODE § 1916(10)c; (8) VIOLATION OF CALIFORNIA CIVIL CODE § 1632; (9) VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES UNDER CA BUSINESS AND PROFESSIONS CODE § 17200 & PREDATORY LENDING; (10) VIOLATION OF CALIFORNIA CIVIL CODE § 2079.16; (11) VIOLATION OF 12 CODE OF FEDERAL REGULATIONS § 226.23(a)(3); (12) VIOLATION OF 24 CODE OF FEDERAL REGULATIONS §3500.10; (13) VIOLATION OF THE FAIR AND; (14) ACCURATE CREDIT TRANSACTION ACT OF 2003 §221(b); (14) RESCISSION; (15) MISREPRESENTATION AND FRAUD; (16) UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP); (17) BREACH OF FIDUCIARY DUTY; (18) UNJUST ENRICHMENT; (19) UNCONSCIONABILITY; (20) CONVERSION; (21) QUIET TITLE; (22) BREACH OF CONTRACT, and know its contents.

I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 27 day of July, 2017, in ____LOS Angeles____, California.

RABIN ARREHBORI

 

## VERIFICATION

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I have read the foregoing VERIFIED COMPLAINT FOR: (1) DECLARATORY RELIEF; (2) INJUNCTIVE RELIEF; (3) CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALING; (4) VIOLATIONS OF TILA; (5) VIOLATION OF CALIFORNIA CIVIL CODE § 1918.5-1920, 1921; (6) VIOLATION OF CALIFORNIA CIVIL CODE § 1916.7 B; (7) VIOLATION OF CALIFORNIA CIVIL CODE § 1916(10)c; (8) VIOLATION OF CALIFORNIA CIVIL CODE § 1632; (9) VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES UNDER CA BUSINESS AND PROFESSIONS CODE § 17200 & PREDATORY LENDING; (10) VIOLATION OF CALIFORNIA CIVIL CODE § 2079.16; (11) VIOLATION OF 12 CODE OF FEDERAL REGULATIONS § 226.23(a)(3); (12) VIOLATION OF 24 CODE OF FEDERAL REGULATIONS §3500.10; (13) VIOLATION OF THE FAIR AND; (14) ACCURATE CREDIT TRANSACTION ACT OF 2003 §221(b); (14) RESCISSION; (15) MISREPRESENTATION AND FRAUD; (16) UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP); (17) BREACH OF FIDUCIARY DUTY; (18) UNJUST ENRICHMENT; (19) UNCONSCIONABILITY; (20) CONVERSION; (21) QUIET TITLE; (22) BREACH OF CONTRACT, and know its contents.

I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this ⟨27⟩ day of July, 2017, in _____ Los Angeles _____, California.

RAYMOND ARREHBORI

ID #:137



# Exhibit "A"






# GEORGE WASHINGTON
## LENDING CORPORATION

(/)

**CALL US NOW**
844-202-2015

# REAL ESTATE LOANS FROM A DIRECT PRIVATE LENDER

90% LTV available, asset based underwriting, simple application.

Spend 5 minutes with us and get your loan closed in 5 days.

## OUR PRODUCTS

## APPLY FOR THE LOAN

(products.php)

(apply.php)

© 2015 George Washington Lending Corporation. All rights reserved.
CA BRE License # 01979276

# Exhibit "B"

 

Loan # L201512100

# TERMS OF THE LOAN

## Loan Type:

Interest Only With Balloon Payment: XX

Partially Amortized With Balloon Payment:

Fully Amortized:

Accrued all principal and interest to be paid at maturity.

Loan Amount:   $1,575,000.00

Interest Rate:  9.00%

Term of Loan: 6

No. of Prepaid Payments

Loan Position:  1

First Due Date:  04/01/2016

Maturity Date:  09/01/2016

Payment Amount: $11,812.50

Estimated Balloon Payment:  $1586812.50

1st Payment Change Date:  N/A

Prepay Penalty: Yes    No  XX

Prepayment Penalty Expiration:

Prepayment Penalty Maximum: $0.0000000

Late Charge Days:  5

Late Charge Percentage:  10.00%

*The undersigned do/does hereby understand that the above terms are just the basic terms of my/our loan. I/We understand that we need to review all loan documentation to understand all of the terms that conditions of my/our loan.*

Arrehbori Family LLC.

_____
**Raymond Arrehbori Manager** /Date

_____
Rabin Arrehbori Manager /Date

TRMSOFLN.DOC



Exhibit "C"



# WIRE TRANSFER APPLICATION

## W WILSHIRE BANK

### 1.WIRE INFORMATION 송금내용

| SELECT ONE | | METHOD OF SUBMISSION |
|---|---|---|

| ☑ DOMESTIC | ☐ INTERNATIONAL | Foreign Currency Type | METHOD OF SUBMISSION |
|---|---|---|---|
| **** U.S DOLLAR ONLY **** | ☐ Foreign currency amount to be delivered? OR ☐ US Dollar amount to be delivered? | | ☒ IN PERSON ☐ FAXED APPLICATION |

| TRANSFER AMOUNT $ 11812 50 | TRANSFER AMOUNT in US Dollars $ | TRANSFER AMT in Foreign Currency | METHOD OF PAYMENT (Select One) ☐ CASH _____ |
|---|---|---|---|
| TRANSFER FEES $ 25.00 | TRANSFER FEES $ | | ☒ CHECK _____ |
| TOTAL AMOUNT RECEIVED $ 11837.50 | TOTAL AMOUNT | | ☐ DEBIT ACCT _____ |

### 2.CUSTOMER (REMITTER) INFO

| CUSTOMER NAME Raymond Archbari | ACCOUNT NUMBER 7046217 |
|---|---|
| ADDRESS 237 S. Wetherly Dr. Be Hills, CA 90211 | TELEPHONE 213-216-5252 |
| | COUNTRY USA |

#### NON-CUSTOMER USE ONLY

| IDENTIFICATION TYPE ☐ DRIVER'S LICENSE | ☐ PASSPORT | IDENTIFICATION NUMBER | ISSUED | EXPIRATION DATE |
|---|---|---|---|---|

### 3.BENEFICIARY (RECIPIENT) INFORMATION

| ACCOUNT NUMBER OR IBAN NUMBER 7545 34739 | |
|---|---|
| NAME George Washington Lending INC. | |
| ADDRESS 660 _ mento St. Suite 201 San francisco, CA 94111 | TELEPHONE 415-757-6625 |
| | COUNTRY |

### 4.BENEFICIARY BANK INFORMATION 받는은행

| BANK NAME Northbrook Bank & Trust | ABA NUMBER (Domestic) 071926184 |
|---|---|
| ADDRESS 1100 Waukegan Road Northbrook, IL. 60062 | SWIFT CODE (International) WILSHIRE BANK |
| | COUNTRY USA MAY 03 2016 |

| SPECIAL INSTRUCTIONS (Optional) 특별지시사항 | |
|---|---|

#### CUSTOMER AUTHORIZATION

By signing below, you confirm that: (a) you have verified the information set forth above, and (b) you have read and agreed to the Wire Transfer Service Terms and Conditions.

X _Raymond Archbari_    Date 5/3/16

| BANK USE ONLY | | | |
|---|---|---|---|
| BRANCH OR DEPARTMENT | | | |

| BRANCH # 7 | FAX AGREEMENT ON FILE? ☐ YES ☐ NO | CALLER _____ SPOKE TO _____ | VERIFIED INFO _____ TIME _____ | FUNDS AVAILABILITY CHECKED / VERIFIED |
|---|---|---|---|---|
| INPUTTED BY | | SYSTEM VERIFIED BY | APPROVED BY | |

| WIRE DEPARTMENT | | | | | |
|---|---|---|---|---|---|
| TEST KEY | REFERENCE NUMBER | CONCURRENT APPROVAL | | ENTERED BY | VERIFIED BY | FED RELEASED BY |

WIRE TRANSFER APP (REV. 03/24/2014)     WHITE - BANK     PINK - CUSTOMER

 

# WIRE TRANSFER APPLICATION

## WILSHIRE BANK

### 1. WIRE INFORMATION 송금내용

| SELECT ONE | | METHOD OF SUBMISSION |
|---|---|---|
| ☒ DOMESTIC | ☐ INTERNATIONAL | ☒ IN PERSON |
| **** U.S DOLLAR ONLY **** | ☐ Foreign currency amount to be delivered? OR ☐ US Dollar amount to be delivered? / Foreign Currency Type | ☐ FAXED APPLICATION |

| TRANSFER AMOUNT $ 11,612.50 | TRANSFER AMOUNT in US Dollars $ | TRANSFER AMT in Foreign Currency | METHOD OF PAYMENT (Select One) |
|---|---|---|---|
| | | | ☐ CASH |
| TRANSFER FEES $ 15.00 | TRANSFER FEES $ | | ☒ CHECK |
| | | | ☐ DEBIT ACCT |
| TOTAL AMOUNT RECEIVED $ 11,857.50 | TOTAL AMOUNT RECEIVED $ | | ☐ OTHERS |

### 2. CUSTOMER (REMITTER) INFORMATION 고객/송금인

| CUSTOMER NAME Wayland Dwehlin I | ACCOUNT NUMBER 704219 |
|---|---|
| ADDRESS 237 Swetherly Dr | TELEPHONE 213-216-5252 |
| BH CA 70211 | COUNTRY USA |

**NON-CUSTOMER USE ONLY**

| IDENTIFICATION TYPE (Select Appropriate) ☐ DRIVER'S LICENSE  ☐ STATE ID  ☐ PASSPORT | IDENTIFICATION NUMBER | ISSUED BY | EXPIRATION DATE |
|---|---|---|---|

### 3. BENEFICIARY (RECIPIENT) INFORMATION 받으시는분

| ACCOUNT NUMBER OR IBAN NUMBER 75-45834739 | |
|---|---|
| NAME George Washington Lending Inc | |
| ADDRESS 660 Sacramento St Suite 201 San Francisco CA 94111 | TELEPHONE 415 757 6425 |
| | COUNTRY USA |

### 4. BENEFICIARY BANK INFORMATION 받는은행

| BANK NAME North Brook Bank & Trust | ABA NUMBER (Domestic) 071726184 |
|---|---|
| ADDRESS 1100 Waukegan Road North Brook IL 60062 | SWIFT CODE (International) |
| | COUNTRY U.A |

| SPECIAL INSTRUCTIONS (Optional) 특별지시사항 | JUN 0 2 2016 |
|---|---|

**CUSTOMER AUTHORIZATION**

By signing below, you confirm that: (a) you have verified the information set forth above, and (b) you have read and agreed to the Wire Transfer Service Terms and Conditions.

X _____  Date _____

| BANK USE ONLY | | | |
|---|---|---|---|
| BRANCH OR DEPARTMENT | | | FUNDS AVAILABILITY |

| BRANCH # | FAX AGREEMENT ON FILE? ☐ YES ☐ NO | CALLER / SPOKE TO | VERIFIED INFO / TIME | CHECKED | VERIFIED |
|---|---|---|---|---|---|

| INPUTTED BY | | SYSTEM VERIFIED BY | APPROVED BY | |
|---|---|---|---|---|

**WIRE DEPARTMENT**

| TEST KEY | REFERENCE NUMBER | CONCURRENT APPROVAL | ENTERED BY | VERIFIED BY | FED RELEASED BY |
|---|---|---|---|---|---|

WIRE TRANSFER APP (REV. 03/24/2014)          WHITE - BANK          PINK - CUSTOMER

 

# Wilshire Bank

**Wire Automation**
V 2.0.0

Type :**Fed Out**          Date :**7/8/2016**
Status :                   IMAD :**20160708QMGFT006000646**

## Originator

Name :**RABIN ARREHBORI**
Address :**237 S. WETHERLY DR.**
         **BEVERLY HILLS, CA 90211**

Bank :
Address :

Sender to Receiver
Info :

## Beneficiary

Account :**7545834739**
Name :**GEORGE WASHINGTON LENDING INC**
Address :**660 SACRAMENTO ST. SUITE 201 SAN FRANCISCO, CA**
         **94111 USA TEL: 415-757-6625**

Currency Code :       **USD**
Amount : **$11,812.50**
Fee :    **$25.00**
Total : **$11,837.50**

Reference :
Bank :
Address :

Print  |  Close

 

# WIRE TRANSFER APPLICATION

**W WILSHIRE BANK**

## 1.WIRE INFORMATION 송금내용

### SELECT ONE

| ☑ DOMESTIC | ☐ INTERNATIONAL | METHOD OF SUBMISSION |
|---|---|---|

**** U.S DOLLAR ONLY ****

☐ Foreign currency amount to be delivered?
OR
☐ US Dollar amount to be delivered?

**Foreign Currency Type**

**METHOD OF SUBMISSION**
☑ IN PERSON
☐ FAXED APPLICATION

| TRANSFER AMOUNT | TRANSFER AMOUNT in US Dollars | TRANSFER AMT in Foreign Currency | METHOD OF PAYMENT (Select One) |
|---|---|---|---|
| $ 11812 50 | $ | | ☐ CASH _____ |
| TRANSFER FEES | TRANSFER FEES | | ☑ CHECK _____ |
| $ 25- | $ | | ☐ DEBIT ACCT _____ |
| TOTAL AMOUNT RECEIVED | TOTAL AMOUNT RECEIVED | | ☐ OTHERS _____ |
| $ 11837 50 | $ | | |

## 2.CUSTOMER (REMITTER) INFORMATION 고객/송금인

| CUSTOMER NAME Rabin Archbori | ACCOUNT NUMBER 7835810 |
|---|---|
| ADDRESS 737 S.wetherly Dr. Beverly Hills, CA 90211 | TELEPHONE 713-316-59... |
| | COUNTRY USA |

### NON-CUSTOMER USE ONLY

| IDENTIFICATION TYPE (Select Appropriate) ☐ DRIVER'S LICENSE   ☐ STATE ID   ☐ PASSPORT | IDENTIFICATION NUMBER | ISSUED BY | EXPIRATION DATE |
|---|---|---|---|

## 3.BENEFICIARY (RECIPIENT) INFORMATION 받으시는분

ACCOUNT NUMBER OR IBAN NUMBER   7545834739

NAME George Washington Lending INC.

| ADDRESS 660 Sacramento St. stoit 201 San francisco,CA 94111 | TELEPHONE 415-757-6625 |
|---|---|
| | COUNTRY USA |

## 4.BENEFICIARY BANK INFORMATION 받는은행

| BANK NAME Northbrook Bank & Trust | ABA NUMBER (Domestic) 071926184 |
|---|---|
| ADDRESS 1100 Waukegan Road Northbrook,IL 60062 | SWIFT CODE (International) |
| | COUNTRY USA | WILSHIRE BANK 847 |

| SPECIAL INSTRUCTIONS (Optional) 특별지시사항 | AUG 0 5 2016 |
|---|---|

### CUSTOMER AUTHORIZATION

By signing below, you confirm that: (a) you have verified the information set forth above, and (b) you have read and agreed to the Wire Transfer Service Terms and Conditions.

X _____   Date 6/5/16

### BANK USE ONLY

#### BRANCH OR DEPARTMENT

| BRANCH # | FAX AGREEMENT ON FILE? ☐ YES ☐ NO | CALLER _____ SPOKE TO _____ | VERIFIED INFO _____ TIME _____ | FUNDS AVAILABILITY CHECKED | VERIFIED |
|---|---|---|---|---|---|
| INPUTTED BY | | SYSTEM VERIFIED BY | | APPROVED BY | |

#### WIRE DEPARTMENT

| TEST KEY | REFERENCE NUMBER | CONCURRENT APPROVAL | | ENTERED BY | VERIFIED BY | FED RELEASED BY |
|---|---|---|---|---|---|---|

WIRE TRANSFER APP (REV. 03/24/2014)   WHITE - BANK   PINK - CUSTOMER

 

# WIRE TRANSFER APPLICATION

**W WILSHIRE BANK**

## 1. WIRE INFORMATION 송금내용

| SELECT ONE | | METHOD OF SUBMISSION |
|---|---|---|
| ☑ DOMESTIC | ☐ INTERNATIONAL | ☐ IN PERSON |
| **** U.S DOLLAR ONLY **** | ☐ Foreign currency amount to be delivered? OR ☑ US Dollar amount to be delivered?    Foreign Currency Type | ☐ FAXED APPLICATION |

| TRANSFER AMOUNT $ 11,812.50 | TRANSFER AMOUNT in US Dollars $ | TRANSFER AMT in Foreign Currency | METHOD OF PAYMENT (Select One) |
|---|---|---|---|
| TRANSFER FEES $ 25.00 | TRANSFER FEES $ | | ☐ CASH _____ ☑ CHECK _____ |
| TOTAL AMOUNT RECEIVED $ 11,837.50 | TOTAL AMOUNT RECEIVED $ | | ☐ DEBIT ACCT _____ ☐ OTHERS _____ |

## 2. CUSTOMER (REMITTER) INFORMATION 고객/송금인

| CUSTOMER NAME Raymond Arrehboost | ACCOUNT NUMBER 704-219 |
|---|---|
| ADDRESS 257 woether . . . . H. CA 90211 | TELEPHONE 213 216-5252 COUNTRY USA |

### NON-CUSTOMER USE ONLY

| IDENTIFICATION TYPE (Select Appropriate) ☐ DRIVER'S LICENSE   ☐ STATE ID   ☐ PASSPORT | IDENTIFICATION NUMBER | ISSUED BY | EXPIRATION DATE |
|---|---|---|---|

## 3. BENEFICIARY (RECIPIENT) INFORMATION 반송시 등보

| ACCOUNT NUMBER OR IBAN NUMBER 7545934739 |
|---|
| NAME George washington vending llc |
| ADDRESS 660 Sacramento st suite 201 San francisco CA 94111 | TELEPHONE 415 757 6625 COUNTRY US |

## 4. BENEFICIARY BANK INFORMATION 반도은행

| BANK NAME Northbrook banks jacr1 | ABA NUMBER (Domestic) 071920184 |
|---|---|
| ADDRESS 1100 Wankegon Road Northbrook, il 60062 | SWIFT CODE (International) COUNTRY US |

| | WILSHIRE BANK BR 7 APR 0 8 2016 TELLER #5 122038251 |
|---|---|

| SPECIAL INSTRUCTIONS (Optional) 특별지시사항 |
|---|

### CUSTOMER AUTHORIZATION

By signing below, you confirm that: (a) you have verified the information set forth above, and (b) you have read and agreed to the Wire Transfer Service Terms and Conditions.

X _Raymond Arrehboost_     Date 9-8-16

### BANK USE ONLY

#### BRANCH OR DEPARTMENT

| BRANCH # 57 | FAX AGREEMENT ON FILE? ☐ YES ☐ NO | CALLER _____ SPOKE TO _____ | VERIFIED INFO _____ TIME _____ | FUNDS AVAILABILITY |||
|---|---|---|---|---|---|---|
| | | | | CHECKED | VERIFIED | |
| INPUTTED BY | | SYSTEM VERIFIED BY | | APPROVED BY | | |

#### WIRE DEPARTMENT

| TEST KEY | REFERENCE NUMBER | CONCURRENT APPROVAL | | ENTERED BY | VERIFIED BY | FED RELEASED BY |
|---|---|---|---|---|---|---|

WIRE TRANSFER APP (REV. 03/24/2014)          WHITE - BANK          PINK - CUSTOMER

# Exhibit "D"



## iClose Escrow

17744 Skypark Circle, Suite 290, Irvine CA 92614
Tel (949) 221-8162 • Fax (949) 271-3704
info@iCloseEscrow.com

### ESCROW SETTLEMENT STATEMENT
Final

| | |
|---|---|
| Escrow Number: | 1695-ME |
| Escrow Officer: | Mike Eldo |

| | |
|---|---|
| Title Order Number: | NXCA-0210970 |
| Date: | 01/20/2017 – 4:06:53PM |
| Closing Date: | 02/16/2016 |
| Disbursement Date: | 02/16/2016 |

Borrower:    Arrehbori Family, LLC.

Property:    237 South Wetherly, Beverly Hills, CA 90211

| SELLER DEBITS | SELLER CREDITS | DESCRIPTION | | BORROWER DEBITS | BORROWER CREDITS |
|---|---|---|---|---|---|
| | | TOTAL CONSIDERATION | | | |
| | | TITLE CHARGES | | | ' |
| | | Lender/Mortgagee Premium for 1,575,000.00: Nextitle | | 1,760.00 | |
| | | Mortgage Recording Fee: Nextitle | | 682.00 | |
| | | Messenger Fee: To Be Determined | | 25.00 | |
| | | Wire/Express: Nextitle | | 60.00 | |
| | | Recording: Nextitle | | 110.00 | |
| | | ESCROW CHARGES TO: iClose Escrow, Inc. | | | |
| | | Escrow Fee | | 2,500.00 | |
| | | Document Preparation Fee | | 500.00 | |
| | | Wire Fee | | 90.00 | |
| | | Notary Signing Fee | | 500.00 | |
| | | Courier | | 100.00 | |
| | | LENDER CHARGES | | | |
| | | New to George Washington Lending Inc: | | | 1,575,000.00 |
| | | Loan Fee @ 3.50 %: George Washington Lending Inc | | 55,125.00 | |
| | | Prepaid Interest From 2/09/2016 To 2/29/2016, 20 Days, @ 393.7500/per day: George Washington Lending Inc | | 7,875.00 | |
| | | Underwriting Fee: George Washington Lending Inc | | 695.00 | |
| | | Processing Fee: George Washington Lending Inc | | 300.00 | |
| | | LOAN PAYOFF: Citibank | | | |
| | | Principal Balance | 426,927.33 | | |
| | | Interest From 2/01/2016 To 2/12/2016 | 2,223.58 | | |
| | | Miscellaneous Charge | 75.00 | | |
| | | Reconveyance Fee | 18.00 | | |
| | | Miscellaneous Charge | 234.75 | | |
| | | Interest From 2/01/2016 To 2/12/2016 | 877.20 | | |
| | | wire | 15.00 | | |
| | | Total Loan Payoff | | 430,370.86 | |
| | | LOAN PAYOFF: Citibank 2nd | | | |
| | | Principal Balance | 241,856.65 | | |
| | | Interest From       To 2/15/2016 | 1,362.58 | | |
| | | Statement / Demand Fee | 48.00 | | |
| | | Reconveyance Fee | 25.00 | | |
| | | Total Loan Payoff | | 243,292.23 | |
| | | LOAN PAYOFF: Ray Davies | | | |
| | | Principal Balance | 250,000.00 | | |
| | | Total Loan Payoff | | 250,000.00 | |
| | | LOAN PAYOFF: Sionit Nieman | | | |
| | | Principal Balance | 300,000.00 | | |
| | | Total Loan Payoff | | 300,000.00 | |
| | | LOAN PAYOFF: Moossa Lari | | | |
| | | Principal Balance | 75,000.00 | | |



**iClose Escrow**

17744 Skypark Circle, Suite 290, Irvine CA 92614
Tel (949) 221-8162 · Fax (949) 271-3704
info@iCloseEscrow.com

### ESCROW SETTLEMENT STATEMENT
Final

Escrow Number: 1695-ME
Page 2

| SELLER | | | | BORROWER | |
|---|---|---|---|---|---|
| DEBITS | CREDITS | DESCRIPTION | | DEBITS | CREDITS |
| | | Total Loan Payoff | | 75,000.00 | |
| | | LOAN PAYOFF: Internal Revenue Service | | | |
| | | Payoff Amount | 41,632.31 | | |
| | | Total Loan Payoff | | 41,632.31 | |
| | | ADDITIONAL DISBURSEMENTS: | | | |
| | | Homeowner's Insurance: Cal Best Insurance | | 1,698.00 | |
| | | BALANCE DUE BUYER | | 162,684.60 | |
| | | TOTALS | | 1,575,000.00 | 1,575,000.00 |

THIS IS A FINAL CLOSING STATEMENT

# Exhibit "E"

COUNTY OF LOS ANGELES
## SHERIFF'S DEPARTMENT
### COURT SERVICES DIVISION

# NOTICE TO VACATE

CASE NUMBER: _BC 607589_

TO:  Judgment debtor, members of the judgment debtor's household, and any occupants residing with the judgment debtor.

By virtue of a **Writ of Possession of Real Property**, a copy of which is attached,

YOU ARE ORDERED TO VACATE THE PREMISES DESCRIBED IN THE WRIT NOT LATER

THAN: _____3-20_____, 20_16_.

SHERIFF'S BRANCH (Name, Address and Telephone Number)

☐                                    ☐                    JIM McDONNELL, SHERIFF

                                                          #400054 R. Booker
                                                     By: _____

                                                     Date: _____Deputy___3-15-16_____

☐                                    ☐

76N654E SH-CI-52 (REV. 9/94)

*NOTICE TO VACATE*

---

COUNTY OF LOS ANGELES
## SHERIFF'S DEPARTMENT
### COURT SERVICES DIVISION

# NOTICE TO VACATE

CASE NUMBER: _BC 607589_

TO:  Judgment debtor, members of the judgment debtor's household, and any occupants residing with the judgment debtor.

By virtue of a **Writ of Possession of Real Property**, a copy of which is attached,

YOU ARE ORDERED TO VACATE THE PREMISES DESCRIBED IN THE WRIT NOT LATER

THAN: _____3-20_____, 20_16_.

SHERIFF'S BRANCH (Name, Address and Telephone Number)

☐                                    ☐                    JIM McDONNELL, SHERIFF

                                                          #400054 R. Booker
                                                     By: _____

                                                     Date: _____Deputy___3-15-16_____

☐                                    ☐

76N654E SH-CI-52 (REV. 9/94)

*NOTICE TO VACATE*



EJ-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number and address): | | FOR COURT USE ONLY |
|---|---|---|

Rebecca Hufford-Cohen    SBN: 101783
The Law Office Of Rebecca Hufford Cohen
433 North Camden Drive Suite 600
Beverly Hills, CA 90210

TELEPHONE NO.: (310) 860-5107    FAX NO.: (310) 275-1380
E-MAIL ADDRESS:
ATTORNEY FOR (Name): DIBAS LLC

[X] ATTORNEY FOR    [X] JUDGMENT CREDITOR    [ ] ASSIGNEE OF RECORD

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse on Hill St.

PLAINTIFF: DIBAS LLC

DEFENDANT: M.R.R. FABRIC, INC., RAYMOND ARREHBORI AND RABIN ARREHBORI

| | | CASE NUMBER |
|---|---|---|
| **WRIT OF** | [ ] EXECUTION (Money Judgment)<br>[X] POSSESSION OF [ ] Personal Property<br>[X] Real Property<br>[ ] SALE | BC607589 |

[ ] Limited Civil Case    [ ] Small Claims Case
[X] Unlimited Civil Case    [ ] Other_____

1. To the Sheriff or Marshal of the County of: Los Angeles

You are directed to enforce the judgment described below with daily interest and your costs as provided by law.

2. To any registered process server: You are authorized to serve this writ only in accord with CCP 699.080 or CCP 715.040.

3. (Name): DIBAS LLC

is the [X] judgment creditor [ ] assignee of record    whose address is shown on this form above the court's name.

4. Judgment debtor (name, type of legal entity stated in judgment if not a natural person, and last known address):

M.R.R. Fabric, Inc.

2824 & 2826 East 12th Street
Los Angeles, CA 90023-3622

[X] Additional judgment debtors on next page
5. Judgment entered on (date): MAR - 2 2016

6. [ ] Judgment renewed on (dates):

7. Notice of sale under this writ
   a. [X] has not been requested.
   b. [ ] has been requested (see next page).
8. [ ] Joint debtor information on next page.

[SEAL]

9. [X] See next page for information on real or personal property to be delivered under a writ of possession or sold under a writ of sale.
10. [ ] This writ is issued on a sister-state judgment
11. Total judgment ................... $
12. Costs after judgment (per filed order or memo CCP 685.090) ........... $
13. Subtotal (add 11 and 12) ......... $
14. Credits .................... $
15. Subtotal (subtract 14 from 13) ...... $
16. Interest after judgment (per filed affidavit CCP 685.050) (not on GC 6103.5 fees)... $
17. Fee for issuance of writ ............. $    25.00
18. Total (add 15, 16, and 17) ........... $    25.00
19. Levying officer:
   (a) Add daily interest from date of writ (at the legal rate on 15) (not on GC 6103.5 fees) of ...... $
   (b) Pay directly to court costs included in 11 and 17 (GC 6103.5, 68637; CCP 699.520(i)) ........... $
20. [ ] The amounts called for in items 11–19 are different for each debtor. These amounts are stated for each debtor on Attachment 20

SHERRI R. CARTER
Issued on (date): MAR - 3 2016    Clerk, by _____ , Deputy
K.W. KAM

NOTICE TO PERSON SERVED: SEE NEXT PAGE FOR IMPORTANT INFORMATION.

POSSESSION ONLY

Page 1 of 2
Form Approved for Optional Use    WRIT OF EXECUTION    Code of Civil Procedure, §§ 699.520, 712.010, 715.010






Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs (SBN 235718)
scott@donigerlawfirm.com
Annie Aboulian (SBN 280693)
annie@donigerlawfirm.com
DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile: (310) 417-3538

Attorneys for Plaintiff

FILED

2013 SEP -4  PM 3: 05

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MINX INTERNATIONAL, INC., a California corporation d/b/a "Damask Fabrics",

Plaintiff,

vs.

M.R.R. FABRIC, INC., a California corporation; THE WET SEAL, INC. a California corporation; ROSS STORES, INC., a California Corporation; BELLA D, INC., a California corporation; POETRY CORPORATION, a California corporation; DEB SHOPS SDW, LLC, a Pennsylvania limited liability company; DEB SHOPS, INC., a Pennsylvania corporation; BODY SHOP OF AMERICA, INC., a Florida corporation individually and d/b/a "Body Central"; STYLES FOR LESS, INC., a California corporation; CHARLOTTE RUSSE, INC., a California corporation; BURLINGTON COAT FACTORY

Case No.: CV13-5947 PSG (CWx)
*Honorable Philip S. Gutierrez Presiding*

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR:

1. COPYRIGHT INFRINGEMENT;

2. VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT INFRINGEMENT

Jury Trial Demanded

- 1 -

FIRST AMENDED COMPLAINT



# Exhibit "G"

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Arrehbori Family LLC ("**Borrower**"), Rabin Arrehbori and Raymond Arrehbori (collectively, "**Guarantors**") have failed to make required payments as set forth in the attached Declaration of Creditor and failed to payoff the loan by the maturity date of September 1, 2016. Movant is not receiving payments from the Debtor or any related parties. There is admittedly no equity in the Property and given that it is a chapter 7, there is no reorganization in prospect. As a result, Movant asserts that this justifies relief for "cause" pursuant to 11 U.S.C. § 362(d)(1) and/or (d)(2). This Motion is being filed in the Borrower's bankruptcy, the Guarantors' bankruptcies and the bankruptcies of R2D Apparel, Inc. and M.R.R. Fabric, Inc. (collectively "**Related Entities**") to the extent that there is a stay preventing Movant from moving forward with its rights against the Property. Movant was listed as a creditor or "potential creditor" in all bankruptcies.

### II.   FACTS

In accordance with the Declaration filed herewith, Movant asserts the following:

1.   On September 1, 2016, Debtor filed a Petition under Chapter 7 of the Bankruptcy Code.

2.   Movant is the payee of a Promissory Note dated February 1, 2016, in the principal amount of $1,575,000.00 (the "**Note**") secured by a First Deed of Trust of same date, which bears interest as specified therein. The indebtedness evidenced by the Note is secured by a Deed of Trust (the "**Deed of Trust**") executed and recorded in Los Angeles County and encumbers the real property located at 237 S. Wetherly Drive, Beverly Hills, CA 90211 ("**Property**") [*See* Movant Declaration, Paragraph 2].

3.   Guarantors are the responsible individuals for ARREHBORI FAMILY, LLC, a California Limited Liability Company ("**Arrehbori LLC**") and executed Movant's Note and Deed of Trust, dated February 1, 2016, on behalf of Arrehborri LLC (the "**Loan**"). The Note and Deed of Trust is the subject of this Motion for Relief from the Automatic Stay [*See* Movant Declaration, Paragraph 2].

1

4.    Guarantors own, control, and manage Arrehbori LLC. The Guarantors have guaranteed the performance and obligations of the borrower under the Note, by executing a Commercial Guaranty ("**Guaranty**"), in addition to securitizing said Guaranty by executing the Loan documents as referenced above.[1]

5.    Pursuant to the terms of the Loan, the maturity date was September 1, 2016. Debtor filed the instant case on September 1, 2016, the same date Lender's loan was all due and payable

6.    Interest continues to accrue daily on the Borrower's unpaid obligation under Movant's loan.

**Priorities of Deed of Trusts against Debtor's Property**

7.    Although Lender has a 1st position lien recorded against the Property, there are three (3) other secured loans recorded against the Property. The 2nd Priority Deed of Trust for the benefit of Sionit Neman as recorded against the Property on February 12, 2016 with the L.A. County Recorder's Office as Instrument number 20160161810.The 3rd Priority Deed of Trust for the benefit of Ray Davis was recorded against the Property on February 12, 2016 with the L.A. County Recorder's Office as Instrument number 20160161811. The 4th Priority Deed of Trust for the benefit of Moosa Lari, was recorded against the Property on February 12, 2016 with the L.A. County Recorder's Office as Instrument number 20160161812. A true and correct copy of the Title Policy obtained by Movant on the Maturity Date, evidencing the above liens, is attached hereto as Exhibit "5."[2]

**Related Bankruptcy Filings**

8.    Lender received notice of several bankruptcy filings which listed the Property and/or Lender as a creditor. Borrower, Guarantors, and Related Entities each filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code, as follows:

---

1 The Guaranty is attached to the Declaration of Creditor as Exhibit "5."

[2] Arrehborri Family, LLC's Schedule "D" indicates that Moosa Lari has a 3RD Priority Deed of Trust, where in fact, Ray Davis, has a 3RD Priority Deed of Trust and Moosa Lari has a 4TH Priority Deed of Trust as Ray Davis' Deed of Trust was recorded immediately BEFORE Moosa Lari's Deed of Trust evidenced by the Instrument Numbers of the respective Deeds of Trusts (Ray Davis 20160161811 and Moosa Lari 20160161812)

2

Case 2:17-cv-06619-GW-AFM Document 1-1 Filed 09/08/17 Page 161 of 171 Page ID #:165

Case 2:16-bk-21745-BR Doc 52-1 Filed 02/01/17 Entered 02/01/17 17:39:42 Desc Memorandum of Points And Authorities Page 3 of 6

| Case Name: | Case Number: | Chapter | Date Filed | Status |
|---|---|---|---|---|
| Arrehbori Family, LLC | 2:16-bk-21731-BR | 7 | 9/1/2016 | Pending |
| Raymond Arrehbori | 2:16-bk-21745-BR | 7 | 9/1/2016 | Pending |
| Rabin Arrehbori | 2:16-bk-21748-BR | 7 | 9/1/2016 | Pending |
| M.R.R. Fabric, Inc. | 2:16-bk-21734-BR | 7 | 9/1/2016 | Pending |
| R2D Apparel, Inc. | 2:16-bk-21740-BR | 7 | 9/1/2016 | Pending |

9. Therefore, concurrently with the filing of this Motion, Movant has also filed Motions for Relief from the Automatic Stay in each of the above referenced related bankruptcy cases. Said Motions on the related cases, are set to be heard concurrently on the same date and time as the instant Motion, with the Honorable Barry Russell presiding. The Debtors in all the above related cases are represented by the same Bankruptcy Counsel.

## III. ARGUMENT

### 1. Sufficient "Cause" Exists to Grant Movant's Motion for Relief from the Automatic Stay Given the Lack of Payment and Bad Faith

11 U.S.C. §362(d)(1) provides that:

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest."

Cause to terminate the stay exists whenever the stay will harm the creditor and lifting the stay will not unjustly harm the debtor or other creditors. *In re Smith*, 1996 Bankr. LEXIS 1486, 78 A.F.T.R.2d (RIA) 7597 (Bankr. D. Cal. 1996). "Factors to consider in determining whether the automatic stay should be modified for cause include: (1) an interference with the bankruptcy; (2) good or bad faith of the debtor, (3) injury to the debtor and other creditors if the stay is modified; (4) injury to the Movant if the stay is not modified; and (5) the relative portionality of

3

the harms from modifying or continuing the stay" *Scripps GSB I, LLC v. A Partners, LLC (In re A Partners, LLC)*, 344 B.R. 114, 127 (Bankr. E.D. Cal. 2006). Here, there is sufficient "cause" to grant relief from the automatic stay.

**Lack of Payment**

Arrehbori LLC and Guarantors are obligated on the Loan and have failed to make payments to Movant by paying Movant's Loan upon the maturity date of September 1, 2016 as required. It has now been almost five months since maturity and interest continues to accrue in accordance with the terms of the Note. The failure of the Debtor or any related parties to make required payments provides "cause" for relief from the Automatic Stay in accordance with the ruling of the Bankruptcy Appellate Panel in *In re Proudfoot*, 144 B.R. 876 (9th Cir. BAP 1992).

**Movant's Loan has Matured**

Movant's Loan matured on the September 1, 2016 and Movant still has not received a full payoff of its loan. Every day that the loan remains unpaid, per diem interest accrues at $393.75 daily. Despite the loan being fully due and payable, Debtor has not paid off Movant's loan or received an extension of the maturity date. Thus, there is sufficient "cause" to grant relief from the automatic stay.

**Related Entities Bankruptcies**

To the extent there is a stay in the Related Entities' bankruptcies, Movant asserts this stay should also be lifted. The Related Entities are not borrowers or guarantors on the Loan and appear to have listed the claim only as a precaution. They do not have an interest in the Property and relief from stay is appropriate as a result.

2. **The Property Has No Equity and Is Not Necessary to an Effective Reorganization That is in Prospect.**

Movant seeks, relief from the Automatic Stay pursuant to 11 U.S.C. Section 362(d)(2), and alleges that in accordance with the information set forth in the attached Declaration of Creditor, there is insufficient equity present in the subject real property to justify the continuance of the Automatic Stay. *See also Stewart v. Gurley*, 745 F.2d 1194 (9th Cir. 1984).

4

11 U.S.C. §362(d)(2) provides an independent basis for Movant to obtain relief from the stay and contains the following requirements:

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay...
(2) with respect to a stay of an act against property under subsection (a) of this section, if--
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization."

<u>Equity Analysis</u>

The court must first determine whether there is any equity in the subject Property. "Equity" is defined as "the value, above all secured claims against the property that can be realized from the sale of the property for the benefit of the unsecured creditors." *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984); *see also La Jolla Mortg. Fund v. Rancho El Cajon Associates*, 18 B.R. 283 (Bankr. S.D. 1982).

Here, according to the Debtor's Schedules, the Property is worth $2,167,964.00 as of the petition date. Movant is owed at least $1,692,324.25. In addition, Debtor's Schedules show at least three (3) other liens on the property held by Sionit Newman, Ray Davis, and Moossa Lari providing that the total amount owing on the Property is at least $2,967,324.25. There is clearly no equity in the subject Property for the benefit of the estate.

<u>Reorganization Analysis</u>

All of the subject bankruptcies are Chapter 7 liquidations. Since a chapter 7 does not contemplate reorganization, the sole issue before the court when stay relief is sought under 11 U.S.C. § 362(d)(2) is whether there is any equity in the property (*See Nev. Nat'l Bank v. Casbul of Nev., Inc. (in re Casgul of Nev., Inc.)* 22 B.R. 65, 66 (9th Cir. BAP 1982); *Ramco Indus. V. Preuss (in re Preuss)* 15 B.R. 896 (9th Cir. BAP 1981). As detailed above, there is admittedly no equity in the Property and a reorganization analysis would not be required.

3. **Bankruptcy Rule 4001(a)(3) Should Be Waived**

There is cause to waive any waiting period that may be imposed by Bankruptcy Rule 4001(a)(3)). There is no reason to allow for an additional waiting period after entry of a relief order given that there is no equity in the Property and the debt service is increasing rapidly. It is

5

also important to note that another creditor (junior lienholder) recently obtained relief from stay as to the Property.

### IV. CONCLUSION

There is clearly "cause" for relief from stay as Movant has not received any payments from Debtor, Movant's Loan has fully matured, there is not sufficient equity in the property, and the property is not needed for an effective reorganization as all bankruptcies are liquidations. As a result, this Court should grant relief from stay binding on the Property in accordance with 11 U.S.C. § 362(d)(1) and 11 U.S.C. § 362(d)(2).

SCHEER LAW GROUP, LLP

DATED: February 1, 2017          /s/ Joshua L. Scheer
                                 #242722

6

# Exhibit "H"

 

### Summary of Notice of Sale

NOTICE OF SALE
SUMMARY OF KEY INFORMATION

The attached notice of sale was sent to Arrehbori Family LLC., a California Limited Liability Company, in relation to 237 S WETHERLY DRIVE, BEVERLY HILLS, CA 90211

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 2/1/2016 UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.

IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

The total amount due in the notice of sale is $1,821,231.72.

Your property is scheduled to be sold on 8/4/2017 at 11:00 AM at By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766

However, the sale date shown on the attached notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 or visit this Internet Web site address www.servicelinkASAP.com using the file number assigned to this case 2017-04023 Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

If you would like additional copies of this summary, you may obtain them by calling (925)272-4993.

出售通知
關鍵信息摘要

本文中包含的有關Arrehbori Family LLC., a California Limited Liability Company 的出售通知發送給237 S WETHERLY DRIVE, BEVERLY HILLS, CA 90211。

你的2/1/2016 於$1,821,231.72 已經逾期違約。

除非你採取行動保護你的房產，否則該房產將被公開出售。

如果你需要了解對你的訴訟程序的性質，應該聯系一名律師。

法拍書面通知的總金額是8/4/2017。你的房產預計出售的時間11:00 AM, 出售地點 By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766。

然而，根據加州民法第2924章g條款，本文中包含的法拍書面通知上顯示的出售日期可能會被抵押權人、受益人，受托人，或法院一次或多次推遲。該法規定，作為對不在法拍現場人士的一種寬限，有關受托人推遲出售的信息要提供給你和公眾。如果你想了解你的房產出售日期是否已被推遲，以及（如適用）重新安



排的法拍時間和日期，可致電714-730-2727
或訪問互聯網網址www.servicelinkASAP.com，用指定的檔案編號 2017-04023 查找。

關於推遲法拍的信息，持續時間會很短，或僅在預定法拍時間前不久發布，可能不會立即反映在電話信息或互聯網的網址上。最好驗証推遲信息的方法是，出席預定的拍賣。

如果你想獲得更多的本摘要副本，請撥打下列電話(925)272-4993。


매각 공고
주요 정보 요약


첨부된 매각 공고는 Arrehbori Family LLC., a California Limited Liability Company 에게 발송되는 것이며, 이는
237 S WETHERLY DRIVE, BEVERLY HILLS, CA 90211 에 관한 것입니다.

귀하는 2/1/2016 현재 날짜로 $1,821,231.72하에서 채무 불이행 상태입니다. 귀하의 부동산을 보호하기 위해 조치를 취하시지 않는 한, 귀하의 부동산은 공매로 매각 처분될 수 있습니다. 귀하에게 취해지는 이러한 법적 절차에 대한 설명이 필요하신 경우 변호사와 상담하십시오.

매각 공고에서 지불되어야 할 총액은 8/4/2017입니다.
귀하의 부동산은 11:00 AM 에 By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766 에서 매각되기로 일정이 잡혀 있습니다.

그러나 캘리포니아주 민법 2924g항에 준하여, 첨부된 매각 공고에 나타난 매각 일자는 저당권자, 신탁수익자, 수탁자, 또는 법정에 의해 한 번 이상 연기될 수 있습니다. 법에 따라, 수탁자 매각 연기에 관한 정보는 매각에 참석하지 않는 사람들에 대한 호의로서 귀하 및 일반 대중에게 제공되어야 합니다. 매각 일자가 연기되었는 지, 그리고 해당되는 경우 이 부동산의 연기된 매각 일자 및 시간에 대해 알기 원하시는 경우, 714-730-2727 로 전화하시거나 또는 웹사이트주소 www.servicelinkASAP.com를 방문해 본 사례 배정 파일 번호 2017-04023를 사용하시면 됩니다.

매우 짧은 기간의 연기 또는 매각 일정과 가까운 시간에 발생하는 연기는 정보 안내 전화나 인터넷 웹사이트에 즉각적으로 나타나지 않을 수 있습니다. 연기 정보를 확인하는 최선의 방법은 매각 예정일에 참석하는 것입니다.
본 요약서의 추가적인 사본을 원하시는 경우, (925)272-4993 (으)로 전화하시면 보내드립니다.

AVISO DE VENTA
RESUMEN DE LA INFORMACIÓN CLAVE


El aviso de venta adjunto se envió a Arrehbori Family LLC., a California Limited Liability Company, en relación con 237 S WETHERLY DRIVE, BEVERLY HILLS, CA 90211

 

USTED HA INCUMPLIDO LOS TÉRMINOS DE UNA 2/1/2016 DE FECHA $1,821,231.72. SI NO TOMA MEDIDAS PARA PROTEGER SU PROPIEDAD, PODRÁ SER VENDIDO EN UNA SUBASTA PÚBLICA.

SI USTED NECESITA QUE LE EXPLIQUEN LA NATURALEZA DEL PROCEDIMIENTO EN SU CONTRA, DEBE CONSULTAR A UN ABOGADO.

El importe total adeudado correspondiente al aviso de venta es 8/4/2017.

La subasta de la propiedad se ha programado para el día 11:00 AM en By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766.

No obstante, conforme al Artículo 2924g del Código Civil de California, la fecha de la subasta que figura en el aviso adjunto podrá ser postergada una o más veces por el acreedor hipotecario, el beneficiario, el fideicomisario o un tribunal. La ley exige que, como cortesía para quienes no hayan asistido a la subasta, la información sobre las postergaciones solicitadas por el fideicomisario se ponga a disposición suya y del público en general. Si desea saber si la subasta de su propiedad se ha postergado, y, en tal caso, la nueva fecha propuesta para la subasta de esta propiedad, puede llamar al teléfono 714-730-2727 o visitar el sitio web www.servicelinkASAP.com, usando el número de registro asignado a este caso 2017-04023.

Es posible que la información sobre las postergaciones por plazos muy breves o decididas muy próximo a la fecha programada para la subasta no figuren en la información que se ofrece por teléfono o en el sitio web. La mejor forma de verificar la información sobre las postergaciones es asistir a la subasta que se ha programado.

Si desea recibir copias adicionales de este resumen, puede llamar al teléfono (925)272-4993.

## NOTICE OF SALE (PABATID NG PAGBEBENTA)
## BUOD NG PANGUNAHING IMPORMASYON

Ang nakakalip na notice of sale (pabatid ng pagbebenta) ay ipinadala kay Arrehbori Family LLC., a California Limited Liability Company, bilang kaugnayan sa 237 S WETHERLY DRIVE, BEVERLY HILLS, CA 90211

IKAW AY HINDI NAKABAYAD SA ILALIM NG 2/1/2016 NA MAY PETSA NA $1,821,231.72. MALIBAN KUNG IKAW AY KUMILOS UPANG MAPROTEKTAHAN ANG INYONG ARI-ARIAN, MAAARI ITONG IBENTA SA ISANG PAMPUBLIKONG PAGBEBENTA.

KUNG KINAKAILANGAN NINYO NG PAGPAPALIWANAG SA KALIKASAN NG PAGLILITIS LABAN SA INYO, KAILANGAN NINYONG MAKIPAG-UGNAYAN SA ISANG ABOGADO.

Ang kabuuang halaga na dapat bayaran sa notice of sale (pabatid ng pagbebenta) ay 8/4/2017. Ang inyong ari-arian ay nakatakdang mabenta sa 11:00 AM sa By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766

Gayunman, ang petsa ng pagbebenta na ipinapakita sa nakalakip na notice of sale (pabatid ng pagbebenta) ay maaaring ma-postpone ng isa o mas marami pang beses ng nagbigay ng mortgagee (nagkaloob ng mortgage), beneficiary (benepisyaryo), trustee, o ng korte, alinsunod sa Seksyon 2924g ng California Civil Code. Hinihiling ng batas na ang impormasyon tungkol sa mga pag-postpone sa pagbebenta ng trustee ay handang maibigay sa inyo at sa publiko, bilang isang kagandahang-loob doon sa mga hindi makakadalo sa bentahan. Kung nais ninyong lubos pang matutunan kung na-postpone ang inyong petsa sa pagbebenta, at kung naaangkop, ang na-schedule muli na oras at petsa sa bentahan ng ari-arian, maaari kayong tumawag sa 714-730-2727 o bumisita dito sa Internet Web site address www.servicelinkASAP.com gamit ang numero ng file na itinalaga sa kasong ito 2017-04023. Impormasyon tungkol sa mga pag-postpone sa loob ng maikling panahon o maaaring maganap kalapit ng na-schedule na pagbebenta ay maaaring hindi kaagad masaad sa impormasyon mula sa telepono o sa Internet Web site. Ang pinakamainam na paraan upang mapatotohanan ang impormasyon sa pag-postpone ay ang pagdalo sa naka-schedule na bentahan.

Kung nais ninyo ng karagdagang mga kopya ng buod na ito, maaari ninyong makuha ang mga ito sa pamamagitna ng pagtawag sa (925)272-4993.

THÔNG BÁO BÁN
BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN CHÍNH

Thông báo rao bán kèm theo được gửi tới cho Arrehbori Family LLC., a California Limited Liability Company, liên quan đến 237 S WETHERLY DRIVE, BEVERLY HILLS, CA 90211

QUÝ VỊ VI PHẠM QUY ĐỊNH GHI THEO DEED OF TRUST OR MORTGAGE NGÀY 2/1/2016. TRỪ KHI QUÝ VỊ CÓ HÀNH ĐỘNG BẢO VỆ CĂN NHÀ CỦA QUÝ VỊ, CĂN NHÀ CÓ THỂ BỊ BÁN CÔNG KHAI.

NẾU QUÝ VỊ CẦN LỜI GIẢI THÍCH VỀ TÍNH CHẤT CỦA THỦ TỤC CHỐNG LẠI QUÝ VỊ, QUÝ VỊ NÊN LIÊN LẠC VỚI MỘT LUẬT SƯ.

Toàn bộ số tiền phải trả trong thông báo bán là $1,821,231.72.

Căn nhà của quý vị được dự kiến sẽ bán vào 8/4/2017 11:00 AM tại By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766.

Tuy nhiên, ngày bán ghi trong thông báo bán kèm theo có thể bị trì hoãn một hoặc nhiều lần bởi bên cho vay thế chấp, người thụ hưởng, người được ủy quyền, hoặc tòa án, chiếu theo Mục 2924g của Bộ Luật Dân Sự California. Luật pháp quy định thông tin về các trường hợp trì hoãn bán nhà của bên được ủy quyền phải được cung cấp cho quý vị và công chúng, để cập nhật cho những người không có mặt tại buổi rao bán. Nếu quý vị muốn biết ngày rao bán của quý vị có bị trì hoãn hay không, và, nếu thích hợp, ngày giờ mới cho việc rao bán căn nhà này, quý vị có thể gọi 714-730-2727 hoặc tới địa chỉ Internet này www.servicelinkASAP.com dựa trên mã số hồ sơ được ấn định cho vụ này 2017-04023. Thông tin về các trường hợp trì hoãn rất ngắn hoặc xảy ra ngay sát ngày rao bán dự kiến có thể không được phản ánh ngay trong thông tin cung cấp qua điện thoại hoặc trên Internet. Cách tốt nhất để xác minh thông tin trì hoãn là tham dự buổi rao bán đã ấn định.

Nếu quý vị muốn có thêm bản sao của tài liệu trình bày tóm lược này, vui lòng gọi số (925)272-4993.

LASC - SANTA MONICA
1725 MAIN STREET
SANTA MONICA CA 90401

DATE PAID: 08/29/17  12:15 PM
RECEIPT #: SM620189007

CIT/CASE:  SC127893
LEA/DEF#:


PAYMENT:    $33.50
RECEIVED:                  310
  CHECK:
  CASH:                $33.50
  CHANGE:              $0.00
  CARD:                $0.00
                       $0.00